# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RUBY CARR,                              *
                                        *
    Plaintiff,          *
                                        *
v.                                      *    CASE NO.: 2:07-cv-532-MHT
                                        *
STATE OF ALABAMA DEPARTMENT             *
OF YOUTH SERVICES, et al.,              *
                                        *
    Defendants.         *

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants, by and through the undersigned counsel, and hereby move for summary judgment in their favor on all counts in the Amended Complaint. As grounds, the Defendants state that there are no genuine issues of material fact and that the Defendants are entitled to summary judgment in their favor as a matter. In support of this Motion, the Defendants adopt and incorporate in its entirety, the previously filed Motion to Dismiss (Doc. 24). The Defendants also submit the following:

1. Wood Memo, dated 2/17/05, attached hereto as Ex. 1;

2. 3/17/05 EEOC Charge, attached hereto as Ex. 2;

3. Settlement Agreement, attached hereto as Ex. 3;

4. Smitherman Admin. Hearing testimony, attached hereto as Ex. 4;

5. 1/23/06 Memorandum from Carr, attached hereto as Ex. 5;

6. Sticky Note, attached hereto as Ex. 6;

7. 3/23/06 Memorandum, attached hereto as Ex. 7;

8. Letter of Grievance, attached hereto as Ex. 8;

9. Fact-Finding hearing transcript, attached hereto as Ex. 9;

10. Audio-tape of 4/13/06 meeting, attached hereto as Ex. 10;

11. 4/19/06 Memorandum, attached hereto as Ex. 11;

12. Email, attached hereto as Ex. 12;

13. Warning, attached hereto as Ex. 13;

14. Reprimand, attached hereto as Ex. 14;

15. Note, attached hereto as Ex. 15;

16. 5/10/06 Memorandum, attached hereto as Ex. 16;

17. 5/12/06 Letter, attached hereto as Ex. 17;

18. Fact-Finding Hearing excerpts, attached hereto as Ex. 18;

19. 6/23/06 Letter, attached hereto as Ex. 19;

20. Administrative hearing excerpt, attached hereto as Ex. 20;

21. CJIS/Alacourt printout, attached hereto as Ex. 21;

22. 12/06 EEOC Charge, attached hereto as Ex. 22;

23. Carr Admin. Hearing testimony, attached hereto as Ex. 23; and

24. 5/10/06 Carr Memorandum, attached hereto as Ex. 24.

WHEREFORE the Defendants respectfully request the entry of summary judgment in their favor on all counts in the Amended Complaint.


/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
ASB-3422-F55R
Attorney for Defendants
Dept. of Youth Services, J. Walter Wood, Troy King, T. Dudley Perry, Tracy Smitherman

**OF COUNSEL:**

**RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.**
Post Office Box 270
Montgomery, AL 36101-0270
334/206-3126 (telephone)
334/481-0815 (facsimile)

## CERTIFICATE OF FILING

I hereby certify that on July 30th, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Guy D. Chappell, III, Esq.
Frederic A. Bolling, Esq.
H. Lewis Gillis, Esq.
Roslyn Crews, Esq.
T. Dudley Perry, Jr., Esq.
E. Diane Gamble, Esq.
Mark S. Boardman, Esq.


/s/ R. Austin Huffaker, Jr.
OF COUNSEL

*Employee Exhibit I*



State of Alabama
*Department of Youth Services*
Post Office Box 66
Mt Meigs, Alabama 36057

BOB RILEY
GOVERNOR



J. WALTER WOOD
EXECUTIVE DIREC

February 17, 2005

## M E M O R A N D U M

**TO:**   Tim Davis
Allen Peaton
Debra Spann

**FROM:**   J. Walter Wood, Jr.
Executive Director

**RE:**   Ruby Carr

After reviewing responses to Ms. Ruby Carr's concerns and having asked Ms. Grant to meet with her to attempt to clarify her concerns, I personally met with Ms. Carr to discuss her continuing concerns. We discussed and reviewed materials prepared by her outlining her concerns regarding: (1) LWOP the week of July 5, 2004, (2) confusion surrounding her work, training, and unit re-assignments, (3) subsequent reprimand, (4) three reprimands regarding her Failure to Meet with Ms. Rankins concerning the June 28-29 assignment, and (5) various other concerns e.g., overtime, hostile environment, and medical issues.

Regarding LWOP for forty (40) hours the week of July 5, 2004, please adjust Ms. Carr's record to reflect personal leave for each the five days docked and issue Ms. Carr's pay as she requested.

Regarding Ms. Carr's unit transfer around the end of June, please restore any leave or pay deducted on June 29 and/or June 30.

Also, regarding the June 28 and June 29 confusion, please remove the reprimands regarding Failure to Report.

Regarding Ms. Carr's appraisal, please delete the Failure to Report Reprimand reference to June 28 and June 29, and restore her full appraisal score for the appraisal period.

Regarding the three subsequent reprimands for Failure to Meet with Ms. Rankins, please remove them from Ms. Carr's file.

Regarding overtime worked, please reimburse Ms. Carr as requested for 312 hours



EXHIBIT
1

0062

Tim Davis, Allen Peaton, Debra Spann
Page 2
February 17, 2005

In addition to the above, please have Ms. Spann confirm her conversation with Ms. Carr regarding Ms. Carr's "sexual harassment" and/or "hostile environment" allegation. Please advise me if you have any questions.

JWWJr./gjw
cc: Dudley Perry

0063

EEOC FORM 131 (5/01)

## U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| DEBRA SPANN<br>PERSONNEL DIRECTOR<br>ALABAMA DEPT. OF YOUTH SE<br>P. O. BOX 66<br>MOUNT MEIGS,   AL   36057 | **Ruby H. Carr** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**130-2005-01900** |

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

RECEIVED  APR 22 2005  DYS-LEGAL COUNSEL

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **14-MAY-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **29-APR-05** to **Debra B. Leo, ADR Coordinator, at (205) 212-2033**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Debra B. Leo,<br>ADR Coordinator<br>*EEOC Representative*<br>Telephone   **(205) 212-2033** | **Birmingham District Office**<br>**Ridge Park Place**<br>**1130 22nd Street, South**<br>**Birmingham, AL 35205** |
|---|---|

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

EXHIBIT
2
Blumberg No. 5119

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Apr 14, 2005 | Bernice Williams-Kimbrough,<br>District Director | *Bernice Williams-Kimbrough* |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form

| | |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 130-2005-01900 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Ruby H. Carr | (334) 864-0576 | 06-22-1965 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| 2167 Co. Road 101 Lafayette, AL 36862 | | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALABAMA DEPT OF YOUTH SERVICES | 500 or More | (334) 215-3807 |

| Street Address | City, State and ZIP Code |
|---|---|
| P. O. Box 56, 100 Industrial Road, Mount Meigs, AL 36057 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-23-2004 | 01-24-2005 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been employed by the above named employer for five and one half years, as a Youth Service Aide. Around July 23, 2004, I became aware of a pattern of pay discrimination against me. The employer has discriminated against me in my terms and conditions of employment as it relates to my pay specifically by failing to record my time properly, failing to pay overtime, docking of my pay and placing disciplinary actions in my personnel file. I started to report policy violations as far back as March of 2004. I continue to report violations to the department the most recent being August 2004 and have received nothing but Retaliation as a result of my complaints.

I have never been afforded a reason for the difference in treatment that I continue to receive.

I believe I am being discriminated against because of my Race, Black and my Sex, Female, in violation of Title VII of the 1964, Civil Rights Act, as amended. I have been Retaliated against because I continue to complain of protected acts, which is also in violation of Title VII of the 1964, Civil Rights Act, as amended..

MAR 2 6

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief SIGNATURE OF COMPLAINANT |
| 3/25/2005   *Ruby H. Carr* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

Enclosure with EEOC
Form 131 (5/01)

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), 4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge . . has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent . . shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
(205) 731-0082
TTY (205) 731-0175
FAX (205) 731-2101

The above referenced charge is about to begin the long investigative and legal adjudication process. At this point, the Equal Employment Opportunity Commission invites both parties to pause and seriously consider the possibility of resolving the disagreement through Alternative Dispute Resolution (ADR).

Mediation focuses on a resolution of the underlying dispute by addressing the interests of both parties. It is not a form for reaching a determination on whether discrimination occurred. Therefore, any agreement reached during mediation does not constitute an admission that discrimination occurred.

There is no fee for mediation. If you are interested in resolving this complaint through mediation you do not need to provide a position statement or requested documentation at this time. If a resolution is reached, an agreement will be signed and the case will be closed. The Charging Party will not be issued a Notice of Right to Sue.

If a charge is not resolved during the mediation process, you will then respond to the charge and it will be processed just like any other charge. Since the entire mediation process is strictly confidential, information revealed during the mediation session cannot be disclosed to anyone including other EEOC personnel. Therefore, it cannot be used during any subsequent investigation.

Please return the signed form within ten (10) days of your receipt of this notice to begin the mediation process.

LEGALOFFICE                    PAGE  01

10/13/2005  15:21    2153872                                    Oct. 12 2005 03:37PM P2
FROM :EEOC BIDO              FAX NO. :205 212 2063

# CONFIDENTIAL

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Birmingham District Office

Ridge Park Place
1130 22nd Street, South, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

## NEGOTIATED SETTLEMENT AGREEMENT

### GENERAL PROVISIONS

The following Agreement refers to Charge Number: 130 2005 01900 as filed with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964. (Title VII), as amended, by Ruby H. Carr, Charging Party.

1. Commission May Review Compliance With Agreement - Alabama Department of Youth Services that the Commission, on request of any Charging Party or on its own motion, may review compliance with this Agreement. As part of such review, the Commission may require written reports concerning compliance, and inspect the premises, examine witnesses, and examine and copy any documents.

2. Agreement Does Not Constitute Admission of Violations - It is understood that this Agreement does not constitute an admission by Alabama Department of Youth Services of any violation of Title VII of the Civil Rights Act of 1964, as amended.

3. Charging Party's Covenant Not To Sue - Charging Party hereby agrees not to sue Respondent with respect to the matters which were alleged in the above referenced-charge(s) filed with the Equal Employment Opportunity Commission, subject to performance by the Respondent of the promises and representations contained herein.

4. Retaliation Prohibited - The Parties agree that there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice declared unlawful under Title VII; or because of the filing of a charge; giving of testimony or assistance; or participation in any manner in any investigation, proceeding, or hearing under Title VII.

5. The Respondent agrees that it shall comply with all requirements of Title VII of the Civil Rights Act of 1964, as amended.





CONFIDENTIAL

CONFIDENTIAL

Negotiated Settlement Agreement
Carr v. Alabama Department of Youth Services
Page 2

6.    All parties agree that the settlement of the instant charge is intended to be
without prejudice to any other case Respondent may have pending before
the U. S. Equal Employment Opportunity Commission.

(A).    In exchange for the satisfactory fulfilment by the Alabama Department of
Youth Services, of the promises contained in paragraph one (1) of this
agreement, Ruby H. Carr, Charging Party agrees not to institute a lawsuit
with respect to the above-referenced charge and further agrees to drop all
charges filed with the Equal Employment Opportunity Commission regarding
the issues allege in this charge. Ruby H. Carr further agrees to pay all legal
withholdings required by law.

(1).    In exchange for the promises of Ruby H. Carr, contained in paragraph (2) of this
Agreement, Alabama Department of Youth Services agrees to the following:

a.    The adjustment of Ruby H. Carr's record to reflect forty (40) hours of annual leave for the
week of July 5-9, 2004; restoration of any leave or pay deducted for June 28, 2004 and
June 29, 2004; removal of the disciplinary actions from Ruby H. Carr's record regarding
the failure to report to work dated June 30 and July 1, 2004; re-evaluation and restore Ms.
Carr's complete appraisal for the following period: September 1, 2003, September 1,
2004, and August 11, 2004;

b.    The removal of all three subsequent reprimands for acts of insubordination (Failure To
Meet with Ms. Rankins) from Ruby H. Carr's personnel file;

c.    Reimbursement of the sum of $5,382.00, equivalent to 312 hours of overtime and
Attorney fees. The Alabama Department of Youth Services agree to make a check
payable to Ruby H. Carr in the amount of $4,082.00 and a check payable to Attorney
Norman Hurst in the amount of $1,300 in attorney fees in full settlement of any and all
claims against the Alabama Department of Youth Services, to be effective at the next pay
period immediately following the date of execution of this agreement;

d.    To be permanently re-assign full time to current position in Department of Youth Services,
District 210.

I, Ruby H. Carr, hereby declare that the terms of this agreement have been
completely read and are fully understood and voluntarily accepted for the
purpose of making full and final compromise adjustment and settlement of any
and all disputed claims in this charge.

CONFIDENTIAL

LEGAL OFFICE

10/19/2005  11:14   2153872
CT-13-2005  09:54 AM   CAREERTECH
3342696449                          P.01
CONFIDENTIAL                  PAGE 03/84

AL DYS                    3342696449                     P.03

J/11/2005  15:04   3942153811
JUL-11-2005 05:15T PM   CAREERTECH

FAX NO. :205 212 8853          Sep. 27 2005 02:21PM  P4

FROM :EEOC BIDO

Negotiated Settlement Agreement
Ruby H. Carr v. Alabama Department of Youth Services
Page 3

7.  The Alabama Department of Youth Services agrees to provide written notice to the Director and the Investigator of the Birmingham District Office within ten (10) days of satisfying each obligation specified in paragraph one (1), subparagraphs a-d of this Agreement.

8.  It is mutually agreed that this Agreement is effective as of the date of the Commission's approval.

9.  These parties agree that this Agreement may be used as evidence in a subsequent proceeding in which any of the parties alleges a breach of this Agreement.

This Agreement is entered into solely for the purpose of resolving the grievances without further proceedings, and neither party concedes the validity of the positions of the other party in connection with this matter. Nothing contained herein shall constitute evidence, an admission by either party to this matter, or adjudication with respect to any allegation of the grievance, or any wrongdoing, misconduct or liability on the part of the EEOC.

It is agreed between the Parties that the terms of this Agreement are not precedential.

By execution of this Agreement, the Equal Employment Opportunity Commission withdraws this complaint filed by Ruby H. Carr on _____, 2005.

_____10-17-05_____
Date

Dudley Perry, Jr., Deputy Attorney General
The Alabama Department of Youth

_____October 11, 2005_____
Date

Ruby H. Carr
Charging Party

CONFIDENTIAL

Negotiated Settlement Agreement
Carr v. Alabama Department of Youth Services
Page 4

CONFIDENTIAL

I recommend the approval of this Negotiated Settlement Agreement:

_October 18, 2005_
Date

_Rita W. Sterling_
Rita W. Sterling, Investigator

_10/19/2005_
Date

_Arthur L. McGhee_
Arthur McGhee, Supervisor

10. In reliance on the promises made in paragraph (1) subparagraphs a - d , the U.S. Equal Employment Opportunity Commission agrees to terminate the investigation which it has begun with respect to the above referenced charge and not to use it as the jurisdictional basis for a civil action under Title VII of the Civil Rights Act of 1964, as amended. The Equal Employment Opportunity Commission does not waive or in any manner limit its right to process or seek relief in any other charge or investigation including, but not limited to, a charge filed by a member of the Commission against the Respondent.

**On behalf of the Commission**

_October 29, 2005_
Date

_Bernice Williams-Kimbrough_
Bernice Williams-Kimbrough
District Director

CONFIDENTIAL

1                    BEFORE THE

2               STATE OF ALABAMA

3         DEPARTMENT OF PERSONNEL

4         MONTGOMERY, ALABAMA

5

6    IN THE MATTER OF:  RUBY CARR

7                TERMINATION APPEAL

8

9

10

11

12

13

14          * * * * * * * * * *

15       TESTIMONY AND PROCEEDINGS, taken before

16   the Honorable Julia J. Weller, Administrative Law

17   Judge, at The Folsom Administration Building, 64

18   North Union Street, Montgomery, Alabama, on

19   Tuesday, September 19, 2006, commencing at

20   approximately 9:41 a.m., and reported by Laura A.

21   Head, Licensed Court Reporter and Commissioner

22   for the State of Alabama at Large.

23         * * * * * * * * * *



EXHIBIT
4

*Laura A. Head, Court Reporter*
*(334) 286-4938 or (334) 202-4851*

```
 1                        APPEARANCES

 2

 3        ADMINISTRATIVE LAW JUDGE:

 4        Honorable Julia J. Weller
          Administrative Law Judge
 5        Alabama Department of Personnel
          Folsom Administrative Building
 6        64 North Union Street
          Montgomery, Alabama  36130
 7

 8
          FOR THE DEPARTMENT OF YOUTH SERVICES:
 9
          Honorable T. Dudley Perry, Jr.
10        Deputy Attorney General
          Alabama Department of Youth Services
11        P. O. Box 66
          Mt. Meigs, Alabama 36057
12

13
          FOR THE EMPLOYEE RUBY CARR:
14
          Honorable Jason Manasco
15        Legal Counsel
          Alabama State Employees Association
16        110 N. Jackson Street
          Montgomery, Alabama  36104
17

18                  * * * * * * * * * *

19

20

21

22

23
```

*Laura A. Head, Court Reporter*
*(334) 286-4938 or (334) 202-4851*

3

1                          EXAMINATION INDEX

2

3        TRACY SMITHERMAN
             DIRECT BY MR. PERRY  .  .  .  .  .    19
             CROSS BY MR. MANASCO  .  .  .  .     79
4

5        QUEEN ESTHER BARKER
             DIRECT BY MR. MANASCO  .  .  .  .    90
6            CROSS BY MR. PERRY  .  .  .  .  .   103

7        RUBY CARR
             DIRECT BY MR. MANASCO  .  .  .  .   117
8            CROSS BY MR. PERRY  .  .  .  .  .   144

9        SOJUAN CRENSHAW
             DIRECT BY MR. MANASCO  .  .  .  .   173
10           CROSS BY MR. PERRY  .  .  .  .  .   181
             CROSS BY MR. PERRY  .  .  .  .  .   190
11

12                  * * * * * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

Laura A. Head, Court Reporter
(334) 286-4938 or (334) 202-4851

1    just really bizarre type behavior.

2         The progressive disciplinary procedure

3    was unsuccessful.  And in fact, Ms. Carr only

4    raised her own insubordination in response to

5    any type of supervision or any type of

6    direction from her supervisor.

7         THE COURT:  All right.  Mr. Manasco?

8         MR. MANASCO:  At this point, the

9    employee waives opening statement.  We will

10   submit their case on testimony.

11        THE COURT:  All right.  Ms. Carr, do

12   you understand the charges that have been

13   brought in this case?

14        MS. CARR:  Yes, ma'am.

15        THE COURT:  And the grounds for the

16   termination?

17        MS. CARR:  Yes, ma'am.

18        THE COURT:  All right.  Let's proceed.

19   Call your first witness.

20

21             TRACY SMITHERMAN

22        The witness, having first been duly

23   sworn to speak the truth, the whole truth, and

1       nothing but the truth, testified as follows:

2                    DIRECT EXAMINATION

3       BY MR. PERRY:

4       Q.   Would you state your name for the Record?

5       A.   My name is Tracy, T-r-a-c-y, Smitherman,

6            S-m-i-t-h-e-r-m-a-n.

7       Q.   All right.  You and I work closely together,

8            so I don't need to introduce myself to you.

9            Tell the Hearing Officer what you do, where

10           you work, and your association with

11           Ms. Carr.

12      A.   Okay.  I work for the Department of Youth

13           Services.  I've been there this is going on

14           my ninth year.  Been there since '97.  I am

15           the Curriculum and Federal Programs

16           Coordinator.

17      Q.   For?

18      A.   For the School District, the DYS School

19           District, School District 210.  We are

20           responsible for the schools that provide

21           educational services for the children who are

22           in custody of the Department of Youth

23           Services, and we have five schools across the

```
 1            state that I supervise.  I handle federal

 2            programs, curriculum, personnel as in PEPE

 3            which is the evaluation of teachers and

 4            principals, many other duties that

 5            Dr. Stewart, the superintendent, requires of

 6            me.  Ms. Carr was assigned to me to assist me

 7            in handling day-to-day paperwork and things

 8            as her supervisor.

 9     Q.   So you were her supervisor?

10     A.   Yes.

11     Q.   How long did you supervise Ms. Carr

12            approximately?

13     A.   A year.

14     Q.   About a year.  Okay.

15     A.   Almost a year.

16     Q.   Okay.  Let me get you to think back to August

17            of 2005.

18     A.   Okay.

19     Q.   Well, I'll tell you what.  Open that book in

20            front of you, the exhibit book, and go to

21            Exhibit Number 2.

22     A.   Okay.

23     Q.   What is that?
```

```
 1    A.   That is Ms. Carr's Preappraisal.

 2    Q.   For what year?  When?

 3    A.   From September 1st, 2005 to September 1st,

 4         2006.

 5    Q.   And on the second page, is there a date for

 6         the Preappraisal signature?

 7    A.   August 24th, 2005.

 8    Q.   Okay.  Did you have a conference with

 9         Ms. Carr on that date?

10    A.   I did.  She actually typed this for me.

11    Q.   Okay.  Did you in that conference have a

12         discussion with Ms. Carr about her -- well,

13         did you have a discussion with her?

14    A.   Yes.  We talked about what her

15         responsibilities were and what my

16         expectations were and her general work.

17    Q.   Okay.  Were there any -- okay.  Let's -- in

18         all of her previous time under your

19         supervision, have there been any problems?

20    A.   No.

21    Q.   Did you discuss anything with her regarding

22         her future performance in relation to her job

23         duties?
```

1    A.   No.  She just worked for me.

2    Q.   Okay.  All right.  So basically, at this

3         point, everything is going well with this

4         employee, correct?

5    A.   Correct.

6    Q.   Did something change?

7    A.   Yes.  In January, I got a memo from Ms. Carr

8         stating that she was no longer going to

9         handle the property.  And if you'll see on

10        her evaluation, that was one of the things

11        that I had put down that was her

12        responsibility was property reports.

13   Q.   Okay.

14   A.   It's the very first -- one of the first

15        things listed on the thing.  And I had gotten

16        a memo she was going to no longer do that for

17        me.

18   Q.   Okay.  Flip the page and look at Exhibit

19        Number 3, tab number 3.

20   A.   Okay.

21             THE COURT:  What are property items?

22        Just like purchases or --

23             THE WITNESS:  Well, property being --

1          you know how we have to have a state code on

2          all the purchases we do that's over five

3          hundred dollars?  Federal programs has a

4          considerable amount of money that we monitor

5          that comes through our office for the school

6          district equipment, computers, those types of

7          things.  And before we can pay for them, we

8          have to put a property number on them.  And

9          so we have to maintain that, not only for the

10         state's requirements but for federal programs

11         because we have to document what we have

12         purchased and so on and so forth, and we have

13         to have it on inventory.  So that's a way for

14         us to keep up with them.

15    Q.   (By Mr. Perry:)  Exhibit 3, have you ever

16         seen that?

17    A.   Yes.

18    Q.   Can you identify it?

19    A.   Yes.  It's a memo from Ms. Carr to myself.

20         That was that January 23rd memo I was just

21         talking to about.

22    Q.   That's the memo that you were just referring

23         to that she said to you she would no longer

1           be responsible for --

2    A.    Yes.

3    Q.    Was that unusual?

4    A.    Very much so.

5    Q.    Up until this point, had you had any

6           difficulty with Ms. Carr following your

7           directives and paying attention to the

8           responsibilities that were within her job

9           description?

10   A.    No.  Once I told her something, she did it.

11   Q.    All right.

12   A.    Now, she would take the initiative sometimes

13          to do things, and I would have to tell her,

14          No, that's not your responsibility.  And she

15          accepted that.

16   Q.    Okay.  What do you mean take the initiative

17          to do something that was not her

18          responsibility?

19   A.    Well, if someone else in the agency asked her

20          to do something, you know, she would help

21          them if she had time.  She would go and do

22          that.

23   Q.    Okay.  And you on occasion had done what in

27

1        she didn't feel it was necessary to discuss

2        it.

3  Q.  Okay.  Did anything else happen after that

4        with regard to Ms. Carr and her willingness

5        to perform her job duties?

6  A.  On March I think it was the 23rd, I had —

7        when I had things for her to do, especially

8        as much as I'm in and out of the office, I'd

9        put a Post-it note on it, leave it at her

10       desk or hand it to her or we had a folder on

11       my desk of things for her to file, you know,

12       to-be-filed stuff, and I'd leave Post-it

13       notes and tell her what to do.  Well, on I

14       think it was the 23rd of March, I left a note

15       on some items I needed shredded for her in

16       the stack of things to do, and I got it

17       back.  And it said basically — I mean, I'm

18       paraphrasing, You do it.  I'm not going to do

19       it.  You do it.

20  Q.  Let me direct your attention.  Look at

21       Exhibit 16 or tab number 16 and attached —

22       tab number 16, let me say for the Record, is

23       a transcript of the May 16, 2006

28

```
 1              administrative fact-finding hearing at the

 2              department.  Look at the exhibits attached to

 3              that, Exhibit Number 1.

 4      A.      Okay.

 5      Q.      Okay.  Do you recognize that?

 6      A.      Yes, this is the copy of the Post-it note.

 7      Q.      Okay.  Read what you --

 8      A.      The note originally when I gave it to her

 9              just said shred on it.  And when I got it

10              back, it had, Tracy, I need you to shred

11              these since this is teacher info.  Thanks,

12              Ruby.

13      Q.      All right.  Was that unusual?

14      A.      Yes.

15      Q.      Had Ms. Carr in the past handled these types

16              of duties and responsibilities?

17      A.      Absolutely.

18      Q.      And --

19      A.      This was the second year she had -- second

20              January, and I do -- we do recertifications

21              in January.  We send out notifications to the

22              teachers to tell them, You've got to be

23              recertified this year.  You can't do it more
```

1    than six months out.  And so starting in

2    January, we do letters to send to the

3    teachers and copies of all their professional

4    development that we have documentation in the

5    files, and we make copies of it.  Well, we

6    had had some of that, and we had been

7    preparing for the SACS audit.  And we had a

8    lots of professional development

9    documentation there, and that's what this was

10   attached to.  It was attached to that stack

11   of documentation of professional

12   development.  And so this was the second year

13   she has been a part of doing this process.

14         THE COURT:  But what difference would

15   it make that it's teacher info?  Why would

16   you have to shred it up rather than her shred

17   it?

18         THE WITNESS:  That was -- it shouldn't.

19         THE COURT:  Okay.

20         THE WITNESS:  She was privy -- she had

21   access to my office that had the teacher's

22   certifications, all their information in my

23   office.  I had their Social Security numbers

```
 1          because their teacher certifications are in

 2          my office.  It has their home addresses.  She

 3          has access to that.  She's had to file that

 4          stuff before for me.  When I get new teacher

 5          certifications in, she has to file that --

 6          she would have to file that stuff for me.

 7               THE COURT:  So it doesn't have to have

 8          some special --

 9               THE WITNESS:  No.  And a person who

10          works with me understands that there are

11          certain things in our office that are

12          private, you know, and with that -- I mean,

13          that's why we wanted to shred it.  We didn't

14          want it to get outside of our offices.

15               THE COURT:  Right.

16               THE WITNESS:  And we didn't want it to

17          get mixed up with next year's stuff because

18          then it would be confusing.  So, you know,

19          she's had access to the personal information

20          time and time again.  And my note at the very

21          top of this says, Old training files that had

22          already been used.  So I didn't want it to

23          get mixed up.  When I got it back, I didn't
```

```
 1            want it to get mixed up with the stuff that

 2            we had in the files.

 3    Q.    (By Mr.Perry:)   Let me -- you and I, I don't

 4            think, have ever talked about this, so I'm

 5            going to break my rule here.   But do I

 6            understand that the information used in

 7            certification specifically related to

 8            training, this information we're talking

 9            about, once the certification process is

10            completed, information is no longer useful

11            and it's only the certification that matters?

12    A.    Yes.   We use it for documentation for other

13            things, but these were extra copies.

14    Q.    Oh.

15    A.    These were extra copies of those items.   And

16            when we write a letter to the teachers

17            telling them that you're going to be

18            recertified this year, we attach the

19            documentation that we have on that person.

20            Often they'll mail it back to us, and I think

21            that's what some of this was was some of that

22            they mailed back to us.   Ms. Linda McQueen's

23            was the specific one I'm talking about.
```

1    Q.  I understand.  So you are not --

2    A.  They can't use that information for their

3        next certification because once it's used,

4        you can't use it again.

5    Q.  Yeah.  You have to go and get more training

6        for the next year.

7    A.  Correct.  Well, next five years.  But yes.

8    Q.  Okay.  Now, all right.  What happened next?

9    A.  Okay.  That was in March.

10    Q.  Anything on March 30th that you recall?

11    A.  I got a memo.  I had been -- I think I had

12        been out of town, and I got a memo from

13        Ms. Carr about the Gateway laptop computers.

14        And it was a complaint letter.  Basically

15        what it was, it was a letter.  She was

16        complaining about this and complaining about

17        that and a lots of it that didn't have --

18        pertain to her, you know.  It had to do with

19        other individuals and --

20    Q.  Look at Exhibit Number 4.  I believe that's

21        under tab number 4.  This is confusing.  Some

22        of it -- again, I've got this transcript of

23        the hearing, and there are exhibits attached

33

```
 1              to that which also are numbered --
 2     A.   Yeah, this is the memo.
 3     Q.   But I'm talking about tab number 4.
 4     A.   Got it.  This is a memo to me from Ms. Carr.
 5     Q.   All right.  And obviously the document will
 6              speak for itself.  But the substance of the
 7              memo was what?
 8     A.   She was complaining that she didn't have a
 9              laptop, that she had spoken to a secretary at
10              one of the schools and the school secretary
11              had a laptop and Ms. Carr felt that she
12              should get a laptop.  And she referenced down
13              at the bottom about issuing computers to
14              teachers, and she was no longer -- she had
15              already disassociated herself with the
16              property with the January -- she had already
17              pulled herself out of it, and she's still
18              dealing with it.
19     Q.   And you allowed her to pull herself out of
20              it.
21     A.   Absolutely.
22     Q.   That was that first, now I guess looking in
23              the rearview mirror, act of insubordination
```

1       which you did not take any action on.

2   A.  Correct.

3   Q.  And now she's writing a memo.  How does this

4       memo relate to that task or set of tasks or

5       responsibilities that she relinquished?

6   A.  Well, she had been filing in my office and,

7       you know, I told you about the thing where

8       she had to file stuff.  And one of the items

9       she saw was this property form and -- may I

10      take it out?

11  Q.  You may.

12  A.  And this is the state property form.  And

13     when we give an item to someone, we make them

14     sign for it.  And this was one where this

15     secretary had signed for it, and it was in

16     that stack of stuff for Ms. Carr to file.

17  Q.  So --

18  A.  So she read it, and she realized somebody had

19     something she didn't have.

20  Q.  So in other words --

21  A.  In a different office.

22  Q.  Okay.  So she had previously had

23     responsibility for what?  Gathering these

```
 1            secretary at the Chalkville School -- the

 2            Sequoyah School at the Chalkville Campus.

 3       Q.   That's a --

 4       A.   And she spoke to the Technology Coordinator

 5            about it.

 6       Q.   And you know that because that's referenced

 7            in her memo.

 8       A.   In her memo, uh-huh.

 9       Q.   Okay.  Now, what did you do, if anything, in

10            response?

11       A.   I wrote her a memo.

12       Q.   And do you have that?

13       A.   Yes.  It's your exhibit -- the Exhibit 5, the

14            next one.

15       Q.   Okay.  Again, it's going to speak for

16            itself.  But what's the substance here?

17       A.   The substance is I told her I wasn't privy to

18            discuss equipment with her.  She relinquished

19            herself and that she had done so in her memo

20            and that I felt that she had violated

21            confidence because she was discussing this

22            with other people outside of the office.  And

23            I told her I expected her to follow chain of
```

```
 1              command and remain -- you know, stay within

 2              her responsibilities of her position.

 3      Q.      Did you have any conversations with Ms. Carr

 4              about the laptop?

 5      A.      Later.

 6      Q.      All right.  What -- tell the Hearing Officer

 7              about the conversation.

 8      A.      It was in April.  It was the next month, like

 9              the 16th.  I'd have to check my notes.  But I

10              asked her, I said, Do you want a laptop.  And

11              she says no.  And I told her, you know -- I

12              had already told her that it was -- really

13              she didn't need a laptop for her job

14              responsibilities.  Her job responsibilities

15              were in the office, and that's why she didn't

16              have a laptop.  She had a full-standing,

17              brand new computer in her office.  She didn't

18              need an additional laptop for her job

19              responsibilities.

20      Q.      Also, one other thing.  The memo that she

21              sent in which she is disseminating this

22              information and talking about the

23              conversation she's had and sending this
```

39

```
 1              transcribe things.  I mean, certain jobs need
 2              certain pieces of equipment.
 3        Q.    Right.  And somebody who, you know, doesn't
 4              have a laptop but doesn't really need one who
 5              gets a memo like this that says, you know,
 6              So-and-so has got a laptop and you don't, is
 7              that a potential problem?
 8        A.    Absolutely.  And especially when you discuss
 9              it outside of the office, it's instigating
10              issues and animosity between the other staff.
11        Q.    I call that messiness.  Obviously, is that a
12              good thing to have --
13        A.    No.
14        Q.    -- coming out of your office?
15        A.    No.  And as a supervisor, I don't expect it
16              to be coming from someone that works for me.
17        Q.    Okay.  Look at Exhibit 5.  Have we covered
18              this?  Okay.  All right.
19        A.    And I tell her that.  I cannot tolerate that
20              someone in your position will do that.  In
21              that memo on the 31st, I tell her that.
22        Q.    You're on your memo which is --
23        A.    When I'm responding back to her, I tell her
```

40

1   that.

2 Q. That is Exhibit 5. Your Exhibit 5 -- your

3   memo is Exhibit 5.

4 A. I asked you to file, some of which were

5   confidential. Your reading those documents

6   is a violation of ethics. I cannot tolerate

7   that from someone in your position. I feel

8   that you are talented, and I'm happy to work

9   with someone with skills but violations

10   cannot be tolerated.

11 Q. Okay. What happened next?

12 A. She filed a grievance.

13 Q. Okay. Is that Exhibit 6?

14 A. Yes.

15 Q. Okay. Let's -- all right. Let me -- this is

16   April the 7th, the memo.

17 A. Yes.

18 Q. The grievance. Do you recall anything on

19   April the 6th?

20 A. I think that's maybe when I asked her --

21 Q. Okay. Do you remember the date of the

22   conversation?

23 A. I don't remember.

1           A.

2    A.     Within five days of the event, the aggrieved

3           employee should discuss the matter with his

4           immediate supervisor.  If not resolved,

5           written documentation of the discussion must

6           be maintained.

7    Q.     All right.  Before you got this memo that was

8           shot out to everybody that's listed here, was

9           there any discussion with you?

10   A.     No.  No.  Actually, I had been -- this was

11          placed in my box.

12   Q.     Okay.

13   A.     Mailbox.

14   Q.     All right.  All right.  Now, so what did you

15          do?

16   A.     I was out of the office on the 7th and came

17          in on the 10th and read it, and she came by

18          my office and said, You need to meet with me

19          about my grievance.  And I told her not

20          today, that, you know, I needed time and I

21          was under my rights to have time.  So I

22          refused to meet with her that first day about

23          it because I hadn't had time to go through

| | | |
|---|---|---|
| 1 | | it, read through it, you know, those types of |
| 2 | | things. So I did not meet with her. So I |
| 3 | | scheduled a meeting with her for April the |
| 4 | | 13th. Which I came in on the 10th, three |
| 5 | | days later, I scheduled a meeting with her |
| 6 | | about the grievance. |
| 7 | Q. | All right. Did you record that grievance |
| 8 | | meeting? |
| 9 | A. | Yes, I did. |
| 10 | Q. | Did you tell Ms. Carr that you were recording |
| 11 | | that meeting? |
| 12 | A. | Yes. And her voice and me asking her is on |
| 13 | | the tape. |
| 14 | Q. | Okay. |
| 15 | A. | It was laid out on my desk. She was |
| 16 | | sitting -- my desk is like this. She was |
| 17 | | facing this way, and I was sitting here |
| 18 | | facing this way. And the recorder is on my |
| 19 | | desk. |
| 20 | Q. | Okay. Did anything unusual happen during the |
| 21 | | course of that discussion with her? |
| 22 | A. | Absolutely. |
| 23 | Q. | What? |

```
 1    A.   Ms. Carr became aggressive.  She screamed.
 2         She hollered.  She told me she wasn't going
 3         to do anything that I told her to do.  She
 4         became belligerent in it.  I mean, and she
 5         was just yelling.  And as I questioned her
 6         about these items that's on the grievance, as
 7         it -- as the meeting progressed, she got
 8         louder and louder, and at one point, she's
 9         pointing at me.  And I told her, you know,
10         Don't do that.  And she became hostile in
11         that arena.
12    Q.   What were you asking her?
13    A.   I was asking her -- I was doing a fact-
14         finding.  I was trying to get an
15         understanding of what her bullets on her
16         grievance were.  I was trying to understand
17         what she felt that she was being so --
18         treated so unfairly about.  I mean, the items
19         she had listed here, I wanted to know the
20         specifics about each one of them so that I
21         could address them with her.  And that's part
22         of the policy.  I'm supposed to seek out
23         information with her and do that.
```

```
 1      Q.   Okay.

 2      A.   Until the problem is on the table, I can't

 3           address it.

 4      Q.   Okay.

 5      A.   And she just got louder and louder.

 6                MR. PERRY:  All right.  Okay.  At this

 7           time, I want to play this.

 8                THE COURT:  All right.  Okay.  What

 9           we'll do is we'll adjourn and take a bathroom

10           break for about ten minutes, and I'll get

11           some speakers.  And I think that will be

12           better for everybody rather than everybody

13           trying to hear this teeny laptop.

14                          (Whereupon, a brief recess was

15                          had.)

16                THE COURT:  Okay.  Do you want to go

17           straight to the tape now?

18                MR. PERRY:  Yes.

19                THE COURT:  And that's Exhibit --

20                THE WITNESS:  Can we stop it?  Will you

21           be stopping it or --

22                MR. PERRY:  No.  Let's just --

23                THE WITNESS:  Can I say what I'm
```

58

1          of just trying to shut the door.

2    Q.    Yes.  Okay.  Let's go back chronologically.

3          After the conference that you had, what

4          happened?

5    A.    Let's see.  Between the time of the meeting

6          and the response that I gave Ms. Carr, I sent

7          her an email.  I was out of the office.  I

8          was in Birmingham.  Instructing her -- this

9          is on Exhibit 9 -- that I needed her to purge

10         the SACS folders.  And after having met with

11         her, I understood that she had some concerns

12         about the personal information.  And in

13         trying to get her to do the job, I told her

14         in the email, Just stack up the personnel

15         stuff that you're not comfortable with, you

16         know, and I'll take care of it but purge the

17         rest of the files.  And we're talking it was

18         five Rubbermaid boxes of SACS files.  SACS is

19         Southern Accreditation of Colleges and

20         Schools.  We had gone through the

21         accreditation process, and we had files of

22         documentation.  And those had to be purged

23         because we had to start doing the

59

1          recertification, the reaccreditation, and I

2          wanted those cleaned out.  And so I sent her

3          an email telling her, you know, I was going

4          to be in Birmingham and that she needed to

5          take care of that for me, and she responded

6          stating that she didn't feel comfortable

7          performing the task.

8     Q.   That's Exhibit 9, correct?

9     A.   Correct.

10    Q.   Read into the Record her email response to

11         you.

12    A.   Okay.  This is from Ms. Carr to

13         Ms. Smitherman, Subject RE:  April 17th.

14         Good morning.  That's the way I had

15         originally sent it to her.  I do not recall

16         you informing me that you would be in

17         Birmingham on Monday, April the 17th, 2006.

18         I was out of the office the week of April

19         17th and 21st, 2006 due to death in my

20         family.  As of this date, April 26th, I have

21         not received a monthly calendar from you

22         since July 2005 in reference to your out-of-

23         the-office meeting/training, et cetera.

1     April the 12th approximately 8:45 a.m., you

2     entered my office telling me you wanted me to

3     start taking out the documentation in the

4     SACS folders, shredding information with

5     Social Security numbers for the teachers and

6     students, file documentation for teachers in

7     their professional development folder and

8     throw everything else away.  I informed you

9     that due to your response I have received

10    from you on April the 6th alleging violation

11    of ethics and confidentiality that I did not

12    feel comfortable with removing, shredding, or

13    filing documents pertaining to teachers and

14    students.  Due to the letter of grievance I

15    submitted to you on April the 7th and until

16    this grievance is resolved, I still do not

17    feel comfortable with performing the tasks

18    you have assigned me to do concerning the

19    SACS documentation.

20  Q.  All right.  Now, the grievance that she's

21      saying that has to be resolved is the one --

22  A.  That we had discussed on the --

23  Q.  -- that is recorded.  And your -- we heard

61

```
 1            how that ended.
 2     A.    Correct.
 3     Q.    So obviously there was going to be no
 4            resolution, was there?
 5     A.    No.  Just because she filed a grievance
 6            didn't mean I didn't need her to do her
 7            work.  I mean, I still had responsibilities.
 8            We had responsibilities.  We had things that
 9            needed to be done in the office.
10     Q.    Let me jump ahead, and we'll get back in line
11            in chronology after this.  But did she ever
12            do that task?
13     A.    She helped develop the files.
14     Q.    No, no, no.  Did she -- you asked her to take
15            care of these SACS boxes, and she answered
16            you and said, You didn't tell me you were
17            going out of town and I'm not doing it.
18     A.    No.
19     Q.    Did she do it?
20     A.    No.
21     Q.    Did she ever do it?
22     A.    No.  And I wrote her a memo directing her to
23            do it later on again.
```

62

1    Q.   All right.

2    A.   And again tried to clarify that if there's a

3         piece of document that you're uncomfortable

4         with, pull it out, set it to the side, and I

5         will handle it when I get in the office.

6         Ms. Carr had had privy to this information,

7         all these documents several times.  She's the

8         one that filed the paperwork in the files for

9         me.  When we set up the folders, I would

10        write on the top right-hand corner what file

11        it went into, what standard it would go into,

12        and she's the one that put the data in the

13        files originally for me.  And this is the

14        same information that we have access to in

15        the office all the time.

16   Q.   And she's just telling you, No, I'm not going

17        to do it.

18   A.   Yes.  And to this day, you know, she had

19        not -- she's not.

20   Q.   Okay.  Look at Exhibit 10.

21   A.   This is my response to her grievance.

22   Q.   Well, let me look at this.  I don't know if

23        we need to go to that or not.  Well, let's do

63

```
 1              it.  You responded to her grievance, correct?
 2      A.   Yes, I did on the 19th.  I was going in
 3           chronological order.  The email was sent in
 4           originally on the 17th.  Her response I did
 5           -- I sent to her on the 19th.  She didn't
 6           actually receive it until the 26th, though,
 7           because of her being out of the office those
 8           days she discussed.
 9      Q.   Okay.  All right.  Okay.  Then what happened?
10      A.   I went to -- I was going to give Ms. Carr a
11           written warning on her insubordination
12           because she had not completed the SACS
13           activities and --
14      Q.   Okay.
15      A.   -- her belligerent behavior on the 13th.
16      Q.   All right.  You may have just said this and
17           it went in one ear and out the other.  Did
18           you attempt to meet with her?
19      A.   I did.
20      Q.   Okay.  Did you testify to that just now?
21      A.   I thought I did.  I attempted to meet with
22           her to give her a written warning.
23      Q.   No, no, no.  I'm talking about the grievance
```

64

```
 1              and the response that we just --
 2                 THE COURT:  You just said that she
 3              prepared a response.
 4                 MR. PERRY:  I thought so.
 5     Q.    But I think in addition to preparing the
 6           response -- well, did anything else take
 7           place in regard to that written response and
 8           Ms. Carr?
 9     A.    I'm not following you.
10     Q.    Okay.
11     A.    Oh, let me see.  That was on the 1st?  Yeah.
12           I had also given her an assignment on the --
13           on April the 27th.
14     Q.    Okay.  What was that assignment?
15     A.    That assignment was -- can I just read it?
16     Q.    Yes.
17     A.    I need award memos for two thousand dollars
18           addressed to the following persons:  Jimmy
19           Ellis, John Green, Philip Ward, Charles
20           Broaden, Evelyn Myles, Eleanor Sanders,
21           Roosevelt Walker, Leo Smith, Jimmy Don
22           Shoemaker, and Carolyn Stanton.
23     Q.    Those are all staff?
```

66

1       a standard memo that we do to send out.  This

2       is not something new that she had not seen

3       before because she had done them the previous

4       year, fiscal year.  But this one, since she

5       had done it before -- Dr. SoJuan Crenshaw has

6       been hired, and she was still in the

7       transition stage.  And still those items were

8       coming from my office, not her office.  And

9       Dr. Stewart had told us that everything

10      should be coming from us instead of just her

11      or myself until we get through the

12      transitional stage.  And so I had left this

13      for Ms. Carr to pull -- to make it up.

14      Didn't ask her to send it out.  Told her to

15      type them up.  And she sent it back not done

16      with a note, and I don't think the note is in

17      here.  Basically she told me, You have to

18      write it yourself.  Give me the words you

19      want it written on or how you want it written

20      and then I'll do it.

21  Q.  Was it a sticky note or was it a handwritten

22      note when she gave it back or was there a

23      note?

1    A.   There was a note.

2    Q.   I thought we had it in here.

3    A.   I thought we did too because you can see

4         there was a staple at the top.  She wanted me

5         to put it in the exact words as I wanted it

6         developed and then she would do it.

7    Q.   Okay.  Did she ever do what you asked her to

8         do?

9    A.   In regards to this?

10   Q.   Yes.

11   A.   No.

12   Q.   Had she in the past done this -- this is a

13        letter that has to be done every year?

14   A.   Oh, yeah.  We have several federal programs

15        that we get money under.  We get money under

16        Carl Perkins.  We get money under Title I,

17        Title II, Title IV, Title V.  And when we get

18        those in, if the budget permits that, it goes

19        to specific teachers or librarians.  Yes,

20        this is something we do on a regular basis.

21   Q.   So this is more than annual.  It's regular.

22   A.   It's regular.  If we get a grant in, that a

23        librarian has wrote a grant and we have to

68

```
 1                divvy out the money, it goes to them.
 2      Q.    And the letter is basically a form letter,
 3            isn't it?
 4      A.    Pretty much so.  It's a general letter, just,
 5            you know, Ms. Womack, You've been awarded,
 6            you know, two thousand dollars to use for
 7            your library funds, blah, blah, blah, blah,
 8            blah, and then this general information.  If
 9            you're wanting to -- you know, if you're
10            going to buy a contract -- if you're going to
11            buy something on contract, you've got to
12            purchase off contract, you know.
13      Q.    Was Ms. Carr capable of doing this?
14      A.    Absolutely.
15      Q.    Had she done it before?
16      A.    Yes.
17      Q.    Was there any reason for her to refuse to do
18            it this time?
19      A.    No.
20      Q.    Okay.
21                MR. MANASCO:  Is the document she read
22            from going to be offered as an exhibit?
23                MR. PERRY:  It is.  Sorry.  Well, the
```

70

1    Q.   Yeah.  Okay.  On April 27th, did something

2          else take place?  Look at Exhibit 10.

3    A.   Yes.  That's when I tried to meet with

4          Ms. Carr in regards to giving her a written

5          warning.

6    Q.   Okay.  And what happened?

7    A.   She refused to meet with me.  She told me if

8          -- she came to the door and told me that if

9          that's what -- you can put it in my mailbox.

10   Q.   Did you?

11   A.   Yes.

12   Q.   Okay.

13   A.   Yes.  We submitted a copy of this for

14        Dr. Stewart's signature, Exhibit 5 in that

15        addendum.  She refused to sign, refused to

16        meet, and he witnessed it.

17   Q.   This warning also references three other

18        directives:  March 23rd, April 10, and April

19        26th.  Have we covered each of those?

20   A.   I'm just checking.  Yes.

21   Q.   Okay.  Now, what happened next?

22   A.   Because she wouldn't meet with me and sit

23        down with me and go over the warning, I wrote

1          a letter of reprimand.

2     Q.   Okay.  And is that Exhibit 11?

3     A.   That is Exhibit 11.  It was on May 1st.

4     Q.   Okay.

5     A.   Again she refused to meet with me to sign.  I

6          think we submitted an audio version of a

7          telephone recording in the fact-finding

8          hearing where she --

9     Q.   Yes.

10    A.   She left a message on my voice mail telling

11         me anything I had for her -- I'm

12         paraphrasing -- anything I had for her, to

13         just put it in her mailbox.

14    Q.   In other words, she would not talk with you.

15    A.   No, she would not meet with me.

16    Q.   Do you need to take a minute?

17    A.   I'm just looking to see if -- I know it's in

18         here.  I thought maybe that the court

19         reporter actually typed out what the

20         recording said.

21    Q.   Okay.  No.  That's all right.  The bottom

22         line is, your testimony, the bottom line is

23         she left you a phone message and said she

72

|    |    |                                                        |
|----|----|--------------------------------------------------------|
| 1  |    | will not meet with you --                              |
| 2  | A. | No.                                                    |
| 3  | Q. | -- correct?                                            |
| 4  | A. | Correct.                                               |
| 5  | Q. | Did she?                                                |
| 6  | A. | No.                                                     |
| 7  | Q. | All right.  What happened next?                        |
| 8  | A. | She wrote a letter to Dr. Stewart on May the           |
| 9  |    | 5th.                                                    |
| 10 | Q. | Okay.  In other words -- and that had to do            |
| 11 |    | with her grievance, right?                             |
| 12 | A. | Uh-huh.                                                 |
| 13 | Q. | All right.  Then what?                                  |
| 14 | A. | And then she wrote on May the 9th a                     |
| 15 |    | continuance letter of her grievance.                   |
| 16 | Q. | Then what?                                              |
| 17 | A. | On May 10th she wrote an addendum to the               |
| 18 |    | letter of her grievance.                               |
| 19 | Q. | All right.  Then what?                                  |
| 20 | A. | The same day, on the 10th, is when I wrote             |
| 21 |    | the memo to Ms. Carr directing her that she            |
| 22 |    | was to finish those SACS files and purge               |
| 23 |    | those SACS files.                                       |

*Laura A. Head, Court Reporter*
*(334) 286-4938 or (334) 202-4851*

1    Q.    All right.  And that never was done, correct?

2    A.    No.  That's Exhibit 15.

3    Q.    Were there other directives that --

4    A.    Yes.

5    Q.    Okay.

6    A.    On -- and this one goes back to April 10th.

7    Q.    All right.

8    A.    I had asked her to -- she had helped

9          Dr. Stewart with his policy manuals.  We have

10         two policy manuals at DYS.  We have School

11         District policy manual, and we have the DYS

12         policy manual.  And there's no dividers in

13         it.  It's just chapter after chapter after

14         chapter of policies.  And she had -- in

15         Defendant's Exhibit 9, she had developed

16         these dividers for Dr. Stewart, and I had

17         used his policy manuals because it was quick

18         reference.  And I thought that's -- and since

19         she had done it for him, she's got them in

20         her computer.  She can print them off and put

21         them in mine.  And so I told her -- I asked

22         her, I said, Would you -- I took my policy

23         manuals to her and asked her to do the same

1    for me and put them in the files, you know,

2    make the binders for me. And she was busy

3    doing stuff. She was across the other side

4    of the building hanging Easter eggs at one

5    point on the glass. And I asked her -- had

6    to ask her twice to do those. And she would

7    bring them and put them -- after she printed

8    them off huffingly, she asked me why I needed

9    them today. And I said, I didn't need them

10   today but this is what I've asked you to do

11   today. And at this point, it's nine-

12   something, and I have not given her any

13   instructions for the day. This is the only

14   thing I had asked her to do and she's, Why

15   have you got to have it today, why have I got

16   to do it today, do you need it right now type

17   attitude. And I told her I didn't need it

18   immediately, but I did want it done that

19   day. And she brought it back to my office a

20   little bit later. She had the sheets

21   printed, but they were not put in the

22   binders. So I took it back to her and told

23   her to file them. And she said, I didn't

1        file them for Dr. Stewart.  He put them in

2        himself.  And I said, you know, I'm asking

3        you to put them in the binders, not what

4        Dr. Stewart did.  I'm asking you to put them

5        in the binders.  That's still the only thing

6        I've asked her to do at this point is to do

7        that for me.  And she did it begrudgingly,

8        but she did it.  And it was done by the

9        afternoon.

10   Q.   She did do that?

11   A.   She did do it but with much questioning

12        and --

13   Q.   Right.  Okay.

14   A.   And I had to continually give her directives.

15   Q.   All right.  Was there -- what finally

16        happened that resulted in a recommendation?

17   A.   Well, after the May 10th memo where I asked

18        her finally to finish those files, those SACS

19        files, I needed them done, and she didn't do

20        it.

21   Q.   I mean, after -- what I'm asking you is after

22        the reprimand.

23   A.   Reprimand.

76

Q.   First you gave her a warning.  Then you gave
     her a reprimand.

A.   Yes.

Q.   And then finally --

A.   I made the recommendation to Dr. Stewart to
     release her.

Q.   And did you tell the Hearing Officer about
     that?

A.   I wrote a letter to Dr. Stewart requesting
     that she be relinquished of her duties and be
     released.

Q.   And what was the basis of that
     recommendation?

A.   Insubordination and refusal to do her job.

Q.   Was there a final act of insubordination that
     precipitated that?

A.   The SACS files.  I mean, it has evolved.  I
     mean, she had gotten to where she wouldn't
     communicate with me except through my
     mailbox.  I mean, she told me on the phone,
     Anything you have for me to do, put it in my
     mailbox.

Q.   And when she reached the point where she

1           would not communicate with you at all and

2           hadn't done any of the directives that you

3           had asked her to do --

4    A.    She would still do what she wanted to do.

5    Q.    Okay.

6    A.    She would fax stuff if I put it in her

7           mailbox, you know, but she wouldn't do

8           anything that had to do with names, numbers.

9           I mean, she would fax stuff for me, but that

10          was about it.  I mean, she -- and she gave

11          some documentation to that where she faxed

12          stuff to people.  But that was just about all

13          she was doing for me at that point, and I

14          needed a lots more.  I needed someone that

15          was willing to do their job.

16   Q.    Okay.  What was the date that you

17          recommended?

18   A.    I think it was the 12th.

19   Q.    I don't see that.

20   A.    It's not in here.  I think I have a copy.

21   Q.    Do you have one with you?

22   A.    No, I do not.

23             MR. PERRY:  Can we take just a break

78

| | |
|---|---|
| 1 | for just a minute and let me find this |
| 2 | letter? Do you have her personnel file? |
| 3 | THE COURT: For the Record, all I've |
| 4 | got is -- what we have here is an abbreviated |
| 5 | form of your personnel file. We don't have |
| 6 | everything that would be contained at the |
| 7 | department. We've got an abbreviated |
| 8 | version. That's always considered in these |
| 9 | proceedings. You're welcome to look through |
| 10 | it if you need to. |
| 11 | MS. CARR: No, I've got one from them. |
| 12 | I appreciate it. |
| 13 | THE COURT: Do you need to look at this |
| 14 | one? |
| 15 | MR. PERRY: Yes. You do have an |
| 16 | abbreviated file, don't you? Okay. That's |
| 17 | fine. |
| 18 | Q. (By Mr. Perry:) On May 16th, what happened? |
| 19 | A. There was a fact-finding hearing in regard to |
| 20 | Ms. Carr's termination. |
| 21 | Q. Okay. Was there a Hearing Officer there? |
| 22 | A. Yes. |
| 23 | Q. Who was that? |

1 A. Mr. Tim Davis, the Deputy Director of the

2   Department of Youth Services.

3 Q. Okay.  And that is the document that's

4   attached to my exhibit list, Number 16,

5   right?

6 A. Correct.

7    MR. PERRY:  Okay.  That's all.  You can

8   answer Mr. Manasco's questions.

9    THE WITNESS:  Okay.

10     CROSS EXAMINATION

11 BY MR. MANASCO:

12 Q. Good afternoon.  Okay.  Ms. Smitherman, you

13   testified earlier that you had -- Ms. Ruby

14   Carr had worked with you since September of

15   2004?

16 A. Sure.

17 Q. Okay.  And do you know the circumstances of

18   how she came to be working with you?

19    MR. PERRY:  I'm going to object.

20   What's the relevance?

21    THE COURT:  Well, I mean, you asked

22   about background.  I'm going to allow him to

23   go into it.

STATE OF ALABAMA

# DEPARTMENT DYS SERVICES

J. WALTER WOOD, JR.
Executive Director

SCHOOL DISTRICT
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone (334) 215-3850
Fax Number (334) 215-3011

JOHN STEWART, Ed.D., Superintendent
School District 210

# Memorandum

To:     Tracy Smitherman
        Coordinator

From:   Ruby H. Carr, YSA. [signature]

Date:   January 23, 2006

Re:     Property Inventory
        DYS School District 210

Ms. Smitherman,

Several months ago you informed me that I could transfer School District Property Inventory Register to Yolanda Kelley, Technology Coordinator. Then and now, I do not feel that I am in a position to transfer the Property Inventory to Mrs. Kelley.

Due to circumstances that are beyond my individual control I feel that it is necessary as of this day january 23, 2006 that I relinquish any and all responsibility of maintaining the Property Inventory Register for DYS School District 210.

I am submitting to you copies of the Property Inventory Register & documentation for (Central Office, Autauga, Chalkville-Sequoyah, Thomasville, Vacca-McNeel, & L. B. Wallace) to date. Also, I am removing the (2) Gateway Laptop Computers from my office.

I do not feel that it is necessary that we meet to discuss anything concerning DYS School District 210 Property Inventory since everything is self explanatory.

As always, I will continue to work and give this organization and School District a 110%.

Cc:     Dr. John Stewart, Superintendent
        Yolanda Kelley, Technology Coordinator
        Wendell Ross, Property Manager
        File

rhc

4/03/06

Would like to be put in personnel file along w/inventory

Conni

EXHIBIT
5
0037

# DYS School District Property Control Register
## Central Office

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55269 | 6/13/2005 | DYS-003177 | Computer - 1R1WN71 | T. Smitherman | R.Carr | | |
| Central Office | | | Monitor - CN0T61167161855ABAYS | T. Smitherman | R.Carr | | |
| 83-13863 | 8/9/2005 | DYS-003148 | Gateway M460E Laptop Computer | T. Smitherman | Y.Kelley | | |
| Central Office | | | Ser#: 0035618863 | | | | |
| 83-13864 | 7/14/2005 | DYS-003149 | Gateway M460E Laptop Computer | T. Smitherman | Q. Barker | | |
| Central Office | | | Ser#: 0035618864 | | | | |
| 83-13865 | 9/20/2005 | DYS-003150 | Gateway M460E Laptop Computer | T. Smitherman | T. Smitherman | | |
| Central Office | | | Ser#: 0035618865 | Transferred to J. Shoemaker (Wallace School) on 10/11/05 | | | |
| 83-13809 | N/A | DYS-003113 | Gateway M460E Laptop Computer | School District | NOT ISSUED | | |
| Chalkville School | | | Ser#: 0035618809 | | | | |
| 83-13811 | N/A | DYS-003115 | Gateway M460E Laptop Computer | School District | NOT ISSUED | | |
| Vacca-McNeel | | | Ser#: 0035618811 | | | | |
| 83-55249 | 9/15/2005 | DYS-003258 | Gateway Server | T. Smitherman | Server Room | | |
| Bldg. 9 Support Operation | | | Ser#: 0035823263 | | | | |
| 83-55250 | 9/15/2005 | DYS-003259 | Gateway Server | T. Smitherman | Server Room | | |
| Bldg. 9 Support Operation | | | Ser#: 0035823264 | | | | |
| 83-55274 | 12/28/2005 | | Dell 3100CN Color Laser Printer | T. Smitherman | R. Carr | | |
| Central Office | | | Ser#: CN-OP4869-71971-58C-A240 | | | | |
| 83-57754 | 1/19/2006 | | Dell 3100CN Color Laser Printer | J. Stewart | Y.Kelley | | |
| Central Office | | | Ser#: HK0F5548-71974-59N-L011 | | | | |
| | | | | | | | |
| | | | | | | | |

0038

1/23/2006

## DYS School District Property Control Register
## Autauga

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55252 | 6/9/2005 | DYS-003170 | Computer - D11ZN71 | T. Smitherman | C. Naramore | | |
| Autauga | | | Monitor - CN0T61167161855ABA4R | T. Smitherman | C. Naramore | | |
| 83-13785 | 7/15/2005 | DYS-003089 | Gateway M460E Laptop Computer | T. Smitherman | D. Holmes | | |
| Autauga | | | Ser#: 0035618785 | | | | |
| 83-13786 | 7/15/2005 | DYS-003090 | Gateway M460E Laptop Computer | T. Smitherman | L. Kirkland | | |
| Autauga | | | Ser#: 0035618786 | | | | |
| 83-13787 | 7/15/2005 | DYS-003091 | Gateway M460E Laptop Computer | T. Smitherman | C. Naramore | | |
| Autauga | | | Ser#: 0035618787 | | | | |
| 83-13788 | 7/15/2005 | DYS-003092 | Gateway M460E Laptop Computer | T. Smitherman | L. Whitman | | |
| Autauga | | | Ser#: 0035618788 | | | | |
| 83-13789 | 7/15/2005 | DYS-003093 | Gateway M460E Laptop Computer | T. Smitherman | L. Williamson | | |
| Autauga | | | Ser#: 0035618789 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

1/23/2006

## DYS School District Property Control Register
## Chalkville

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55264 | 6/10/2005 | DYS-003175 | Computer - 801ZZN71 | R. Carr | W. Jefferies | | |
| Chalkville | 6/10/2005 | | Monitor - CN0T61167161855ABA6H | R. Carr | W. Jefferies | | |
| 83-55262 | 6/10/2005 | DYS-003176 | Computer - 501ZN71 | T. Smitherman | J. Wood | | |
| Chalkville | 6/10/2005 | | Monitor - CN0T61167161855ABA4Q | T. Smitherman | J. Wood | | |
| 83-55271 | 6/15/2005 | DYS-003183 | Delonghi Air Conditioner | T. Smitherman | Chery Bufford | | |
| Chalkville School | | | Ser#: 40512 S01P016129 | | Server Room | | |
| 83-13793 | 7/18/2005 | DYS-003097 | Gateway M460E Laptop Computer | T. Smitherman | C. Bufford | | |
| Chalkville | | | Ser#: 0035618793 | | | | |
| 83-13794 | 7/18/2005 | DYS-003098 | Gateway M460E Laptop Computer | T. Smitherman | B. Clark | | |
| Chalkville | | | Ser#: 0035618794 | | | | |
| 83-13795 | 7/18/2005 | DYS-003099 | Gateway M460E Laptop Computer | T. Smitherman | J. Daniels | | |
| Chalkville | | | Ser#: 0035618795 | | | | |
| 83-13796 | 7/18/2005 | DYS-003100 | Gateway M460E Laptop Computer | T. Smitherman | J. Dixon | | |
| Chalkville | | | Ser#: 0035618796 | | | | |
| 83-13797 | 7/18/2005 | DYS-003101 | Gateway M460E Laptop Computer | T. Smitherman | A. Ethridge | | |
| Chalkville | | | Ser#: 0035618797 | | | | |
| 83-13798 | 7/18/2005 | DYS-003102 | Gateway M460E Laptop Computer | T. Smitherman | R. Hunter | | |
| Chalkville | | | Ser#: 0035618798 | | | | |
| 83-13799 | 7/18/2005 | DYS-003103 | Gateway M460E Laptop Computer | T. Smitherman | W. Jefferies | | |
| Chalkville | | | Ser#: 0035618799 | | | | |
| 83-13800 | 7/18/2005 | DYS-003104 | Gateway M460E Laptop Computer | T. Smitherman | G. Lawrence | | |
| Chalkville | | | Ser#: 0035618800 | | | | |
| | | | | | | | |

0040

## DYS School District Property Control Register
### Chalkville

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-13801 | 7/18/2005 | DYS-003105 | Gateway M460E Laptop Computer | T. Smitherman | E. Myles | | |
| Chalkville | | | Ser#: 0035618801 | | | | |
| 83-13802 | 7/18/2005 | DYS-003106 | Gateway M460E Laptop Computer | T. Smitherman | M. Patterson | | |
| Chalkville | | | Ser#: 0035618802 | | | | |
| 83-13803 | 7/18/2005 | DYS-003107 | Gateway M460E Laptop Computer | T. Smitherman | M. Rencher | | |
| Chalkville | | | Ser#: 0035618803 | | | | |
| 83-13804 | 7/18/2005 | DYS-003108 | Gateway M460E Laptop Computer | T. Smitherman | R. Seales | | |
| Chalkville | | | Ser#: 0035618804 | | | | |
| 83-13805 | 7/18/2005 | DYS-003109 | Gateway M460E Laptop Computer | T. Smitherman | C. Seals | | |
| Chalkville | | | Ser#: 0035618805 | | | | |
| 83-13806 | 7/18/2005 | DYS-003110 | Gateway M460E Laptop Computer | T. Smitherman | C. Stanton | | |
| Chalkville | | | Ser#: 0035618806 | | | | |
| 83-13807 | 7/18/2005 | DYS-003111 | Gateway M460E Laptop Computer | T. Smitherman | N. Watts | | |
| Chalkville | | | Ser#: 0035618807 | | | | |
| 83-13808 | 9/19/2005 | DYS-003112 | Gateway M460E Laptop Computer | T. Smitherman | T. Boggs | | |
| Chalkville | | | Ser#: 0035618808 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

0041

## DYS School District Property Control Register
## Thomasville

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55254 | 6/9/2005 | DYS-003171 | Computer - 711ZN71 | T. Smitherman | S. Smith | | |
| Thomasville | 6/9/2005 | | Monitor - CN0T61167161855ABAFR | T. Smitherman | S. Smith | | |
| 83-13790 | 7/15/2005 | DYS-003094 | Gateway M460E Laptop Computer | T. Smitherman | R. Ernest | | |
| Thomasville | | | Ser#:  0035618790 | | | | |
| 83-13791 | 7/15/2005 | DYS-003095 | Gateway M460E Laptop Computer | T. Smitherman | W. Hill | | |
| Thomasville | | | Ser#:  0035618791 | | | | |
| 83-13792 | 7/15/2005 | DYS-003096 | Gateway M460E Laptop Computer | T. Smitherman | S. Smith | | |
| Thomasville | | | Ser#:  0035618792 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

0042

1/23/2006

# DYS School District Property Control Register
## Vacca-McNeel

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55265 | 6/10/2005 | DYS-003174 | Computer - 311ZN71 | R. Carr | C. Turner | | |
| Vacca-McNeel | 6/10/2005 | | Monitor - CN0T61167161855ABAGC | R. Carr | C. Turner | | |
| 83-55268 | 6/13/2005 | DYS-003179 | Computer - H11ZN71 | T. Smitherman | P. Bowen | | |
| Vacca-McNeel | 6/13/2005 | | Monitor - CN0T61167161855ABC7G | T. Smitherman | P. Bowen | | |
| 83-56272 | 6/15/2005 | DYS-003184 | Delonghi Air Conditioner | T. Smitherman | Roger Wilkinson | | |
| Vacca-McNeel | | | Ser#: 40512 S01P016130 | | Server Room | | |
| 83-13810 | 7/15/2005 | DYS-003114 | Gateway M460E Laptop Computer | T. Smitherman | L. Browning | | |
| Vacca-McNeel | | | Ser#: 0035618810 | | | | |
| 83-13812 | 7/15/2005 | DYS-003116 | Gateway M460E Laptop Computer | T. Smitherman | M. English | | |
| Vacca-McNeel | | | Ser#: 0035618812 | | | | |
| 83-13813 | 7/15/2005 | DYS-003117 | Gateway M460E Laptop Computer | T. Smitherman | G. Golden | | |
| Vacca-McNeel | | | Ser#: 0035618813 | | | | |
| 83-13814 | 7/15/2005 | DYS-003118 | Gateway M460E Laptop Computer | T. Smitherman | C. Goodgame | | |
| Vacca-McNeel | | | Ser#: 0035618814 | | | | |
| 83-13815 | 7/15/2005 | DYS-003119 | Gateway M460E Laptop Computer | T. Smitherman | R. Harrell | | |
| Vacca-McNeel | | | Ser#: 0035618815 | | | | |
| 83-13816 | 7/15/2005 | DYS-003120 | Gateway M460E Laptop Computer | T. Smitherman | R. Holloway | | |
| Vacca-McNeel | | | Ser#: 0035618816 | | | | |
| 83-13817 | 7/15/2005 | DYS-003121 | Gateway M460E Laptop Computer | T. Smitherman | A. Jones | | |
| Vacca-McNeel | | | Ser#: 0035618817 | | | | |
| 83-13818 | 7/15/2005 | DYS-003122 | Gateway M460E Laptop Computer | T. Smitherman | W. Jones | | |
| Vacca-McNeel | | | Ser#: 0035618818 | | | | |
| 83-13819 | 7/15/2005 | DYS-003123 | Gateway M460E Laptop Computer | T. Smitherman | L. McQueen | | |
| Vacca-McNeel | | | Ser#: 0035618819 | | | | |

0043

## DYS School District Property Control Register
## Vacca-McNeel

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-13820 | 7/15/2005 | DYS-003124 | Gateway M460E Laptop Computer | T. Smitherman | S. Perry | | |
| Vacca-McNeel | | | Ser#: 0035618820 | | | | |
| 83-13821 | 7/15/2005 | DYS-003125 | Gateway M460E Laptop Computer | T. Smitherman | M. Ravizee | | |
| Vacca-McNeel | | | Ser#: 0035618821 | | | | |
| 83-13822 | 7/15/2005 | DYS-003126 | Gateway M460E Laptop Computer | T. Smitherman | M. Sneed | | |
| Vacca-McNeel | | | Ser#: 0035618822 | | | | |
| 83-13823 | 7/15/2005 | DYS-003127 | Gateway M460E Laptop Computer | T. Smitherman | C. Turner | | |
| Vacca-McNeel | | | Ser#: 0035618823 | | | | |
| 83-13824 | 7/15/2005 | DYS-003128 | Gateway M460E Laptop Computer | T. Smitherman | G. Tyson | | |
| Vacca-McNeel | | | Ser#: 0035618824 | | | | |
| 83-13825 | 7/15/2005 | DYS-003129 | Gateway M460E Laptop Computer | T. Smitherman | P. Ward | | |
| Vacca-McNeel | | | Ser#: 0035618825 | | | | |
| 83-13826 | 7/15/2005 | DYS-003130 | Gateway M460E Laptop Computer | T. Smitherman | C. Wilburn | | |
| Vacca-McNeel | | | Ser#: 0035618826 | | | | |
| 83-13828 | 8/9/2005 | DYS-003132 | Gateway M460E Laptop Computer | T. Smitherman | A. Tigner | | |
| Vacca-McNeel | | | Ser#: 0035618828 | | | | |
| 83-13829 | 9/19/2005 | DYS-003133 | Gateway M460E Laptop Computer | T. Smitherman | E. Wright | | |
| Vacca-McNeel | | | Ser#: 0035618829 | | | | |
| 83-13827 | 9/19/2005 | DYS-003131 | Gateway M460E Laptop Computer | School District | S. Sanders | | |
| Vacca-McNeel | | | Ser#: 0035618827 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

0044

1/23/2006

## DYS School District Property Control Register
### L. B. Wallace

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-55260 | 6/10/2005 | DYS-003172 | Computer - G01ZN71 | R. Carr | P. Thompson | | |
| Wallace School | 6/10/2005 | | Monitor - CN0T61167161855ABAGA | R. Carr | P. Thompson | | |
| 83-55258 | 6/10/2005 | DYS-003173 | Computer - BZ0ZN71 | R. Carr | G. Dunn | | |
| Holloway Hall | 6/10/2005 | | Monitor - CN0T61167161855ABA4P | R. Carr | G. Dunn | | |
| 83-55273 | 6/15/2005 | DYS-003185 | Delonghi Air Conditioner | T. Smitherman | C. Gavin | | |
| Wallace School | | | Ser#. 40512 S01P016117 | | Server Room | | |
| 83-48509 | 7/1/2005 | DYS-003180 | Ridgid Pipe Treader M#300-T2 | C. Gavin | J. Fox | | |
| Wallace School | | | Ser# ED 80581 1102 | | Voc. Electrical | | |
| 83-13830 | 7/14/2005 | DYS-003134 | Gateway M460E Laptop Computer | T. Smitherman | E. Capelton | | |
| Wallace School | | | Ser#:  0035618830 | | | | |
| 83-13831 | 7/14/2005 | DYS-003135 | Gateway M460E Laptop Computer | T. Smitherman | J. Clark | | |
| Wallace School | | | Ser#:  0035618831 | | | | |
| 83-13832 | 7/14/2005 | DYS-003136 | Gateway M460E Laptop Computer | T. Smitherman | S. Crenshaw | | |
| Wallace School | | | Ser#:  0035618832 | | | | |
| 83-13833 | 7/14/2005 | DYS-003137 | Gateway M460E Laptop Computer | T. Smitherman | S. Crowell | | |
| Wallace School | | | Ser#:  0035618833 | | | | |
| 83-13834 | 7/14/2005 | DYS-003138 | Gateway M460E Laptop Computer | T. Smitherman | L. Crymes | | |
| Wallace School | | | Ser#:  0035618834 | | | | |
| 83-13835 | 7/14/2005 | DYS-003139 | Gateway M460E Laptop Computer | T. Smitherman | G. Dunn | | |
| Wallace School | | | Ser#:  0035618835 | | | | |
| 83-13836 | 7/14/2005 | DYS-003140 | Gateway M460E Laptop Computer | T. Smitherman | J. Ellis | | |
| Wallace School | | | Ser#:  0035618836 | | | | |
| | | | | | | | |

0045

1/23/2006

## DYS School District Property Control Register
## L. B. Wallace

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-13837 | 7/14/2005 | DYS-003141 | Gateway M460E Laptop Computer | T. Smitherman | J. Fox | Retired 12/16/05 | |
| Wallace School | | | Ser#: 0035618837 | Computer was returned to Central Office 1/11/06 | | | |
| 83-13838 | 7/14/2005 | DYS-003142 | Gateway M460E Laptop Computer | T. Smitherman | A. Freeman | Retired 12/16/05 | |
| Wallace School | | | Ser#: 0035618838 | Computer was returned to Central Office 1/11/06 | | | |
| 83-13839 | 7/15/2005 | DYS-003143 | Gateway M460E Laptop Computer | T. Smitherman | C. Gavin | | |
| Wallace School | | | Ser#: 0035618839 | | | | |
| 83-13840 | 7/18/2005 | DYS-003144 | Gateway M460E Laptop Computer | T. Smitherman | G. Graves | | |
| Wallace School | | | Ser#: 0035618840 | | | | |
| 83-13841 | 7/14/2005 | DYS-003145 | Gateway M460E Laptop Computer | T. Smitherman | J. Green | | |
| Wallace School | | | Ser#: 0035618841 | | | | |
| 83-13842 | 7/14/2005 | DYS-003146 | Gateway M460E Laptop Computer | T. Smitherman | J. Hurst | | |
| Wallace School | | | Ser#: 0035618842 | | | | |
| 83-13843 | 7/14/2005 | DYS-003147 | Gateway M460E Laptop Computer | T. Smitherman | R. Jemison | | |
| Wallace School | | | Ser#: 0035618843 | | | | |
| 83-13844 | 7/14/2005 | *DYS-003152 | Gateway M460E Laptop Computer | T. Smitherman | K. John | | |
| Wallace School | | | Ser#: 0035618844 | | | | |
| 83-13845 | 7/14/2005 | DYS-003153 | Gateway M460E Laptop Computer | T. Smitherman | I. Kelly | | |
| Wallace School | | | Ser#: 0035618845 | | | | |
| 83-13846 | 7/14/2005 | DYS-003154 | Gateway M460E Laptop Computer | T. Smitherman | J. Killough | | |
| Wallace School | | | Ser#: 0035618846 | | | | |
| 83-13848 | 7/14/2005 | DYS-003155 | Gateway M460E Laptop Computer | T. Smitherman | D. Laughlin | | |
| Wallace School | | | Ser#: 0035618848 | | | | |
| | | | | | | | |

0046

1/23/2006

## DYS School District Property Control Register
### L. B. Wallace

0047

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-13847 | 7/14/2005 | DYS-003156 | Gateway M460E Laptop Computer | T. Smitherman | D. Ledyard | Retired 12/6/05 | |
| Wallace School | | | Ser#: 0035618847 | | | ITS Contractor Jim Mason is using this computer | |
| 83-13849 | 7/14/2005 | DYS-003151 | Gateway M460E Laptop Computer | T. Smitherman | H. Meeks | | |
| Wallace School | | | Ser#: 0035618849 | | | | |
| 83-13850 | 7/14/2005 | DYS-003157 | Gateway M460E Laptop Computer | T. Smitherman | J. Owens | | |
| Wallace School | | | Ser#: 0035618850 | | | | |
| 83-13851 | 7/14/2005 | DYS-003158 | Gateway M460E Laptop Computer | T. Smitherman | K. Ross | | |
| Wallace School | | | Ser#: 0035618851 | | | | |
| 83-13852 | 7/14/2005 | DYS-003162 | Gateway M460E Laptop Computer | T. Smitherman | E. Sanders | | |
| Wallace School | | | Ser#: 0035618852 | | | | |
| 83-13853 | 7/15/2005 | DYS-003159 | Gateway M460E Laptop Computer | T. Smitherman | M. Shivers | | |
| Wallace School | | | Ser#: 0035618853 | | | | |
| 83-13854 | 7/14/2005 | DYS-003160 | Gateway M460E Laptop Computer | T. Smitherman | J. Shoemaker | Deleted Due to Stolen | 10/10/2005 |
| Wallace School | | | Ser#: 0035618854 | | | SD1 #60212 | 11/9/2005 |
| 83-13855 | 7/14/2005 | DYS-003161 | Gateway M460E Laptop Computer | T. Smitherman | L. Smith | | |
| Wallace School | | | Ser#: 0035618855 | | | | |
| 83-13856 | 7/14/2005 | DYS-003163 | Gateway M460E Laptop Computer | T. Smitherman | D. Steely | | |
| Wallace School | | | Ser#: 0035618856 | | | | |
| 83-13857 | 7/14/2005 | DYS-003164 | Gateway M460E Laptop Computer | T. Smitherman | D. Thomas | | |
| Wallace School | | | Ser#: 0035618857 | | | | |
| 83-13858 | 7/14/2005 | DYS003165 | Gateway M460E Laptop Computer | T. Smitherman | P. Thompson | | |
| Wallace School | | | Ser#: 0035618858 | | | | |

1/23/2006

# DYS School District Property Control Register
## L. B. Wallace

| Property Control # | Date | State Property # (s) | Item Description (Serial #'s) | From | To | Trans./I&I/Radio | Instr. # |
|---|---|---|---|---|---|---|---|
| 83-13859 | 7/14/2005 | DYS-003166 | Gateway M460E Laptop Computer | T. Smitherman | R. Walker | | |
| Wallace School | | | Ser#: 0035618859 | | | | |
| 83-13860 | 7/14/2005 | DYS-003167 | Gateway M460E Laptop Computer | T. Smitherman | S. Washington | | |
| Wallace School | | | Ser#: 0035618860 | | | | |
| 83-13861 | 7/14/2005 | DYS-003168 | Gateway M460E Laptop Computer | T. Smitherman | L. Williams | | |
| Wallace School | | | Ser#: 0035618861 | | | | |
| 83-13862 | 7/14/2005 | DYS-003169 | Gateway M460E Laptop Computer | T. Smitherman | M. Womack | | |
| Wallace School | | | Ser#: 0035618862 | | | | |
| 83-55266 | 7/11/2005 | DYS-003178 | Computer - 9B78E301507 | R. Carr | D. Steely | | |
| Wallace School | | | Monitor - CN0Y4413728725449ETL | R. Carr | D. Steely | | |
| 83-48501 | 7/21/2005 | DYS-003181 | Dell 3100cn Color Laser Printer | C. Gavin | R. Walker | | |
| Wallace School | | | Ser#: 0PA4843-71971-515-B050 | | | | |
| 83-48502 | 7/21/2005 | DYS-003182 | Dell 3100cn Color Laser Printer | C. Gavin | R. Walker | | |
| Wallace School | | | Ser#: 0PA4843-71971-515-B237 | | | | |
| 83-13865 | 10/11/2005 | DYS-003150 | Gateway M460E Laptop Computer | Y. Kelley | J. Shoemaker | | |
| Wallace School | | | Ser#: 0035618865 | Transferred from T. Smitherman(Sch. District) to J. Shoemaker 10/11/05 | | | |
| 83-55275 | 1/9/2006 | | Dell 3100CN Color Laser Printer | T. Smitherman | P. Thompson | | |
| Wallace School | | | Ser#: CN-OP4843-71971-58C-A243 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

1/23/2006

0048

Exhibit 9

PLAINTIFF'S
EXHIBIT
3

EXHIBIT
6

old training
files that
had been
already used
for recert

Shread

Tracy,
I need you to
shread since this
is teachers info.

Thanks
Ruby
- 3/13/2006

# Memorandum



**DATE:**    March 23, 2006

**TO:**    Tracy Smitherman, Coordinator

**FROM:**    Ruby H. Carr, YSAide

**RE:**     **Gateway Laptop Computer**

Per phone conversation with you on 3/23/2006 in reference to the Gateway Laptop Computer you issue to Joniece Hamilton-Wood, ASA I for Chalkville-Sequoyah school on February 2, 2006. I spoke briefly with Mrs. Yolanda Kelley, Technology Coordinator concerning the issuance of the Laptop Computer, but Ms. Kelley informed me that she did not know anything about this.

Please help me to understand why Mrs. Wood was issued a Gateway Laptop Computer and no other individual serving as a Secretary for School District 210 was offered or received one. As your personal secretary you often say, I was not offered nor issued a Gateway Laptop Computer.

In July, 2005 I ask you would the Secretaries receive a Gateway Laptop Computer and you informed me that only the teachers were to receive a Laptop. *The Gateway Laptop Computer you issued Mrs. Wood belongs to L. B. Wallace School (Al Freeman-retired 12/16/05) according to the property inventory.* *(See Wallace School Property Inventory Register 1/23/2006)*

I feel that due to the lack of communication that has existed since August 23, 2005 can cause a problem such as this within any professional or non-professional work environment.

I feel that all individuals that are serving as a Secretary for School District 210 should have been offered or received a new Gateway Laptop Computer on 2/2/2006. As I informed you I would prefer a Dell Laptop over Gateway.

There have been times that we discussed being *consistent, firm,* and *fair* within the workplace but do the (3) exist at all times with each individual despite, race, creed, gender, color, professional, or non-professional.

Please do what is right to correct this problem and if I can be of any assistance please do not hesitate to ask me. As always, I will continue to give 110% to School District 210 and the Department of Youth Services.

*Just For Information:* The Gateway Laptop Computer that was issued to Mr. Charles Broaden at L.B. Wallace on 3/20/2006 serial #0035618809, property #83-13809 & DYS-003113 belongs to Chalkville-Sequoyah. *(See School District Property Inventory Register 1/23/2006)*

Cc:    Dr. John Stewart, Superintendent       Yolanda Kelley, Technology
       Wendell Ross, Property Manager        File



0040

EXHIBIT

7



State of Alabama
Department of Youth Services
School District
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone (334) 215-3859
Fax Number (334) 215-3011



JOHN STEWART, Ed.D., Superintendent
School District 210

J. WALTER WOOD, JR.
Executive Director

Placed in
Handmail
2/3/06

I acknowledge receipt of and responsibility (Code of Alabama 1975, Section 36-16-8)
for the items described below, and will return them by the date indicated.

Issued To: Signature _____ Duty Phone  680-8578

Issued By: Signature _____

Issued To: Printed Name & Position  Danielle M. Smith-Woods/AST   Date Issued  2/2/06

Return Date _____

Property Inventory Number  83-13838

Description of Item

Gateway M460E laptop computer and
carrying case
Serial number 0035618838

If this is a permanent change please send a copy of this receipt to the Department of
Youth Services Property Manager. Every six months this form must be resigned if
change is temporary.

0050

# Memo

To:        Tracy Smitherman
           Federal Programs & Curriculum Coordinator

From:      Ruby H. Carr, Youth Service Aide    *Ruby H. Carr*

Date:      April 7, 2006

Re:        Letter of Grievance

Ms. Smitherman, I am in receipt of your memorandum dated March 31, 2006 received by me on April 6, 2006 at approximately 4:10 p.m.

Based upon your memorandum dated 3/31/2006 and your allegation of my violation of ethics I submit to you this Letter of Grievance. I was hoping to meet with you today but I understand that you are out of the office. I would like to meet with you on Monday, April 10, 2006 to discuss the following concerns of unfair treatment of staff, lack of communication and your allegation of my violation of ethics.

I feel that I have been unfairly treated and have tolerated and witnessed a lot of unfair situations and circumstances here in School District 210 since September 22, 2004.

o   I tolerated for several months working in the storage room with (60+) boxes surrounding the table not a desk that I use.

o   I tolerated being told by you "Blatantly and racially" that I could not help Mrs. Queen Barker with STI/SETS on August 23, 2005.

o   I tolerated being denied training for STI at L. B. Wallace School on August 24, & 25, 2005.

o   I tolerated your giving the new Technology Coordinator, Mrs. Yolanda Kelley, a brand new telephone for her office, and you told me that I would not be getting a new phone.

o   I tolerate not having access to Outlook Express because you informed me that it cost too much for me to have that email account but everyone else have access to Outlook Express.

o   I tolerate Mrs. Shelia Turner, ASA III having a new telephone with Caller ID, Speaker Phone, Conference Call, etc.

o   I tolerated being asked by you to do Mrs. Shelia Turner, ASA III work (2/15/2006) while Ms. Turner watch a movie on her DVD at her desk. You exited the building for a meeting.

o   I tolerated Mrs. Shelia Turner slamming my office door on Wednesday, April 5, 2006, because I was willing to assist Dr. SoJuan Crenshaw with information concerning a telephone and file cabinet.

o   I tolerate doing the Federal Programs & Curriculum Coordinator work and not receiving anymore benefits or pay.



EXHIBIT

8

- I tolerate watching you blatantly and racially discriminate against other individuals in DYS School District 210.

- I resent the office confusion that often occurs because I am willing to assist and communicate with other employees.

- I resent not being offered or issued a Gateway Laptop Computer on February 2, 2006

- I resent being retaliated against, unfairly treated and alleged of violation of ethics because I made you aware that it was unfair for a Secretary to be issued a Gateway Laptop and no other individual serving as a Secretary for DYS School District 210 was offered or issued one.

- I resent being accused of violation of ethics: In order for me to file the document, I had to look and read to see where to file that particular document. I do not feel that I have violated any ethics concerning the Inventory Property Form.

According to you in July 2005, I was informed that only the teachers would receive the Gateway Laptop Computer due to Federal Funds that was allocated specifically in the grant for the teachers. Secretaries would not receive a Gateway Laptop Computer.

I look forward to meeting with you and I hope that we can resolve the above concerns of unfair treatment to staff, lack of communication, and your allegation of my violation of ethics.

cc:

Debra Spann

Tim Davis

Marcia Calendar

J. Walter Wood

File

0054

# ADMINISTRATIVE FACT-FINDING HEARING IN RE: RUBY CARR

## May 16, 2006



EXHIBIT

9

Blumberg No. 5118

**Reagan Reporters, LLC**
**Phone: 334.262.7556**
**Fax: 334.262.4437**
**www.ReaganReporters.com**

**Page 1**

STATE OF ALABAMA
DEPARTMENT OF YOUTH SERVICES

ADMINISTRATIVE FACT-FINDING HEARING

IN RE:   RUBY CARR

The following proceedings were taken before the Alabama Department of Youth Services in the above-referenced matter on May 16th, 2006, commencing at approximately 10:00 a.m. in the Central Office, Mt. Meigs Complex, Department of Youth Services, Montgomery, Alabama, before Karen Reagan Drinkard, CSR, Reporter and Notary Public in and for the State of Alabama at Large.

**Page 2**

BEFORE:
TIM DAVIS, Hearing Officer,
Deputy Director of Programs

APPEARANCES

FOR THE ALABAMA DEPARTMENT OF YOUTH SERVICES:
   DUDLEY PERRY, ESQUIRE
   TRACY SMITHERMAN

FOR THE COMPLAINANT:
   TANA JACKSON SHEALEY
   Field Staff Representative
   Alabama State Employees
      Association

ADDITIONAL WITNESS:
   DR. JOHN STEWART
   State Board of Education

**Page 3**

INDEX

TESTIMONY BY:               Page
   MS. SMITHERMAN .................. 11

WITNESS RUBY CARR
EXAMINATION BY:
   THE HEARING OFFICER ............150
   MS. SHEALEY ...................185
   THE HEARING OFFICER ...........213
   MS. SHEALEY ...................225
   MS. SHEALEY ...................265
   MS. SMITHERMAN ................270
   MS. SHEALEY ...................282
   MS. SMITHERMAN ................285

WITNESS DR. JOHN STEWART
EXAMINATION BY:
   MS. SMITHERMAN ................244
   MS. SHEALEY ...................252

**Page 4**

DYS EXHIBITS:                    Page

EX-1  Post-it Note with          22
      Handwritten Notes
EX-2  E-mail Communications       49
      between Ms. Carr and Ms.
      Smitherman, dated
      4/17/2006

EX-3  Memorandum to Ms. Carr      56
      from Ms. Smitherman,
      dated 5/10/2006

EX-4  Handwritten Note, dated     60
      4/24/2006
EX-5  Written Reprimand, dated   114
      5/1/2006, with
      handwritten note
EX-6  Written Warning, dated     118
      4/27/2006

DEFENSE EXHIBITS:

EX-7  Document with Sticky       158
      Note attached, dated
      3/23/2006
EX-8  Written Reprimand, dated   162
      5/1/2006, without
      handwritten note
EX-9  Document Containing        184
      Several Pages of Tables,
      with Handwritten Notes

9

2    any objections.
3    Now, disciplinary
4    action has been
5    recommended based on the
6    following information:
7    It is alleged that
8    Ms. Carr has violated
9    rules of State Personnel
10   Board -- and this will be
11   in parenthesis --
12   (670-X-19-.01)(e), this
13   is failure to perform job
14   properly; and/or
15   violation of rules of
16   State Personnel Board, in
17   parenthesis again,
18   (670-X-19-.01)(1g), this
19   is disruptive conduct of
20   any sort and/or violation
21   of the rules of State
22   Personnel Board;
23   (670-X-19-.01)(2b),
     insubordination. Okay.

11

1    supporting documentation.
2    And again, Ms. Carr and
3    Ms. Shealey, you will
4    also be afforded to do
5    the same, okay? Are you
6    ready?
7    MS. SMITHERMAN: I'm ready.
8    HEARING OFFICER: Okay.
9    Please begin.
10   MS. SMITHERMAN: Okay.
11   Ms. Carr has developed a
12   pattern of when she's
13   given a directive, she
14   doesn't want to do
15   something, she becomes
16   insubordinate and refuses
17   to do whatever the
18   directive is. She's
19   exhibited this not only
20   in writing, but also
21   verbally. She has become
22   so argumentative in her
23   refusals that it's

10

1    And that on or about
2    March 23rd, 2006, you
3    allegedly refused to
4    perform duties assigned
5    to you by your supervisor
6    in writing. Again, on or
7    about April 10th, 2006,
8    and April 26th, 2006, and
9    April 27th, 2006, and May
10   10th, 2006, you allegedly
11   refused to perform these
12   same functions when
13   verbally instructed by
14   your supervisor. Now,
15   based on these charges,
16   it's the recommendation
17   that a hearing be held to
18   determine whether
19   disciplinary action is
20   warranted. Okay?
21   Now, Ms. Smitherman,
22   you may present any
23   witnesses and/or

12

1    impossible to use the
2    progressive discipline to
3    work through her issues
4    and concerns. She's
5    yelled; she's pointed her
6    finger; she's slammed the
7    door; she's hollered out
8    in the name of Jesus to
9    remove demons from our
10   office; and she's refused
11   to talk to me. Her
12   behaviors range from
13   insubordination and
14   aggressive to frightening
15   and bizarre. At this
16   point, I'm not only
17   fearful for myself, but
18   also for other staff.
19   To demonstrate, I'm
20   going to describe her
21   behaviors and performance
22   issues over the past nine
23   months. I've got my

3 (Pages 9 to 12)

13

```
1      notes, so I can go
2      through my documents
3      properly.
4   HEARING OFFICER:  Okay.  No
5      problem.
6   MS. SMITHERMAN:  On
7      August 24th, 2005, during
8      her performance appraisal
9      conference, I notified
10     Ms. Carr that I was --
11  HEARING OFFICER:  Okay.  Let's
12     stop here.
13  MS. SMITHERMAN:  Okay.
14  HEARING OFFICER:  I want to
15     stay specifically with
16     the charges she's charged
17     with currently, okay?
18  MS. SMITHERMAN:  Okay.
19  HEARING OFFICER:  Now,
20     Mr. Wood may review any
21     information contained
22     about her work
23     performance prior to
```

14

```
1      these charges, okay.
2      That's his decision.  But
3      for our hearing purposes,
4      I want to deal
5      specifically with these
6      charges as outlined in
7      the written
8      correspondence to her.
9   MS. SMITHERMAN:  So you only
10     want to only hear those
11     dates?
12  HEARING OFFICER:  Exactly.
13     Okay?
14  MS. SMITHERMAN:  And what were
15     those dates?
16  HEARING OFFICER:  All right.
17  MR. PERRY:  March 23rd --
18  HEARING OFFICER:  Do you have
19     a copy of his letter, by
20     the way?
21  MS. SMITHERMAN:  Not with me.
22     No, I don't have a copy
23     of that one.  March 23rd?
```

15

```
1   MR. PERRY:  April 10th, 26th,
2      27th, and May 10th.  That
3      was the last.
4   MS. SHEALEY:  Will they be
5      entered into evidence?
6   HEARING OFFICER:  If that's
7      what she's attempting to
8      do.
9   MS. SHEALEY:  Which exhibit
10     would it be?
11  HEARING OFFICER:  Well, you'll
12     have a copy of this, by
13     the way.  They'll be
14     numbered.
15  MS. SHEALEY:  Yes, sir.
16  HEARING OFFICER:  We'll
17     enumerate them, but do
18     you have a copy of this?
19  MS. SHEALEY:  Yes, sir.
20  HEARING OFFICER:  Okay.
21     Ms. Smitherman, would it
22     assist you if you had a
23     copy of this?
```

16

```
1   MS. SMITHERMAN:  No, sir.
2      That's fine.
3   HEARING OFFICER:  Okay.
4   MS. SMITHERMAN:  I've got the
5      dates.
6   HEARING OFFICER:  All right.
7   MS. SMITHERMAN:  I'm prepared.
8   HEARING OFFICER:  Okay.
9   MS. SMITHERMAN:  Okay.  On
10     March --
11  HEARING OFFICER:  Proceed.
12  MS. SMITHERMAN:  Yes, sir.  On
13     March 23rd, while I was
14     out of the office, I had
15     asked Ms. Carr to take
16     care of some filing,
17     shredding, et cetera.
18     This is a post-it with
19     her response to one of
20     the tasks (indicating).
21     At no time before had
22     there been an issue of
23     having her contact --
```

(Pages 13 to 16)

17

1  having contact with
2  personal information.
3  She has shredded files
4  and organized documents
5  with personal information
6  on teachers, but out of
7  the blue, she decided
8  that she did not want to
9  have contact with
10  personal information.  So
11  this is the post-it that
12  I'm giving to you.
13  MS. SHEALEY:  Is this a second
14  exhibit?
15  HEARING OFFICER:  No.  It --
16  it's not even the first
17  one.
18  MS. SHEALEY:  Okay.
19  HEARING OFFICER:  When we do
20  log them in as exhibits,
21  I'll be very clear, and
22  they will be marked as
23  exhibits.

18

1  MS. SHEALEY:  Yes, sir.
2  MS. SMITHERMAN:  Do I need to
3  give you that right now?
4  MR. PERRY:  Let them review
5  it.
6  MS. SMITHERMAN:  Okay.
7  HEARING OFFICER:  You can let
8  us review it, and then
9  once you -- we do that,
10  if you want to enter it
11  as an exhibit, then we'll
12  do it.  Okay?
13  MS. SHEALEY:  Okay.
14  HEARING OFFICER:  All right.
15  Now, this you say is a
16  post-it note?
17  MS. SMITHERMAN:  Uh-huh.  What
18  I do is when I -- I have
19  a thing on my desk for
20  files --
21  HEARING OFFICER:  Uh-huh.
22  MS. SMITHERMAN:  -- to be
23  filed.  When there's

19

1  activities or I'm going
2  to be out of town and
3  she's working on them,
4  I'll put post-it notes on
5  some of them.  These were
6  documents I needed
7  shredded, so I just put
8  that "shred" on there.
9  HEARING OFFICER:  Okay.
10  MS. SMITHERMAN:  It was
11  returned back to me, the
12  items still attached.
13  But that was her response
14  to me.
15  HEARING OFFICER:  This?
16  MS. SMITHERMAN:  Yes.  Her
17  writing right there.  All
18  I said was to shred it.
19  HEARING OFFICER:  Okay.  And
20  her sticky note says,
21  Tracy, I need you to
22  shred it since this is
23  teachers' info.

20

1  MS. SMITHERMAN:  Correct.
2  HEARING OFFICER:  And you had
3  instructed her to shred
4  it?
5  MS. SMITHERMAN:  Correct.
6  HEARING OFFICER:  Okay.  Old
7  training files that have
8  been already used
9  for recert.  Is that --
10  whose handwriting --
11  THE REPORTER:  Excuse me.  Old
12  training files that had
13  already been used for --
14  HEARING OFFICER:  That have
15  been already used for --
16  looks like --
17  MS. SMITHERMAN:
18  Certification?
19  HEARING OFFICER:  Yeah.
20  Recert.
21  MS. SMITHERMAN:  Recert?
22  Okay.
23  HEARING OFFICER:  Looks like

5 (Pages 17 to 20)

21

1    recertification. Okay.
2    And that's your
3    handwriting?
4    MS. SMITHERMAN: Yes.
5    HEARING OFFICER: Okay. And
6    you have a copy of this.
7    MS. SHEALEY: We do. We have
8    a copy that she presented
9    us.
10   HEARING OFFICER: Okay.
11   MS. SMITHERMAN: And we have a
12   copy that we'll enter
13   into evidence also.
14   HEARING OFFICER: Okay.
15   That's fine. All right.
16   But you've had a chance
17   to review it, okay?
18       Now, Ms. Smitherman,
19   is it your intention to
20   enter this as Exhibit
21   Number 1?
22   MS. SMITHERMAN: Yes.
23   HEARING OFFICER: Okay. All

22

1    right. Let the Record
2    reflect that a copy of
3    this post-it note with
4    communications from
5    Ms. Carr back to
6    Ms. Smitherman is entered
7    as Exhibit Number 1. I
8    need to have these --
9    (Off-the-Record discussion.)
10   (The referred-to document was
11   marked for identification
12   as State's Exhibit No. 1.)
13   HEARING OFFICER: And also,
14   Ms. Shealey, every one of
15   these that are marked as
16   exhibits with a sticker
17   here --
18   MS. SHEALEY: Yes, sir.
19   HEARING OFFICER: -- before we
20   leave today, I'll make
21   sure you have a copy of
22   every last one of them,
23   okay?

23

1    MS. SHEALEY: Thank you, sir.
2    HEARING OFFICER: And you will
3    also have a copy of what
4    she's entering for your
5    immediate review here.
6    MS. SHEALEY: Yes, sir. Thank
7    you.
8    HEARING OFFICER: Okay. All
9    right. Ms. Smitherman,
10   please proceed.
11   MS. SMITHERMAN: Okay. Can I
12   ask my counsel something?
13   HEARING OFFICER: Sure.
14   MS. SMITHERMAN: I'm not
15   clear. Do I keep going
16   through my consecutive
17   dates?
18   MR. PERRY: Ask him. Explain
19   to him what you've got.
20   MS. SMITHERMAN: Okay.
21   MR. PERRY: He's -- he's the
22   hearing officer, and he's
23   going to be make the

24

1    rulings and -- let me --
2    there is a tape recording
3    of a conference that took
4    place on what date?
5    MS. SMITHERMAN: April 27th.
6    Well, it took place on
7    the 13th. It's
8    referenced in the 27th.
9    THE REPORTER: It's referenced
10   in the 27th --
11   MS. SMITHERMAN: April 27th
12   documentation.
13   MR. PERRY: There was a
14   conference that took
15   place in which Ms. Carr
16   made some statements
17   regarding her intention
18   to follow directives from
19   her supervisor,
20   Ms. Smitherman.
21   HEARING OFFICER: Okay.
22   MR. PERRY: And that
23   conference is not on one

6 (Pages 21 to 24)

# EXHIBIT 10
## AUDIO TAPE
WILL BE FURNISHED TO THE COURT AFTER THE
FILING OF THIS BRIEF

EXHIBIT

10

STATE OF ALABAMA

# DEPARTMENT OF YOUTH SERVICES

**JOHN STEWART,** Ed.D., Superintendent
School District 210

**SCHOOL DISTRICT**
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone (334) 215-3850
Fax Number (334) 215-3011

**J. WALTER WOOD, JR.**
Executive Director

*Rec' April 24, 2006*

**DATE:**   4/19/2006

**TO:**   MS. RUBY CARR

**CC:**   PERSONNEL FILE

**FROM:**   MS. TRACY SMITHERMAN

**RE:**   LETTER OF GRIEVANCE - 4/7/06

---

I thank you for the opportunity to respond to your grievance, it has been informative.

During our discussion on 4/13/06, we discussed the 14 items you listed as concerns of unfair treatment of staff, lack of communication, and the allegation of violation of ethics on your grievance letter. I am going to take this opportunity to address those items that were outlined in your grievance.

- For the record, I have not taken any action motivated by race or retaliation. My actions have been fair and consistent.

- Bullets 4, 6, 7, 8, 10, & 11 are non–grievable because they are not incidents between you and me, your supervisor.

- Bullets 1, 2, 3, 4, 5, 6, 7, 8, 10 & 11 are non-grievable because they were not filed within the time frame allotted by DYS Policy 3.13.1 (see attachment).

- Bullet 9, "I tolerated doing the Federal Programs & Curriculum Coordinator work and not receiving anymore benefits or pay". As covered by your employee performance pre-appraisal it is your responsibility to assist with writing, completing forms and reports, calculate data, interact with individuals, read, file and type written and electronic communications, documentation and other paperwork according to oral and written instructions and DYS policy. The tasks you complain about are part of your job.

- Bullet 12, "I resent not being offered or issued a Gateway Laptop Computer on February 2, 2006". As mentioned in my memo 3/31/06 re: Response to memo: 3/23/06 re: Gateway Laptop computer, I will not discuss with you circumstances regarding equipment issued to other

EXHIBIT
11
Blumberg No. 5119

- employees in circumstances different from yours. It is not necessary for you to have a laptop to meet your job responsibilities.
- Bullet 13, "I resent being retaliated against, unfairly treated and alleged of violation of ethics because I made you aware that it was unfair for a Secretary to be issued a Gateway Laptop and no other individual serving as a Secretary for DYS School District 210 was offered or issued one". There have been no punitive actions taken toward you or against you. You sent documents out of my office referencing confidential documents without my authorization. It is my job to supervise your work and you must perform the responsibilities of your job.
- Bullet 14, "I resent being accused of violation of ethics: In order for me to file the document, I had to look and read to see where to file that particular document. I do not feel that I have violated any ethic concerning the Inventory Property Form". In our discussion you stated you knew what the document was at first glance, because you developed the form. You can determine where to file the document after reading the Issued to: Signature line; therefore, there was no need to continue reading the document. Second, as mentioned above you sent a document out of my office that you were not authorized to send out. Third, sending such a document without a directive is out of your job responsibilities and performing your job responsibilities is important

In our discussion I asked what you wanted from the grievance process you stated that you want the memo RE: Response to memo: 3/23/06 re: gateway laptop computer removed from your personnel file. I did not carbon copy the memo to your personnel file. If the memo is in your personnel file it is because you attached it to the Grievance Letter and carbon copied it to Ms. Spann, Personal Director. Secondly, you wanted me to admit to and apologize for the items listed in your grievance. I will not meet your unreasonable demands. I hope that this clarified your concerns. I continue to feel you are talented and I am happy to work with someone of your skills but I will not tolerate such conduct as you have exhibited in connection with this matter.

Written documentation of the meeting on April 13, 2006 can be requested from the legal division of the Alabama Department of Youth Services

ATTACHMENT – DYS Policy 3.13.1

**State of Alabama**
**Department of Youth Services**
## POLICY AND PROCEDURES

| | |
|---|---|
| **Related Standards:** | 3-JTS-1C-01, 3-JTS-1C-07, 3-JTS-1C-13 |
| **Chapter:** | 3 0 Personnel |
| **Subject:** | Grievance Procedure |
| **Policy Number:** | 3 13 1 |

I    <u>POLICY</u>

It is recognized that conflicts will develop within an organization between employee and employer  It shall be the policy of DYS to provide to its employees an expeditious and systematic procedure for the resolution and alleviation of grievances as they might arise during the course of performing work-related activities.  The grievance procedure is a method of settling disputes and break-downs in communication in a job-related situation.  Suspensions and dismissals are not covered by this procedure.

II    <u>DEFINITIONS</u>

Not applicable.

III   <u>PROCEDURES</u>

<u>Central Office or Group Homes</u>

<u>Step A</u>:  Within five days of the event, the aggrieved employee should discuss the matter with his immediate supervisor.  If not resolved, written documentation of the discussion must be maintained.

Effective Date: _____JUN 2 3 1994_____  Issued By: _____ Page __1__ of __3__

**State of Alabama**
**Department of Youth Services**
## POLICY AND PROCEDURES

**Related Standards:**   3-JTS-1C-01, 3-JTS-1C-07, 3-JTS-1C-13

**Chapter:**                3 0 Personnel

**Subject:**                Grievance Procedure

**Policy Number:**       3 13 1

---

<u>Step B</u>:  In the event that the employee is not satisfied with the decision of the supervisor, he may request review by the departmental administrator in charge of his respective area   The request must be in writing and within 10 days of the decision of his supervisor   The matter should be heard within 10 days or as soon as practicable   A decision will be rendered in writing.   *Dr. Johm Stewart No Response*

<u>Step C</u>:  If the employee still feels that the decision rendered is not equitable, he may request a review by the Executive Director of DYS   This request must be in writing and filed within 10 days of receipt of the administrator's written decision   The director should reply in writing within 10 days of receipt of the request or as soon as is practicable   *J. Walter Wood Jr. No Response*

<u>Step D</u>:  The department considers the decision of the Executive Director as final   However, the State Personnel Board may elect to consider certain matters upon appeal to that body

<u>Institutions</u>

<u>Step A</u>:  The aggrieved employee should within five working days of the event, discuss the matter with his immediate supervisor   Written documentation of the discussion must be maintained

<u>Step B</u>:  If in the opinion of the aggrieved employee satisfactory corrective measures have not been implemented, he should request a review of the grievance by the facility superintendent   This request must be in writing, accompanied by supportive

---

Effective Date: _____ C 3 1994 ___   Issued By: _____   Page _2_ of _3_

**State of Alabama**
**Department of Youth Services**
## POLICY AND PROCEDURES

| | |
|---|---|
| **Related Standards:** | 3-JTS-1C-01, 3-JTS-1C-07, 3-JTS-1C-13 |
| **Chapter:** | 3.0 Personnel |
| **Subject:** | Grievance Procedure |
| **Policy Number:** | 3.13.1 |

documentation and made within ten working days of his supervisor's final decision. The superintendent should respond in writing within ten working days or as soon as practicable after receiving the request.

Step C: If still dissatisfied, the aggrieved employee may request a review of the grievance by the administrator of institutional services. This request must be in writing accompanied by supportive documentation and made within ten working days of the superintendent's written decision. The administrator should respond in writing with ten working days or as soon as practicable after receiving the request.

Step D: If the employee still feels that the decision rendered is not equitable, he may request a review by the Executive Director of DYS. This request must be in writing and filed within ten days of receipt of the administrator's written decision. The Director should reply in writing ten days of receipt of the request or as soon as is practicable.

Step E: The Department considers the decision of the Executive Director to be final. However, the State Personnel Board may elect to consider certain matters upon appeal to that body.

IV.    APPLICABILITY

This policy applies to all Department of Youth Services personnel and facilities.

Effective Date: JUN 2 3 1994    Issued By: _____ Page  3  of  3

      

**Welcome, Tracy Smitherman from Department of Youth Services SD 210.**

Prev | **Reply** | **Reply All** | **Forward** | **Delete** | **Report Spam** | Move to: [ ] Move

From: **r.carr.dysd@gaggle.net (Ruby Carr) Add to Address Book**
To: **tsmitherman.dysd@gaggle.net  Show Actual Recipients**
Subject: Re: April 17 - Good Morning
Date: Wed 26 Apr 2006 12:58:43 PM -0500 **View Header**
Good Afternoon Tracy,

I do not recall you informing me that you would be in Birmingham on
Monday, April 17, 2006. I was out of the office the week of April
17-21, 2006 due to death in my family. As of this date April 26, 2006 I
have not received a monthly calendar from you since July, 2005 in
reference to your out-of the office meetings/training, etc.

April 12, 2006 approximately 8:45 a.m. you enter my office telling me
you want me to start taken out the documentation in the SACS folders,
shred information with Social Security #'s for teachers/students,
file documentation for teachers in their Professional Development folder
and throw everything else away.

I informed you that due to your response that I received from you on
April 6, 2006 alleging violation of ethics and confidentiality that I
did not feel comfortable with removing, shredding, and filing
documentation pertaining to teachers and students.

Due to the letter of grievance I submitted to you on April 7, 2006 and
until this grievance is resolved I still do not feel comfortable with
performing the tasks you have assigned me to do concerning the SACS
documentation.

Ruby
----Original message below----
Good Morning Ruby,
Just a reminder I will be in Birmingham this morning. You can reach me
on my cell, if there is an emergency. Today, I need for you to start
going through the SACS boxes and taking out the old information. Please
put new face sheets in them and throw away any information that
doesn't have personal staff or student information on it. I will go
through the sheets with personal information to ensure that they can be
shredded. I will be in the office tomorrow, see you then.
Have a good day,
Tracy


Tracy Smitherman
Department of Youth Services

---------
**http://www.gaggle.net**
Safe email for students and teachers

---------
**http://www.gaggle.net**
Safe email for students and teachers

[English to Spanish] [ Translate ]

Prev | Reply | Reply All | Forward | Delete | Report Spam | Move to:


EXHIBIT 12

STATE OF ALABAMA

# DEPARTMENT OF YOUTH SERVICES



**JOHN STEWART, Ed.D , Superintendent**
School District 210

**SCHOOL DISTRICT**
Post Office Box 66
Mt. Meigs, Alabama  36057
Telephone (334) 215-3850
Fax Number (334) 215-3011

**J. WALTER WOOD, JR.**
Executive Director

*Rec' May 1, 2006*

RECEIVED
19 2006
DYS
EXECUTIVE DIRECTOR'S OFFICE

THIS IS A  [X]  WARNING
           [ ]  REPRIMAND

Employee Name: *Ms. Ruby H. Carr*

State the facts of the performance or work conduct problem:

- *Insubordination: During the discussion on April 13, 2006 concerning her grievance, Ms. Carr stated that she would not take directives from her supervisor, Ms. Smitherman. In addition, Ms. Carr spoke in a loud, belligerent, aggressive and offensive manner.*
- *Insubordination: Ms. Carr has refused to complete directives on March 23, 2006, April 10, and April 26, 2006*

State what actions have been taken with the employee prior to this step of discipline (include counseling, coaching, and/or any disciplinary):

     *Ms. Carr on January 23, 2006 stated that she will no longer be responsible for maintaining the Property Inventory Register. No formal disciplinary steps were taken. The nature and severity of Ms. Carr actions on April 13, 2006 require formal discipline.*

State how the situation can be resolved based on discussion with employee and input from the employee:

     *Ms. Carr can complete all directives given to her from Ms. Smitherman and she should refrain belligerent, aggressive, loud, or insubordinate conduct.*

If an action plan is developed in conjunction with the discipline, include the time frame that is being monitored for change in performance and the follow-up meeting date:

Supervisor's Signature    _(signature)_

Employee's Signature    *Ms. Carr refused to meet*

Date of Meeting    *April 27, 2006*

Employee's signature denotes discussion not necessarily agreement  The employee may add comments that must be attached to this form  The form is kept in the formal employee file



EXHIBIT
13

STATE OF ALABAMA

# DEPARTMENT OF YOUTH SERVICES

JOHN STEWART, Ed D , Superintendent
School District 210

**SCHOOL DISTRICT**
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone (334) 215-3850
Fax Number (334) 215-3011

J. WALTER WOOD, JR.
Executive Director

*Rec' May 1, 2006*

THIS IS A [ ]    WARNING
     [X]    REPRIMAND

Employee Name: *Ms. Ruby H. Carr*

State the facts of the performance or work conduct problem:

- *Insubordination: On April 27, 2006, Ms. Smitherman requested to meet with Ms. Carr for the purpose of a formal session in regard to a written warning in regard to Ms. Carr's conduct on April 13, 2006. Ms. Carr refused to meet with Ms. Smitherman*
- *Insubordination: Ms. Carr has refused to complete directive on April 27, 2006*

State what actions have been taken with the employee prior to this step of discipline (include counseling, coaching, and/or any disciplinary):
*On April 27, 2006, Ms. Smitherman requested to meet with Ms. Carr for the purpose of a formal session in regard to a written warning. Ms Carr refused to participate.*

State how the situation can be resolved:
*Ms. Carr can complete all directives given to her from Ms. Smitherman.  Ms. Carr should refrain from inappropriate conduct.*

If an action plan is developed in conjunction with the discipline, include the time frame that is being monitored for change in performance and the follow-up meeting date:

- *In three months Ms. Carr and her supervisor, Ms. Smitherman will sit down and re-evaluate if changes have occurred and if directives are being followed.*
- *If Ms. Carr's conduct does not change to meet job standards further disciplinary action will ensue.*

Supervisor's Signature    *[signature]*    Date: 5 1 06

Employee's Signature    *Refund to sign*    Date: 5 1 06

Employee s signature denotes discussion not necessarily agreement. The employee may add comments that must be attached to this form  The form is kept in the formal employee file

EXHIBIT
14

4/27/06

Ruby,

I need award memos for $2000.⁰⁰/ea
addressed to the following persons
Jimmy Ellis
John Green
Phillip Ward
~~~~~~~~
Charles Broaden
Evelyn Myles
Eleanor Sonder
Roosevelt Walker
Leo Smith
Jimmy Don Shoemaker
Carolyn Stanton

EXHIBIT
15
Blumberg No. 5119

The funds are Career Technical - BASC
Please let them know if they want to
purchase computers they have to be
bought off of the AL Joint Purchasing
Agreement. ~~~~~ And remind them
that if there is a state contract for
what they order then they have to
purchase off the contract. They must bring
in 3 quotes for what lever they want to
order ~~~~ or a sole source letter.



cc to the person's principa
memos are from Mikey + D

# DEPARTMENT OF YOUTH SERVICES

**JOHN STEWART**, Ed D , Superintendent
School District 210

**SCHOOL DISTRICT**
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone (334) 215-3850
Fax Number (334) 215-3011

**J. WALTER WOOD, JR.**
Executive Director

*Rec' May 10, 2006*

**DATE:**    5/10/2006

**TO:**    MS. RUBY CARR

**CC:**    FILE

**FROM:**    MS. TRACY SMITHERMAN

**RE:**    SACS FILES

I have directed you on two different occasions to begin going through the SACS boxes and taking out the old information. I am aware that you have filed a grievance but you can not use the grievance process to pick or choose what job responsibilities you will do. Today, I will be in my office so you will have access to the files or you can put them in your office. Therefore, please go through the SACS files and put new face sheets in them and throw away any information that doesn't have personal staff or student information on it. Any sheet with personal information should be given to me.

EXHIBIT
16
Blumberg No. 5119

0006
EXHIBIT
Employee
15

STATE OF ALABAMA



DEPARTMENT OF YOUTH SERVICES

**BOB RILEY**
GOVERNOR

POST OFFICE BOX 66
MT MEIGS, ALABAMA  36057

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

May 12, 2006

Ms. Ruby Carr
2167 County Road 101
P. O. Box 500
Lafayette, AL 36862

Dear Ms. Carr:

I have received a recommendation from your supervisors that disciplinary action be taken regarding your employment as a Youth Service Aide assigned to District 210. The recommendation reveals the following alleged inappropriate conduct and work performance as the reason for the recommendation:

> Violation of the Rules of the State Personnel Board (670-X-19-.01 (1e) - Failure to perform job properly) and/or violation of the Rules of the State Personnel Board (670-X-19-.01 (1g) - Disruptive conduct of any sort) and/or violation of the Rules of the State Personnel Board (670-X-19-.01 (2b) - insubordination): on or about March 23, 2006, you allegedly refused to perform duties assigned to your by your supervisor in writing. Again on or about April 10, 2006; April 26, 2006; April 27, 2006; and May 10, 2006, you allegedly refused to perform these same functions when verbally instructed by your supervisor.

Based on the recommendation, it is my judgment a hearing be held to determine whether disciplinary action is warranted.

A fact finding hearing will be conducted on **Tuesday, May 16, 2006, at 10:00 a.m.**, in the Board Room at the Central Office on the Mt. Meigs Complex in Montgomery County. The hearing will be conducted by either myself or my designee. I will review the information presented and notify you of my decision regarding any possible disciplinary action. At the hearing you may present verbal and written information, produce witnesses and be represented by counsel if you choose. I consider your attendance to be mandatory, but if you do not attend, I will be forced to make my decision based on the information available to me.

Sincerely,

J. Walter Wood, Jr.
Executive Director

JWWJr/pic

c:      Mr. Tim Davis
        Dr. John Stewart
        Legal



EXHIBIT
17

# ADMINISTRATIVE FACT-FINDING HEARING IN RE: RUBY CARR

**May 16, 2006**



EXHIBIT
18

**Reagan Reporters, LLC**
Phone: **334.262.7556**
Fax: **334.262.4437**
www.ReaganReporters.com

**1**

STATE OF ALABAMA
DEPARTMENT OF YOUTH SERVICES

ADMINISTRATIVE FACT-FINDING HEARING

IN RE:   RUBY CARR

The following proceedings were taken before the Alabama Department of Youth Services in the above-referenced matter on May 16th, 2006, commencing at approximately 10:00 a.m. in the Central Office, Mt. Meigs Complex, Department of Youth Services, Montgomery, Alabama, before Karen Reagan Drinkard, CSR, Reporter and Notary Public in and for the State of Alabama at Large.

**2**

1  BEFORE:
2  TIM DAVIS, Hearing Officer,
3  Deputy Director of Programs
4
5       APPEARANCES
6
7  FOR THE ALABAMA DEPARTMENT OF YOUTH
8  SERVICES:
9       DUDLEY PERRY, ESQUIRE
10      TRACY SMITHERMAN
11
12 FOR THE COMPLAINANT:
13      TANA JACKSON SHEALEY
14      Field Staff Representative
15      Alabama State Employees
16          Association
17
18 ADDITIONAL WITNESS:
19      DR. JOHN STEWART
20      State Board of Education
21
22
23

**3**

1       INDEX
2
3  TESTIMONY BY:               Page
4  MS. SMITHERMAN ................ 11
5
6
7  WITNESS RUBY CARR
8  EXAMINATION BY:
9   THE HEARING OFFICER ........... 150
10  MS. SHEALEY ................ 185
11  THE HEARING OFFICER ........... 213
12  MS. SHEALEY ................ 225
13  MS. SHEALEY ................ 265
14  MS. SMITHERMAN ................ 270
15  MS. SHEALEY ................ 282
16  MS. SMITHERMAN ................ 285
17
18
19 WITNESS DR. JOHN STEWART
20 EXAMINATION BY:
21  MS. SMITHERMAN ................ 244
22  MS. SHEALEY ................ 252
23

**4**

1  DYS EXHIBITS:              Page
2
   EX-1  Post-it Note with       22
3      Handwritten Notes
4  EX-2  E-mail Communications    49
      between Ms. Carr and Ms.
5      Smitherman, dated
       4/17/2006
6
   EX-3  Memorandum to Ms. Carr   56
7      from Ms. Smitherman,
       dated 5/10/2006
8
   EX-4  Handwritten Note, dated  60
9      4/24/2006
10 EX-5  Written Reprimand, dated 114
       5/1/2006, with
11     handwritten note
12 EX-6  Written Warning, dated   118
       4/27/2006
13
14
   DEFENSE EXHIBITS:
15
16 EX-7  Document with Sticky     158
       Note attached, dated
17     3/23/2006
18 EX-8  Written Reprimand, dated 162
       5/1/2006, without
19     handwritten note
20 EX-9  Document Containing      184
       Several Pages of Tables
21     with Handwritten Notes
22
23

ADMINISTRATIVE FACT-FINDING HEARING IN RE: RUBY CARR - 5/16/2006

---

5

1
2  EX-10  Fax Cover Sheet to Louis  201
      Batoff from Tracy
3      Smitherman, dated
      4/26/06, w/ att.
4      Memorandum
5  EX-11  Letter to Administrators  207
      from Robert Stewart,
6      dated 4/10/2006, with
      Handwritten Instructions
7      and attached Fax
      Transmittal Sheets
8
   EX-12  Excerpt from Statute     306
9      Book
10
11
12
13
14
15
16
17
18
19
20
21
22
23

---

6

1      PROCEEDINGS
2
3      HEARING OFFICER:  Okay.  This
4         is an administrative
5         hearing of the Department
6         of Youth Services held on
7         today -- this is
8         May 16th, 2006 -- in the
9         central office at the
10        Mount Meigs complex in
11        Montgomery, Alabama.
12        This is a fact-finding
13        conference concerning
14        Ms. Ruby Carr.  And she
15        is represented by
16        Ms. Tana Jackson Shealey;
17        she is a field staff
18        representative with the
19        Alabama State Employees
20        Association.  This
21        hearing is also -- and
22        the information presented
23        in it is being presented

---

7

1      by Ms. Tracy --
2      MS. SHEALEY:  Smitherman.
3      HEARING OFFICER:  Smitherman.
4         Forgive me.  I do know
5         your last name.  By
6         Ms. Tracy Smitherman.
7         Okay.  And this
8         conference is being
9         recorded.  Also attending
10        today's conference are
11        Mr. Dudley Perry of the
12        DYS legal division.  I am
13        Tim Davis; I'm the
14        hearing officer for
15        today.  And as stated
16        earlier, Tracy Smitherman
17        is also in attendance,
18        Ms. Jackson Shealey, and
19        Ms. Ruby Carr.  And we
20        may also call any
21        additional witnesses as
22        needed.
23            As indicated in your

---

8

1      correspondence from
2      Mr. Wood, during this
3      conference, you may
4      present verbal and
5      written information,
6      produce witnesses, and be
7      represented by legal
8      counsel if you so choose.
9      Ample time will be
10     afforded so that both
11     parties will have an
12     opportunity to present
13     their side.
14         This is not an
15     adversarial court
16     hearing.  It is an
17     administrative
18     fact-finding opportunity
19     for me to be appraised of
20     all the facts you wish me
21     to know.  The rules of
22     evidence do not apply.  I
23     will decide and rule on

---

(Pages 5 to 8)

ADMINISTRATIVE FACT-FINDING HEARING IN RE: RUBY CARR - 5/16/2006

9

2 any objections.
3 Now, disciplinary
4 action has been
5 recommended based on the
6 following information:
7 It is alleged that
8 Ms. Carr has violated
9 rules of State Personnel
10 Board -- and this will be
11 in parenthesis --
12 (670-X-19-.01)(e), this
13 is failure to perform job
14 properly; and/or
15 violation of rules of
16 State Personnel Board, in
17 parenthesis again,
18 (670-X-19-.01)(1g), this
19 is disruptive conduct of
20 any sort and/or violation
21 of the rules of State
22 Personnel Board;
23 (670-X-19-.01)(2b),
insubordination. Okay.

10

1 And that on or about
2 March 23rd, 2006, you
3 allegedly refused to
4 perform duties assigned
5 to you by your supervisor
6 in writing. Again, on or
7 about April 10th, 2006,
8 and April 26th, 2006, and
9 April 27th, 2006, and May
10 10th, 2006, you allegedly
11 refused to perform these
12 same functions when
13 verbally instructed by
14 your supervisor. Now,
15 based on these charges,
16 it's the recommendation
17 that a hearing be held to
18 determine whether
19 disciplinary action is
20 warranted. Okay?
21 Now, Ms. Smitherman,
22 you may present any
23 witnesses and/or

11

1 supporting documentation.
2 And again, Ms. Carr and
3 Ms. Shealey, you will
4 also be afforded to do
5 the same, okay? Are you
6 ready?
7 MS. SMITHERMAN: I'm ready.
8 HEARING OFFICER: Okay.
9 Please begin.
10 MS. SMITHERMAN: Okay.
11 Ms. Carr has developed a
12 pattern of when she's
13 given a directive, she
14 doesn't want to do
15 something, she becomes
16 insubordinate and refuses
17 to do whatever the
18 directive is. She's
19 exhibited this not only
20 in writing, but also
21 verbally. She has become
22 so argumentative in her
23 refusals that it's

12

1 impossible to use the
2 progressive discipline to
3 work through her issues
4 and concerns. She's
5 yelled; she's pointed her
6 finger; she's slammed the
7 door; she's hollered out
8 in the name of Jesus to
9 remove demons from our
10 office; and she's refused
11 to talk to me. Her
12 behaviors range from
13 insubordination and
14 aggressive to frightening
15 and bizarre. At this
16 point, I'm not only
17 fearful for myself, but
18 also for other staff.
19 To demonstrate, I'm
20 going to describe her
21 behaviors and performance
22 issues over the past nine
23 months. I've got my





*State of Alabama*

# Department of Youth Services

*Post Office Box 66*
*Mt Meigs, Alabama 36057*

June 23, 2006

BOB RILEY
GOVERNOR

J. WALTER WOOD, JR.
EXECUTIVE DIRECTOR

Ms. Ruby Carr
2167 County Road 101
P O Box 500
Lafayette, AL 36862

Dear Ms. Carr:

As you are aware, an administrative fact finding hearing was held on May 16, 2006, to determine what disciplinary action should be taken concerning your Youth Services Aide position with this department.

Based on the testimony and documents presented during the hearing, there was evidence to support that there was a violation of the Rules of the State Personnel Board (670-X-19- 01 (1e) - Failure to perform job properly) and/or violation of the Rules of the State Personnel Board (670-X-19-.01 (1g) - Disruptive conduct of any sort) and/or violation of the Rules of the State Personnel Board (670-X-19- 01 (2b) - Insubordination).

Based on the evidence and a review of your personnel file, I hereby order your dismissal from the Department of Youth Services effective at the close of business June 23, 2006. You will receive your last regular pay check on July 14, 2006. You will be paid for any unused annual, holiday, compensatory or personal leave you may have on August 1, 2006.

Your state employees' medical insurance will end on June 30, 2006. If you wish to purchase health insurance coverage you may contact the State Employees Insurance Board at 1-800-513-1384

You may request a refund of your retirement contributions by completing a Form 7, Notice of Final Deposit and Request for Refund. The form may be obtained from the DYS Human Resources Section or from the Retirement Systems website at www.rsa.state.al.us  If you wish, you may leave your contributions on deposit for up to five years.

The Rules of the State Personnel Board state that you may, within ten (10) days after notification of dismissal, request a hearing by the State Personnel Board. The request should include a written answer to the charges. _____ addressed to Ms. Jackie Graham, Personnel Director, State Personnel Department, _____ e request to the Department of

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired
- Print your name and address on the reverse so that we can return the card to you
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ruby Carr
4167 County Rd.
Lafayette, AL 36842

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) B. Date of Delivery

C. Signature
X *Ruby N Carr*  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

RECEIVED
JUN 28 2006
DYS-HUMAN RESOURCES

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7001 1140 0001 8596 4151

PS Form 3811, March 2001

EXHIBIT
19

0001

1                    BEFORE THE

2                 STATE OF ALABAMA

3             DEPARTMENT OF PERSONNEL

4               MONTGOMERY, ALABAMA

5

6     IN THE MATTER OF:   RUBY CARR

7                         TERMINATION APPEAL

8

9

10

11

12

13

14                * * * * * * * * * *

15          TESTIMONY AND PROCEEDINGS, taken before

16     the Honorable Julia J. Weller, Administrative Law

17     Judge, at The Folsom Administration Building, 64

18     North Union Street, Montgomery, Alabama, on

19     Tuesday, September 19, 2006, commencing at

20     approximately 9:41 a.m., and reported by Laura A.

21     Head, Licensed Court Reporter and Commissioner

22     for the State of Alabama at Large.

23                * * * * * * * * * *

            *Laura A. Head, Court Reporter*
           *(334) 286-4938 or (334) 202-4851*


EXHIBIT
20

```
 1                          APPEARANCES

 2

 3      ADMINISTRATIVE LAW JUDGE:

 4      Honorable Julia J. Weller
        Administrative Law Judge
 5      Alabama Department of Personnel
        Folsom Administrative Building
 6      64 North Union Street
        Montgomery, Alabama  36130
 7

 8
        FOR THE DEPARTMENT OF YOUTH SERVICES:
 9
        Honorable T. Dudley Perry, Jr.
10      Deputy Attorney General
        Alabama Department of Youth Services
11      P. O. Box 66
        Mt. Meigs, Alabama 36057
12

13
        FOR THE EMPLOYEE RUBY CARR:
14
        Honorable Jason Manasco
15      Legal Counsel
        Alabama State Employees Association
16      110 N. Jackson Street
        Montgomery, Alabama  36104
17

18              * * * * * * * * * *

19

20

21

22

23
```

EXAMINATION INDEX


TRACY SMITHERMAN
       DIRECT BY MR. PERRY  .  .  .  .  .    19
       CROSS BY MR. MANASCO   .  .  .  .    79


QUEEN ESTHER BARKER
       DIRECT BY MR. MANASCO  .  .  .  .    90
       CROSS BY MR. PERRY   .  .  .  .  .   103

RUBY CARR
       DIRECT BY MR. MANASCO  .  .  .  .   117
       CROSS BY MR. PERRY   .  .  .  .  .   144

SOJUAN CRENSHAW
       DIRECT BY MR. MANASCO  .  .  .  .   173
       CROSS BY MR. PERRY   .  .  .  .  .   181
       CROSS BY MR. PERRY   .  .  .  .  .   190



* * * * * * * * * * *


alacourt.com™
The Alabama Trial Court System at your desk

Supp|

Company Name: RUSHTON, STAKELY, JOHNSON & GARRETT, PA    User ID: AZV7    Last login Date: 7/29/2008 T

**: Main Menu**

| View Case Summary | Monitor Case | Print Case Action Summary |

**Search**
⊠ Party Search
⊠ Case Lookup
⊠ Attorney Search
⊠ Warrant Search
⊠ Witness Search
⊠ DocketSearch
⊠ HotSheet™

**Tracking**
⊠ Attorney Tracker
⊠ Case Monitor
⊠ Name Tracker
⊠ Reminders

**Desktop**
⊠ My Alacourt
⊠ My Attorney

**Administration**
⊠ Update User Info

County:    03 - MONTGOMERY    Case Number:    03-CV-2007-000624.00

Style:    RUBY H CARR VS PERSONNEL BOARD OF THE STATE OF ALABAMA

Type:    APPEAL

**Case**

### Case Information

| | |
|---|---|
| County: | 03 - MONTGOMERY |
| Case Number: | CV-2007-000624.00 |
| JID: | WAS:WILLIAM A. SHASHY |
| Trial: | Bench |
| Style: | RUBY H CARR VS PERSONNEL BOARD OF THE STATE OF ALABAMA |
| Filed: | 04/12/2007 |

### Case Typ

| | |
|---|---|
| Code: | CVXX |
| Type: | APPEAL |
| Track: | |
| Status: | D:DISPOSED |
| Plaintiffs: | 001 |
| Defendants: | 001 |

### Court Action

| | |
|---|---|
| DJID: | WAS:WILLIAM A. SHASHY |
| Court Action: | D:DISMISSED W/O PREJUDICE/JURIS OR PROS. |
| Judgment For: | O |
| Trial days: | 0 |

### Damage:

| | |
|---|---|
| Amount: | $0.00 |
| Compensatory: | |
| Punitive: | |
| General: | |
| None: | |

### Other Actions

| | | | |
|---|---|---|---|
| Cont Date: | Cont #: | 00000000 | why: |
| RevJmt: | Admin Date: | | Why: |
| Appeal Date: | Court: | | Case: 00-0000-00000 |
| Mistrial: | 00000000 | | TBNV2: |
| DSDT: | | | DTYP: |

### Comments

Comment 1:
Comment 2:

**Settings**

**Parties**

**Consolidated Case Action Summary**

EXHIBIT
21

**Images**    03-CV-2007-000624.00

| Key | Date | Pages | Document Type | Name | Desc |
|---|---|---|---|---|---|
| 03-CV-2007-000624.00 | 4/12/2007 | 28 | CV CASE | PERSONNEL BD AL | COMPL |
| 03-CV-2007-000624.00 | 4/12/2007 | 100 | CV CASE | PERSONNEL BD AL | COMPL |
| 03-CV-2007-000624.00 | 4/24/2007 | 1 | CV CASE | PERSONNEL BD AL | SUMM( |
| | 4/27/2007 | 1 | E-FILE | | E-FILE |

| 03-CV-2007-000624.00 | | | | | |
|---|---|---|---|---|---|
| 03-CV-2007-000624.00 | 4/27/2007 | 2 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 4/30/2007 | 1 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 5/24/2007 | 3 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 5/24/2007 | 3 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 8/27/2007 | 1 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 8/27/2007 | 2 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 8/29/2007 | 1 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 8/29/2007 | 2 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 9/6/2007 | 7 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 9/6/2007 | 3 | E-FILE | | E-FILE |
| 03-CV-2007-000624.00 | 10/29/2007 | 100 | CV CASE | STATE PERSONNEL BOARD | MISC |
| 03-CV-2007-000624.00 | 10/29/2007 | 100 | CV CASE | STATE PERSONNEL BOARD | MISC |
| 03-CV-2007-000624.00 | 10/29/2007 | 100 | CV CASE | STATE PERSONNEL BOARD | MISC |
| 03-CV-2007-000624.00 | 10/29/2007 | 23 | CV CASE | STATE PERSONNEL BOARD | MISC |
| 03-CV-2007-000624.00 | 11/2/2007 | 5 | CV CASE | STATE OF ALABAMA PERSONNEL BOARD | ORDER |

**Witness List**

**Financial**

**Motions**



ELECTRONICALLY FILED
9/6/2007 3:32 PM
CV-2007-000624.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

|  |  |
|---|---|
| RUBY CARR, | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) CV No. 07-624 |
|  | ) |
|  | ) |
|  | ) |
| STATE OF ALABAMA | ) |
| PERSONNEL BOARD, | ) |
| Defendants. | ) |

### BRIEF OF RESPONDENTS AND MOTION TO DISMISS BASED UPON LACK OF SUBJECT MATTER JURISDICTION

The Alabama State Personnel Board (hereinafter "SPB") hereby files this Brief

and Motion to Dismiss based upon lack of subject matter jurisdiction of Petitioner's

petition for judicial review under the Administrative Procedures Act.

#### Undisputed Facts

Petitioner was an employee of the Department of Youth Services and was

dismissed effective June 23, 2006. The hearing officer found that the totality of the

evidence warranted termination of the Employee and issued her recommendation on

December 14, 2006.

1. The Petitioner's dismissal was upheld by the State Personnel Board on February 14, 2007.

2. The Petitioner did not file a notice of appeal with the State Personnel Board

3. The Petitioner filed a notice of appeal with this Court on April 12, 2007

### Argument

Specifically, SPB states that this court lacks subject matter jurisdiction for the following reasons:

1. Petitioner failed to fail a notice of appeal with the State Personnel Board

2. Assuming, arguendo, that the agency could be by-passed on the filing of an appeal – the Petitioner failed to timely file an appeal in circuit court within 30 days of the final order.

### Failure to file a notice of appeal with the State Personnel Board

A notice of appeal was never filed with the State Personnel Board, nor was a timely appeal filed with DYS or the circuit court.

Appeals from decisions of administrative agencies are statutory, and the time periods provided for the filing of notice of appeals and petitions must be strictly observed. *Ex parte Crestwood Hospital & Nursing Home, Inc.* 670 So.2d 45 (Ala. 1995). An appeal may be taken only where authorized by statute and must be perfected in accordance with the law. Section 41-22-20(b) and (d), Ala. Code 1975 states in pertinent part, as follows:

> (b) Except in matters for which judicial review is otherwise provided for by law, all proceedings for review shall be instituted by filing of notice of appeal or review and a cost bond, with the agency. A petition shall be filed either in the circuit court of Montgomery county or in the circuit court of the county in which the agency maintains its headquarters, or unless otherwise specifically provided by statute, in the circuit court of the county where a party resides. "
>
> (d) The notice of appeal or review shall be filed within 30 days after the receipt of the notice of or other service of the final decision of the agency upon the petitioner "

2

Petitioner, in fact, failed to perfect her appeal and it is due to be dismissed. It is undisputed that the Petitioner did not file a notice of appeal with the Alabama State Personnel Board.

Under *Eley v. Medical Licensure Commission of Alabama*, 904 So 2d 269 (Ala Civ App 2003) a question arose as to whether a Petitioner could properly by-pass the agency and file an appeal directly with the circuit court. In *Eley*, the Petitioner *within the 30 day time period*, filed a notice of appeal in circuit court and served the Commission As succinctly set forth in *Eley,* the issue in that case was:

> When an appealing party files a petition for judicial review with the appropriate circuit court, and, within 30 days after receipt of the notice or other service of the decision of the agency being appealed, serves a copy of that petition upon the agency by first class mail, does this constitute a "filing" of a "notice of appeal" with the agency for purposes of 41-22-20(b)

In this case, none of the above occurred. Instead, the Petitioner:

1. Failed to file a notice of appeal with the State Personnel Board within 30 days of the order.

2. Failed to file a notice of appeal with the circuit court within 30 days.

In short the Petitioner did not timely file her appeal and this case is due to be dismissed.

Petitioner failed to file an appeal in circuit court within 30 days of the final order.

Assuming, arguendo, that filing a notice of appeal in the circuit court is sufficient to satisfy the statute, this case is still due to be dismissed. The Petitioner's termination was upheld on February 14, 2007. The notice of appeal was filed in circuit court on April 12, 2007 – well past 30 days after the decision. In *Eitzen v Medical Licensure Commission of Alabama,* 70 So. 2d 1239 (Ala Civ App. 1998), the court dismissed the

3

appeal where the petition failed to file a notice of appeal and instead filed a petition for

judicial review  As noted in *Eley*, "There is no indication in the *Eitzen* opinion that the

petition for judicial review that was filed with the circuit court in that case was

simultaneously served upon the Commission  Even if it had been, as Judge Crawley

notes, that petition was filed beyond the 30 day period prescribed by 41-22-20(d)." *Eley*

at 275

<u>Substantial Evidence supports the Termination</u>

Assuming arguendo, that this Court finds that it has subject matter jurisdiction,

the Complaint is due to be dismissed  Thus, the following standard of review controls this

case:

> "[T]he agency order shall be taken as prima facie just and reasonable and the
> court shall not substitute its judgment for that of the agency as to the weight of the
> evidence on questions of fact, except where otherwise authorized by statute."

CODE OF ALA  § 41-22-20 (k) (1975)

This statute further provides that the Agency's ruling can be reversed **only** if it is –

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) In violation of any pertinent agency rule;

(4) Made upon unlawful procedure;

(5) Affected by other error of law;

(6) Clearly erroneous in view of the reliable, probative, and substantial evidence
on the record as a whole; or

(7) Unreasonable, arbitrary or capricious or characterized by an abuse of
discretion or a clearly unwarranted exercise of discretion.

(emphasis added).

As stated, *supra,* the State Personnel Board's order must be taken as prima facie

just and reasonable.  As held in *Kucera v  Ballard* 485 So  2d 345 (Ala. Civ  App  1986),

A review of an employee's termination by the Board is only to determine *if the reasons*

*stated for the dismissal are sustained by the evidence* presented at the hearing (emphasis

added).   As recognized by *Thompson v. Alabama Department of Mental Health,* 477 So.2d 427 (Ala. 1985), "[I]f there is any evidence to sustain the Board's decision, this court must affirm.   It may not assess the truthfulness of conflicting testimony or substitute its judgment for that of the Board." *Id.*, at 429,   citing *King,* 456 So.2d at 82; *Johnston v. State Personnel Board,* 447 So.2d 752 (Ala. Civ. App. 1983); *Beatty v. Hart,* 437 So.2d 594 9Ala. Civ. App. 1983); *Roberson v. Personnel Board,* 390 So.2d 658 (Ala. Civ. App. 1980).

In this case, the Petitioner asks this Court to substitute its judgment for the Board's judgment – directly in contradiction to the appropriate standard of review in this case. In *Alabama Department of Environmental Management v. Hagood III,* 695 So.2d 48 (Ala. Civ. App. 1997), the Board rejected the Administrative Law Judge's findings and recommendations and entered an order upholding a dismissal. The Circuit Court overturned the Board's order, finding that the Board's rejection of the ALJ's findings was "unreasonable, arbitrary, and capricious." *Id.*, at 50.   In reversing the circuit court, the Court of Civil Appeals reiterated the proposition that the Court shall not substitute its judgment for that of the Board. Furthermore the Court held:

> "[W]e may not assess the truthfulness of conflicting testimony. If we conclude that there was evidence to support the board's order, then we must affirm." *Id.* at 50. (citations omitted).

Moreover, the Court in *State Department of Conservation and Natural Resources v. State Personnel Board,* 637 So.2d 894 (Ala. Civ. App. 1994), held:

> "While this court may not agree with a Board's determination we are not at liberty to substitute our judgment, nor to reverse a judgment that is supported by the evidence."

*Id.* at 896.

5

In this case, there was clearly evidence to support the decision of the Board  The ALJ was faced with conflicting testimony, (like almost all hearings) and made a credibility determination  The Petitioner obviously disagrees with this determination, but the decision is supported by the evidence.

<div align="center">Conclusion</div>

Petitioner failed to file a notice of appeal with the State Personnel Board and failed to even file her appeal to circuit court within 30 days after the decision. This case is due to be dismissed for lack of subject matter jurisdiction  Additionally, there was substantial evidence to support the determination by the State Personnel Board and this case is due to be dismissed

Respectfully submitted,

/s/Alice Ann Byrne_____
ALICE A  BYRNE (BYR015)
Attorney for Defendants

ADDRESS OF COUNSEL:

State Personnel Department
64 North Union Street
Room 316
Montgomery, Alabama  36130
(334) 242-3450
(334) 353-4481 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on **September 6, 2007**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that I have served a copy of the foregoing document upon the following:

**Ruby H. Carr**
**Post Office Box 500**
**LaFayette, AL  36862**

by placing the same in first class mail, postage pre-paid, on the same date.

_/s/Alice Ann Byrne_
OF COUNSEL

7

# CHARGE OF DISCRIMINATION

...form is affected by the Privacy Act 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| [ ] FEPA | |
| [X] EEOC | 420-2007-01098 |

_____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr Ms Mrs )* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ruby H. Carr | (334) 864-0576 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5211 County Road 28 | Lafayette, AL  36862 | 06-22-1965 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Alabama Department of Youth Services | 500+ | (334) 215-3807 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 100 Industrial Road | Mt. Meigs, AL  36057 | Montgomery |

| NAME | TELEPHONE *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY   DEC - 8 2006 |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[ X ] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| *Earliest* | *Latest* |
| | 6/23/2006 |
| [ ] CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*

I am an African American female citizen of the United States. I was employed with the Alabama Department of Youth Services for seven years as a Youth Services Aide until my unlawful termination on June 23, 2006. The reasons given for my termination were "failure to perform properly, insubordination and disruptive conduct. I believe that my termination was in retaliation for me filing a prior EEOC charge in March 2005 (130-2005-01900) and the settlement of same in October 2005.

In March, 2005, I filed a Charge of Discrimination based on race and sex discrimination and retaliation against Respondent. At the time of my filing, Tracy Smitherman, a white female, was my supervisor. She remained my supervisor until June 23, 2006. As a result of that charge, I entered into a negotiated Settlement Agreement ("Agreement") with Respondent in October, 2005. I believed that the terms of the Agreement
CONTINUED ON THE NEXT PAGE

| [ ] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |
| I declare under penalty of perjury that the foregoing is true and correct | SIGNATURE OF COMPLAINANT |
| Date  Dec, 7 2006                    *Ruby H. Carr* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day month and year)* |
| *Charging Party (Signature)* | |

EOC Form 5 (Test 10/94)

EXHIBIT

22

## ADDITIONAL PARTICULARS:

would curtail the discriminatory and retaliatory treatment I was subjected to that altered the terms and

conditions of my employment. However, the retaliation continued shortly after entering into the

Agreement.

First, Respondent failed to comply with all of the terms of the Agreement. Provision

6(A) (1) a & b of the Agreement provides as follows:

> a. "The adjustment of Ruby H. Carr's record to reflect forty (40) hours of
> annual leave for the week of July 5-9, 2004; restoration of any leave or pay
> deducted for June 28, 2004 and June 29, 2004; <u>removal of the disciplinary
> actions from Ruby H. Carr's record regarding the failure to report to work dated
> June 30 and July 1, 2004; re-evaluation and restore Ms. Carr's complete
> appraisal for the following period of: September 1, 2003, and August 11, 2004;</u>
>
> <u>b. The removal of all three subsequent reprimands for acts of insubordination
> (Failure to Meet with Ms. Rankins) from Ruby H. Carr's personnel file;"</u>

(emphasis added). On several occasions, I inquired as to whether Respondent had complied

with all of the terms of the Agreement. I was aware that the leave time in section "a" had been

restored, but to my knowledge, Respondent had failed to comply with the remaining terms.

Respondent clearly failed to remove the negative information outlined above from my

personnel file at the Mt. Meigs facility and the one retained by the State of Alabama Personnel

Department ("State") in Montgomery. The "reprimands for acts of insubordination (Failure to

Meet with Ms. Rankins)" were never removed from my personnel file at Mt. Meigs. I also

never received a "re-evaluation and restor[ation of my] complete appraisal for the period of

September 1, 2003, and August 11, 2004." Additionally, all documents regarding the "removal

of the disciplinary actions from [my] record regarding the failure to report to work dated June

30 and July 1, 2004" were also never removed from my personnel file with the State. The

failure to complete the re-evaluation and restoration of my appraisal and the failure to remove

the negative information from my file, coupled with the retaliatory treatment I to which I was

subjected following the signing of the Agreement led to my unlawful dismissal on June 23, 2006

On March 20, 2006, I received a mid-appraisal which indicated that I had "performed competently in all 6 areas of responsibility." On April 7, 2006, I filed a letter of grievance after being accused by Smitherman of violating ethical rules. The concerns outlined in my grievance were never addressed. On several occasions I asked for a response to my grievance from the John Stewart, a white male and Smitherman's immediate supervisor, J. Walter Wood, a white male and the Executive Director, and Eddie Johnson, a black male and Chairman of the DYS School Board. The retaliation only escalated. To date, my grievance remains unresolved. Because of the allegations surrounding an alleged violation of ethical rules, my personnel file containing the negative information which remained in violation of the Agreement was reviewed and used as justification for the unfounded reasons given for my termination.

I believe Respondent has retaliated and discriminated against me in the terms and conditions of my employment solely because of my previous charge of discrimination. I believe I am entitled to reinstatement to my former position, back pay, front pay, interest, attorney's fees, costs and liquidated, compensatory and punitive damages.

Ruby H. Carr

12/7/2006

DEC 8 2006

3

1

1                        BEFORE THE

2                  STATE OF ALABAMA

3             DEPARTMENT OF PERSONNEL

4             MONTGOMERY, ALABAMA

5

6    IN THE MATTER OF:   RUBY CARR

7                   TERMINATION APPEAL

8

9

10

11

12

13

14            * * * * * * * * * *

15       TESTIMONY AND PROCEEDINGS, taken before

16    the Honorable Julia J. Weller, Administrative Law

17    Judge, at The Folsom Administration Building, 64

18    North Union Street, Montgomery, Alabama, on

19    Tuesday, September 19, 2006, commencing at

20    approximately 9:41 a.m., and reported by Laura A.

21    Head, Licensed Court Reporter and Commissioner

22    for the State of Alabama at Large.

23            * * * * * * * * * *

EXHIBIT

23

*Laura A. Head, Court Reporter*
*(334) 286-4938 or (334) 202-4851*

1    please, that the statement about a copy of

2    that tape, which was on that recording we

3    heard, was about the first sentence uttered

4    in that conversation.

5         THE COURT:  Okay.  I think

6    Ms. Smitherman already testified to that,

7    didn't she?

8         MR. PERRY:  I don't think so.  But we

9    played the tape, and we all heard it.  And it

10   was about -- I think the first thing we heard

11   was, you know, Testing, 1, 2, 3.  And then

12   Ms. Carr asked, Are you recording.  And she

13   said, Yes.  And she said, Can I have a copy.

14   That was the first thing on the tape.

15        THE COURT:  Okay.

16        MR. PERRY:  And it was very soft.

17        THE COURT:  All right.

18

19                    RUBY CARR

20        The witness, having first been duly

21   sworn to speak the truth, the whole truth, and

22   nothing but the truth, testified as follows:

23                 DIRECT EXAMINATION

1              would you word this exactly the way you want

2              me to type it.  I'll type it, bring it back

3              to you, we'll make the corrections, and then

4              we'll mail it out.

5      Q.    Okay.  I believe the testimony of

6              Ms. Smitherman was that you refused to do the

7              work.

8      A.    I didn't refuse to do the work.  I just asked

9              her if she would word it the way she wanted

10             me to type it, and then I would be more than

11             glad to type it for her.  I never received

12             this memorandum back from Ms. Smitherman.  I

13             don't know who typed it or if it ever got

14             typed.  I just know I never received it back

15             from her in order for me to type.

16     Q.    Ms. Smitherman testified earlier that you

17             refused to meet with her on April the 27th

18             regarding her efforts to address what had

19             occurred earlier.  Do you agree with that?

20     A.    April the 27th?

21     Q.    Right.

22     A.    I did refuse to meet with Ms. Smitherman.

23             And she had asked me to step into her office,

146

```
 1    A.   To word it for her.

 2    Q.   Correct.

 3    A.   But I needed -- I asked for clarification on

 4         it when I went back to her.  If she would

 5         just tell me what she wanted me to type in

 6         her own words, I would be more than glad to

 7         type it.  I did not refuse to type that

 8         memorandum.

 9    Q.   But you didn't type it.

10    A.   I didn't refuse to type it.

11    Q.   No, ma'am.  You didn't type it, did you?

12    A.   I did not refuse to type it.

13    Q.   Yes or no.  Did you type the memo?

14    A.   No, I did not type --

15    Q.   You did not.

16    A.   I didn't type that memo.

17    Q.   Now, you had a form in your computer for that

18         very memo, didn't you?

19    A.   Not that particular memo.  We had an award

20         letter form set up from the year before --

21    Q.   That's right.

22    A.   -- that was totally different from this

23         particular memorandum here.
```

1           relinquishing any of the duties.
2     Q.    So she didn't instruct you, did she?
3     A.    In August she instructed me that I could give
4           the property inventory report to Ms. Kelley.
5           Ms. Kelley said, I'm just coming on.
6     Q.    All right.  So you chose to -- you said she
7           told you, You can relinquish anything you
8           want, and you chose to relinquish this
9           responsibility of inventory, correct?
10    A.    On January 23rd.
11    Q.    January the 23rd.  And then you set about
12          having that placed in your personnel file,
13          didn't you?
14    A.    Yes, I sent copies to files.
15    Q.    But you want to make sure that it's perfectly
16          clear that Ruby Carr is not responsible for
17          what's happening with inventory.
18    A.    Not exactly.  That's not exactly what the
19          reason was.  I have always -- any of my
20          memorandums -- if you check my personnel
21          file, my complete personnel file with DYS,
22          every memorandum that I ever sent out
23          concerning anything that were concerning me,

1          I sent it to my personnel file.

2     Q.   That's fine.

3     A.   I did -- I do do that, Mr. Perry.

4     Q.   That's fine.  And then you turned right

5          around and began -- and you gathered some

6          information about decisions that had been

7          made on inventory distribution.  And although

8          you don't have any responsibility for it,

9          you've just got to file it, when you can

10         clearly see on the top of a document that

11         you've got to file what it is, you took a

12         copy of it and you sent it to a whole list of

13         people with a memo complaining about how

14         unfair it is what's happening with the

15         inventory, didn't you?

16    A.   According to --

17    Q.   Didn't you?  Is that what happened, Ms. Carr?

18    A.   That is not exactly the reason that happened.

19    Q.   I didn't ask you the reason.

20    A.   And that is --

21    Q.   I didn't ask you the reason.

22    A.   That did not happen.

23    Q.   I asked you did that happen.

161

| | | |
|---|---|---|
| 1 | A. | That did not happen the way you said it, |
| 2 | | Mr. Perry. |
| 3 | Q. | You didn't -- |
| 4 | A. | I was evaluated on March 20th -- |
| 5 | Q. | You didn't do -- |
| 6 | A. | -- and that was considered part of my |
| 7 | | inventory. |
| 8 | Q. | You didn't do that memo right there, Exhibit |
| 9 | | Number 4? |
| 10 | A. | This is my memorandum. |
| 11 | Q. | That's what I thought.  And you sent it to |
| 12 | | these people, didn't you? |
| 13 | A. | I CC'd it to the people that it concerned. |
| 14 | Q. | That's right.  And it concerned them because, |
| 15 | | in your opinion, they ought to be mad about |
| 16 | | this. |
| 17 | A. | Not exactly, no.  No. |
| 18 | Q. | You're saying it's not fair, aren't you? |
| 19 | A. | I feel that it was unfair for her to issue |
| 20 | | that laptop computer based upon she told me |
| 21 | | that the federal funds that those eighty-one |
| 22 | | computers was purchased with, that it was for |
| 23 | | teachers.  It was specifically in the grant |

162

1          for teachers.  And in my past experience with

2          federal funds, the handling of federal funds,

3          if you mishandle them, you could be held

4          accountable for it.  I'm just making my

5          supervisor aware of what had happened.

6     Q.   Just making your supervisor aware by sending

7          it to all these other people.

8     A.   Those people are the people that does --

9          Ms. Kelley is the Technology Coordinator and

10         Mr. Ross is the Property Manager for DYS.

11         Not trying to cause a confusion between

12         anyone --

13    Q.   Now, let's see.  Let's talk about where we

14         are, Ms. Carr.  So far you have decided that

15         you would relinquish your responsibility for

16         inventory.  Then you gathered some inventory

17         information and you sent it to some people

18         and had some derogatory things to say about

19         what had been done and that it was unfair.

20         And then you got a response from your

21         supervisor about that, didn't you?

22    A.   I felt that it was unfair.

23    Q.   I didn't ask you that.

*Laura A. Head, Court Reporter*
*(334) 286-4938 or (334) 202-4851*

168

A.   What tasks?

Q.   The ones that she testified about.

A.   Specific tasks.

Q.   Did you not hear her testimony?

A.   Exactly what tasks?

Q.   Did you not hear her testimony?  Did you hear
     her testimony sitting here?

A.   I heard her testimony, but exactly what tasks
     are you referring to?

Q.   You don't remember the tasks that you failed
     to do?

A.   The April 27th memorandum.

Q.   All right.  Were there tasks that she
     testified that she asked you to do that --

A.   The SACS.

Q.   You're saying you did that?

A.   I did not do the SACS.

Q.   You did not do that.  Are you saying that
     there are -- my question is:  You agree that
     you did not ever complete the tasks that
     Ms. Smitherman testified about.

A.   April 10th I completed the task.

Q.   That's the one that she said you completed,

```
 1          being asked to come into her office --
 2    Q.   What question are you answering?
 3    A.   The one in reference to the voice message
 4          that was left on her phone May 1st at
 5          10:22 a.m. according to the case below.  And
 6          that was -- when I went back to my office, I
 7          called her and asked her if there was
 8          anything she had for me to do like she has
 9          done everything else -- and I have a notebook
10          full of stuff -- to place it in my mailbox
11          for me.  And the letter of reprimand for that
12          particular day that I was supposedly
13          receiving from Ms. Smitherman and
14          Dr. Stewart, I did not get it until I got it
15          out of my mailbox.  I got a warning and a
16          reprimand on the exact same day.
17    Q.   But you didn't get it because you refused to
18          meet with her, didn't you?
19    A.   Based upon --
20    Q.   No, no, no.  Not based upon anything.  I
21          asked you a yes or no question.
22    A.   I refused to --
23    Q.   You didn't get it because you wouldn't meet
```

1            with her.

2    A.    I refused to meet with her --

3    Q.    That's correct.

4    A.    -- because of the unsafe --

5    Q.    That's correct.

6    A.    -- and illegalness of it.

7    Q.    You refused to meet with her. And you told

8          her, you know, on a voice mail if she has

9          anything for you, to put it in your box;

10         isn't that correct?

11   A.    Place it in my mailbox as she's done

12         everything else.

13               MR. PERRY:  That's fine.  That's all

14         I've got.

15               THE COURT:  Any other follow-up

16         questions?

17               MR. MANASCO:  I can't think of any,

18         unless the Judge has a question for you.

19               THE COURT:  No.  You may step down.

20               MR. MANASCO:  I'll go get my last

21         witness.

22               MR. PERRY:  I just assumed that was

23         your last one.

# Memo

RECEIVED

MAY 1 1 2006

DYS PERSONNEL DEPT.

To:         Tracy Smitherman
            Federal Programs & Curriculum Coordinator

From:       Ruby H. Carr, Youth Service Aide  *Ruby H. Carr*

Date:       May 10, 2006

Re:         SACS FILES/Addendum to Letter of Grievance

Ms. Smitherman, I received your memo dated May 10, 2006 in reference to the SACS Files today May 10, 2006 approximately 11:00am out of my mailbox.

The two different occasions you have directed me to begin going through the SACS boxes and taking out the old information has been dictated. *I am not a slave and I am not a child.* Performing my duties and responsibilities has never been a problem in the past. Also, in the past I have never been directed by you to do anything. Why Now? I was always asked kindly and with respect.

**Question:** Have you directed (**white female**) Ms. Shelia Turner, ASA III, Stenographer Clerk III, School District Secretary, Administrative Assistant, etc. to begin going through the SACS boxes? Ms. Turner has been serving in her position much longer than I have for DYS School District and should have more knowledge of the SACS files and the documentations.

The grievance that I filed was due to your alleged violation of ethics for reading documents. Due to the hostility within the work place that you have created, I do not feel comfortable entering your office, going through, throwing away, or touching any files, documents, information pertaining to SACS or anything else within your office.

Ms. Smitherman, you are continuously harassing me by trying to get me to do something wrong. I have never picked or choose what job responsibilities I will do. Everything that you have asked me to do within my legal rights as a DYS Employee since and before the filing of my grievance, I have done.

The work that I have done for DYS School District 210 speaks for itself. (*To God Be the Glory*)

The other Coordinators (3 Black Females) within DYS School District Central Office are not harassing me. They treat me with kindness and respect and they do not have a personal secretary. I feel that you the Curriculum & Federal Programs Coordinator for DYS School District should be the one to throw away any information and documentations pertaining to SACS Files. I do not know what you consider confidential and in order for me to know what to throw away, I have got to read the document. *I do not want to do anything wrong that can be considered a violation of ethics for reading documents.*

Please, place the old face sheets in my mailbox just like you have done everything else you have asked me to do and I will prepare new face sheets for your SACS Files and place them in your mailbox. I am not refusing or being insubordinate. I am just trying to do the right thing, keep down the hostility, the office confusion, alleged violation of ethics, etc.



EXHIBIT

24

I have made Dr. John Stewart, Superintendent of DYS School District, your supervisor aware of your lack of communication, alleged violation of ethics, a warning, a reprimand, harassment, hostile work environment, racism, discrimination, dictatorship, and retaliation I feel has been exhibit by you Ms. Tracy Smitherman because I filed a grievance.  In addition, I have requested Dr. John Stewart, Superintendent of DYS School District 210 to please relieve me of my duties, responsibilities, and implied supervision to you Tracy Smitherman, Curriculum & Federal Programs Coordinator effective immediately.


cc:     Dr. John Stewart
        Ms. Debra Spann
        Mr. Tim Davis
        Ms. Marcia Calender
        Mr. J.Walter Wood

0005