**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| RUBY CARR, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   CASE NO.: 2:07-cv-532-MHT |
| | * |
| STATE OF ALABAMA DEPARTMENT | * |
| OF YOUTH SERVICES, et al., | * |
| | * |
| Defendants. | * |

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a Title VII action arising out the termination of the Plaintiff's employment from the Alabama Dept. of Youth Services ("DYS"). Despite the fact that the Plaintiff was afforded a *de novo* administrative hearing before the State Personnel Board, which concluded that the Plaintiff should, in fact, be terminated for her conduct, the Plaintiff claims that the preceding decision by DYS to terminate her employment was discriminatory and in violation of her rights under Title VII, Section 1981 and Section 1983. For numerous reasons, including those already presented by the DYS in its Motion to Dismiss (Doc. 24), which is adopted and incorporated herein, the Defendants are entitled to summary judgment in their favor on all claims in the Complaint, as amended.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

1.    Ruby Carr ("Carr") was formerly an Administrative Support Assistant/Youth Services Aide with the Alabama Department of Youth Services, an agency of the State of Alabama.

2.      In July and August 2004, issues arose with Carr concerning her time away from work, her pending annual performance evaluation including her refusal to sign the evaluation and to meet with her rating supervisor, and a claim to unpaid overtime.  In response and after meeting with Carr, the DYS agreed to reimburse her overtime and remove her disciplinaries and reprimands concerning her conduct.  [See Wood Memo dated 2/17/05, attached as Ex. 1 to M.S.J.].

3.      Nevertheless, on or about March 17, 2005, Carr filed an EEOC Charge concerning the DYS's allegedly discriminatory actions in failing to pay Carr overtime and for her failure to meet with DYS personnel to discuss her grievances of discrimination. [See EEOC Charge, attached as Ex. 2 to M.S.J.].

4.      Through the EEOC mediation protocol, Carr and DYS (through its attorney Dudley Perry), entered into a Negotiated Settlement Agreement.  [See Settlement Agreement, attached as Ex. 3 to M.S.J.].  Under the Negotiated Settlement Agreement, DYS agreed to, among others, reimburse Carr for her overtime, reinstate her leave, remove any disciplinary actions and reprimands from her personnel file concerning her failure to report to work, revise her appraisal to reflect these changes, and re-assign Carr to another position with DYS.  [See Settlement Agreement, attached as Ex. 3 to M.S.J.].

5.      Thereafter, Carr was re-assigned as an administrative assistant for Tracy Smitherman at DYS District 210. [Smitherman Admin. Hearing testimony, p. 19, l. 18 to p. 20, l. 10, attached as Ex. 4 to M.S.J.].  Until January 2006, there were no problems between Carr, DYS District 210 and Smitherman. [Smitherman Admin. Hearing testimony, p. 23, ll. 2-12, p. 25, ll. 5-10, attached as Ex. 4 to M.S.J.].  This changed, however, beginning in January 2006.

6.     On January 23, 2006, Carr submitted a Memorandum to Smitherman (her supervisor) in which Carr stated her intention to no longer maintain the Property Inventory Register for DYS School District 210 as previously had been assigned to her by Smitherman. [See 1/23/06 Memorandum, attached as Ex. 5 to M.S.J. & Smitherman Admin. Hearing testimony, p. 23, ll. 7-17,  p. 24, ll.19-21, attached as Ex. 4 to M.S.J.].  In her Memorandum, Carr also stated she did not deem it necessary to meet with Smitherman about her decision to no longer maintain the property register.  [See 1/23/06 Memorandum, attached as Ex. 5 to M.S.J.].

7.     On March 23, 2006, Smitherman gave Carr an assignment to shred a stack of documents.  [See Smitherman Admin. Hearing testimony, p. 27, ll. 6-19, attached as Ex. 4 to M.S.J.].  Instead of completing the project as instructed, Carr returned the assignment to Smitherman, stating that Smitherman should complete the task.  [See Smitherman Admin. Hearing testimony, p. 27, ll. 6-19, p. 28, ll. 5-12, attached as Ex. 4 to M.S.J. &  Sticky Note, attached as Ex. 6 to M.S.J.].  Carr had performed similar tasks on prior occasions without incident or objection.  [See Smitherman Admin. Hearing testimony, p. 28, l. 15 to p. 31, l. 2, attached as Ex. 4 to M.S.J.].

8.     On March 30, 2006 and despite the fact that two months earlier she had relinquished all responsibility for property inventory, Carr, after reading a property inventory report, discussed the contents of a report with other DYS employees and issued a Memorandum to Smitherman in which Carr complained about unfairness and unprofessionalism with the way that DYS property had been assigned.  [See Smitherman Admin. Hearing testimony, p. 32, l. 10 to p. 34, l. 19, p. 36, ll. 4-8, attached as Ex. 4 to M.S.J. & 3/23/06 Memorandum, attached as Ex. 7 to M.S.J.].  Furthermore, Carr sent copies of her Memorandum to several third-parties, including the Superintendent of DYS.  [See 3/23/06 Memorandum, attached as Ex. 7 to M.S.J. &

3

Smitherman Admin. Hearing testimony, p. 38, l. 3-10, attached as Ex. 4 to M.S.J.][Carr Admin. Hearing Testimony, p. 159, l. 15 to p. 162, l. 22, attached as Ex. 23 to M.S.J.].

9.    In response, Smitherman issued Carr a memorandum in which Smitherman voiced her displeasure with Carr's March 23, 2006 Memorandum, Carr's decision to interject herself into employment issues of third-parties, and Carr's dissemination and use of information that she had read.  [See Smitherman Admin. Hearing testimony, p. 36, l. 11 to p. 37, l. 19, p. 39, l. 3-10, attached as Ex. 4 to M.S.J].

10.    Following her receipt of this memorandum, Carr issued a lengthy Letter of Grievance in which she complained about numerous trivial, stale and irrelevant employment matters.  [See Carr Letter of Grievance, attached as Ex. 8 to M.S.J. & Smitherman Admin. Hearing testimony, p. 40, l. 12, attached as Ex. 4 to M.S.J].  In violation of the DYS grievance procedures, Carr disseminated her Letter of Grievance to individuals other than her immediate supervisor.  [Smitherman Admin. Hearing testimony, pp. 10-20, attached as Ex. 4 to M.S.J.].

11.    In an effort to address the situation, Smitherman met with Carr on April 13, 2006 to discuss Carr's Letter of Grievance point-by-point.  [See Smitherman Admin. Hearing testimony, p. 44, l. 16 to p. 45, l. 22, attached as Ex. 4 to M.S.J.].  During the meeting, Carr became aggressive, started yelling, accused Smitherman of violating ethics, requested that she should receive 2 weeks vacation during Christmas and 1 week during July 4th, pointed her finger at Smitherman, and repeatedly stated that she was not going to follow any directive that Smitherman gave.  [See Transcript, pp. 4, 10, 11, 15, 13, 20, 21, attached as Ex. 9 to M.S.J. & Audiotape, attached as Ex. 10 to M.S.J. & Smitherman Admin. Hearing testimony, p. 45, l. 20 to p. 47, l. 5, attached as Ex. 4 to M.S.J.

12.     After the meeting, Smitherman issued a detailed memorandum to Carr detailing her response to Carr's Letter of Grievance.  [See 4/19/06 Memorandum, attached as Ex. 11 to M.S.J. & Smitherman Admin. Hearing testimony, p. 62, l. 20 to p. 63, l. 3, attached as Ex. 4 to M.S.J.].

13.     Shortly thereafter, Smitherman sent Carr an email requesting that Carr purge old documents from several boxes.  [See Email, attached as Ex. 12 to M.S.J. & Smitherman Admin. Hearing testimony, p. 58, l. 5 to p. 59, l. 7, attached as Ex. 4 to M.S.J].  Instead of completing the task as directed, Carr sent Smitherman an email stating that she would not purge the documents because of the things she alleged in her Letter of Grievance.  [See Email, attached as Ex. 12 to M.S.J. & Smitherman Admin. Hearing testimony, p. 59, l. 6 to p. 60, l. 19, attached as Ex. 4 to M.S.J].  Carr never performed the assignment. [See Smitherman Admin. Hearing testimony, pp. 19-21, attached as Ex. 4 to M.S.J.][Carr Admin. Hearing Testimony, p. 168, l. 17, attached as Ex. 23 to M.S.J.].

14.     On April 27, 2006, Smitherman attempted to present Carr with a written Warning for Carr's conduct during the April 13, 2006 meeting and her failure to purge the boxes.  [See Warning, attached as Ex. 13 to M.S.J. & Smitherman Admin. Hearing testimony, p. 63, l. 10-22, p. 70, ll. 3-5, attached as Ex. 4 to M.S.J.].  Carr, however, refused to meet with Smitherman. [See Smitherman Admin. Hearing testimony, p. 70, ll. 6-16, attached as Ex. 4 to M.S.J.][Carr Admin. Hearing Testimony, p. 141, l. 22, attached as Ex. 23 to M.S.J.].

15.     Smitherman also gave Carr an assignment to draft award memos, using a form that Carr had used the year before.  [See Smitherman Admin. Hearing testimony, p. 64, l. 11 to p. 66, l. 20, p. 68, ll. 13-16, attached as Ex. 4 to M.S.J]  Carr returned the assignment with a memo requesting that Smitherman draft it herself.  [See Smitherman Admin. Hearing testimony, p. 66,

11. 15-20, attached as Ex. 4 to M.S.J. & Note, attached as Ex. 14 to M.S.J.]. Carr never completed the assignment. [See Smitherman Admin. Hearing testimony, p. 67, ll. 7-11, attached as Ex. 4 to M.S.J.][Carr Admin. Hearing Testimony, p. 146, ll.13-16, attached as Ex. 23 to M.S.J.].

16.    On May 1, 2006, Smith attempted to present Carr with a Reprimand due to Carr's refusal to meet on April 27, 2006 to discuss her Warning and the events of April 13, 2006. [Reprimand, attached as Ex. 14 to M.S.J. & Smitherman Admin. Hearing testimony, p. 70, l. 20 to p. 71, l. 15, attached as Ex. 4 to M.S.J] Carr refused to attend this meeting also. [Smitherman Admin. Hearing testimony, p. 70, l. 20 to p. 71, l. 15, attached as Ex. 4 to M.S.J.][Carr Admin. Hearing Testimony, p. 172, l. 3 to p. 173, l. 2, attached as Ex. 23 to M.S.J.].

17.    Following this failed meeting, Carr left a voicemail on Smitherman's telephone, telling Smitherman to simply put the documents in her mailbox. [Smitherman Admin. Hearing testimony, p. 70, l. 20 to p. 71, l. 15, attached as Ex. 4 to M.S.J].

18.    On May 10, 2006, Smitherman gave Carr another directive to purge the boxes. [See 5/10/06 Memorandum, attached as Ex. 16 to M.S.J. & Smitherman Admin. Hearing testimony, p. 61, l. 22 to p. 62, l. 19, p. 72, ll. 20-23, attached as Ex. 4 to M.S.J.]. Carr, again, did not perform this task. [See Smitherman Admin. Hearing testimony, p. 73, ll. 1-2, p. 75, l. 17-20, attached as Ex. 4 to M.S.J.]. Instead, Carr responded with a lengthy diatribe as to why she was not going to purge the documents. [See 5/10/06 Carr Memorandum, attached as Ex. 24 to M.S.J.].

19.    During this period of time, there was another instance of insubordination when Smitherman asked Carr to duplicate a policy manual similar to one that had been put together for another employee. [See Smitherman Admin. Hearing testimony, p. 73, l. 8 to p. 75, l. 8, attached

as Ex. 4 to M.S.J.]. Carr, however, was argumentative and questioned Smitherman as to why she had to do it. [See Smitherman Admin. Hearing testimony, p. 74, l. 5 to p. 75, l. 9, attached as Ex. 4 to M.S.J.].

20.     Following Carr's repeated refusal to do as directed, Smitherman requested that Carr be terminated from her employment with DYS for insubordination, her refusal to do her job, and her refusal to communicate. [See Smitherman Admin. Hearing testimony, p. 76, ll. 5-14, ll. 18-22, p. 77, ll. 4-15, attached as Ex. 4 to M.S.J.].

21.     Following this request, J. Walter Wood, Jr., Executive Director of DYS, instructed Tim Davis, Asst. Exec. Director, to conduct a Fact-Finding Hearing on May 16, 2006 to determine whether Carr should be terminated.  [See 5/12/06 Letter, attached as Ex. 17 to M.S.J. & Smitherman Admin. Hearing testimony, p. 78, l. 18 to p. 79, l. 9, attached as Ex. 4 to M.S.J.].

22.     Thereafter, a Fact-Finding Hearing was conducted, during which Carr provided testimony and conveyed her version of events.  [See Transcript excerpt, attached as Ex. 18 to M.S.J.].

23.     Following this hearing, Carr was terminated from her employment at DYS.  [See 6/23/06 Letter, attached as Ex. 19 to M.S.J.].  Carr thereafter appealed her termination to the State Personnel Board.

24.     On September 19, 2007, an Administrative Law Judge ("ALJ") conducted a hearing concerning Carr's termination. [See Admin. Hearing Transcript excerpt, attached as Ex. 20 to M.S.J.].  Carr was represented by counsel and called numerous witnesses. [See Admin. Hearing Transcript excerpt, attached as Ex. 20 to M.S.J.].  Following this hearing, the ALJ issued a lengthy order recommending that Carr be terminated for, among others, being disruptive,

insubordinate, openly hostile, aggressive and harassing toward her supervisor. [See 12/14/06 Recommendation, attached to Mtn. to Dismiss (Doc. 24)].

25.    Thereafter, Carr attempted to file an appeal with the Circuit Court of Montgomery County, Alabama, but this appeal was dismissed after Carr was tardy in filing her appeal. [See CJIS Printout, attached as Ex. 21 to M.S.J.].

26.    In December, however, Carr filed an EEOC Charge contending that her June 23, 2006 termination was retaliatory due to the March 2005 EEOC Charge that she had previously filed. [See EEOC Charge, attached as Ex. 22 to M.S.J.].

## ARGUMENT

### I.    The Defendants Are Entitled to Summary Judgment On the Title VII Claim.

In Count I of her Amended Complaint, Carr advances a claim of race discrimination and retaliation in violation of Title VII of the Civil Rights Act against her employer, the DYS, and J. Walter Wood, Jr., individually (Executive Director). [Amended Compl., ¶ 36]. In particular, Carr claims that DYS and Wood violated Title VII when they terminated[1] her in "in retaliation for complaining of race discrimination on her job and for having filed an EEOC charge in March 2005." [Amended Compl., ¶ 36]. This claim is due to be dismissed for several reasons.

---

[1] Carr's June 23, 2006 termination is the only claim that can be advanced via Title VII because it is the only adverse employment action or alleged discriminatory event within the 180 day window created by her December 8, 2006 EEOC Charge (June 8, 2006 to December 8, 2006). See Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162 (2007)(discussing the 180 day time period for discrete acts of discrimination and retaliation). Further, according to Carr's EEOC Charge, she filed her charge only for retaliation, and not on race, since she only checked the "Retaliation" box in her charge and since her factual averments are centered upon Retaliation. Accordingly, Carr has failed to exhaust her administrative remedies for any claim of race discrimination. See Houston v. Army Fleet Services LLC, 2007 U.S. Dist. LEXIS 44162, at *20-*30(M.D. Ala. 2007).

1.  **The Title VII Claim Against J. Walter Wood, Individually and Officially, Should be Dismissed.**

As a threshold matter, Title VII claims can only be maintained against the "employer." See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991)("The relief granted under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act."); Cross v. Ala. Dept. Mental Health & Mental Retardation, 49 F.2d 1490, 1504 (11th Cir. 1995). Because a Title VII claim can only be advanced against "the employer", a plaintiff may not bring a Title VII claim against an employer's agent (i.e., employee) in his individual capacity. See Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996). Although a plaintiff may bring a Title VII claim against an employee in his official capacity, when a plaintiff names both the employer and the employee in his official capacity, the employee may be dismissed from the action. See Wheeles v. Nelson's Elec. Motor Servs., 2008 U.S. Dist. LEXIS 44611, at *12 (M.D. Ala. 2008)("when a plaintiff names both the employer and the individual supervisor in his official capacity, the supervisor may be dismissed from the action."). Accordingly, because DYS is a defendant in this action and because J. Walter Wood is not Carr's "employer", the Title VII claim against J. Walter Wood is due to be dismissed.

2.  **Carr Cannot Make a Prima Facie Showing of Race Discrimination or Retaliation.**

In Count I, Carr complains that she was terminated "in retaliation for complaining of race discrimination on her job and for having filed an EEOC in March 2005." [Amended Compl., ¶ 36]. Carr cannot make a prima facie showing of race discrimination or retaliation and, therefore, on the substantive facts, the Defendants are entitled to summary judgment in their favor.

To survive summary judgment on her race discrimination claim, Carr must demonstrate that there is a genuine issue of material fact as to whether DYS acted with discriminatory or retaliatory intent in terminating her employment.  See Hawkins v. Ceco Corp., 883 F.2d 977, 980-81 (11th Cir. 1989).  To make this showing, Carr must present either direct evidence or circumstantial evidence under the McDonnell-Douglas burden-shifting framework.  See Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).

Here, Carr can present no direct evidence of discrimination or retaliation, especially since Carr's termination was supported by numerous instances of insubordination and misconduct, was fully vetted through a Fact-Finding Hearing and an administrative law hearing, and was subsequently upheld by the State Personnel Board.

Moreover, under the McDonnell-Douglas burden-shifting framework, Carr's claims also fail.  Under this framework, to support her discrimination claim, Carr must show (1) that she is a member of a protected class, (2) that she was qualified for the job, (3) that she suffered an adverse employment action, (4) that she has engaged in alleged misconduct similar to persons outside the protected class, and (5) that similarly situated non-minority employees received more favorable treatment.  See Jones v. Bessemer Carraway Med. Center, 137 F.3d 1306, 1311 n. 6 (11th Cir. 1998); Lathem v. Dept. of Children & Youth Services, 172 F.3d 786, 792 (11th Cir. 1999).

For purposes of this summary judgment motion as it concerns the discrimination claim, the Defendants do not dispute prongs (1), (2) and (3).  Instead, the Defendants dispute that Carr can meet her burden of proof under prongs (4) and (5).  In this regard, Carr cannot present any evidence, let alone substantial evidence, that a similarly-situated employee outside of her protected class engaged in nearly identical conduct but was treated more favorably.  Indeed,

Carr's Complaint, as amended, is totally silent in this regard. Absent any admissible evidence, Carr cannot meet her prima facie burden under the McDonnell Douglas framework and therefore her race discrimination must fail.

The same conclusion must be reached as to Carr's retaliation claim. As for her retaliation claim, Carr must show (1) she participated in a statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to Carr's protected activities. See Gregory v. Ga. Dept. Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004). Carr cannot meet her prima facie burden because the only statutorily protected expression is her March 2005 EEOC charge,[2] which was filed over 14 months before her June 23, 2006 termination. This, of course, ignores the fact that Carr's 2005 EEOC Charge had absolutely nothing to do with Tracy Smitherman (her new supervisor) or Carr's new position at School District 210 (from which she was terminated).

As to temporal proximity, the Eleventh Circuit has held that temporal proximities of three and four months between the protected activity and the adverse employment action break the causal chain as a matter of law. See Hammons v. George C. Wallace State Cmty. College, 174 Fed. Appx. 459, 464 (11th Cir. 2006)(five months insufficient); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 951 (11th Cir. 2000)(seven months insufficient); Breech v. Ala. Power Co., 962 F.Supp. 1447, 1461 (S.D. Ala. 1997)(one year insufficient); Williams v. Ala. DOT, 509 F. Supp. 1046, 1063 (Ala. 2007); Fikes v. Ala. Dept. Youth Services, 2007 U.S. Dist. LEXIS 42689, at *23 n. 9 (M.D. Ala. 2007)(nine months insufficient). Here, the 14 month time period between Carr's EEOC Charge and her termination, and the intervening assignment to a new

---

[2] Any other complaints of retaliation are far too ambiguous and nonspecific to qualify as a protected expression. See Brown v. City of Opelika, 211 Fed. Appx. 862, 863-64 (11th Cir. 2006).

supervisor and new division at DYS, breaks the "causal" chain as a matter of law.  Accordingly, Carr cannot meet the third prong of her prima facie case.

Assuming that Carr could make out a prima facie showing of discrimination and/or retaliation in the context of her termination, Carr nevertheless cannot rebut DYS's legitimate, non-retaliatory reasons for Carr's termination.  See Brochu, 304 F.3d at 1155;  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  Here, the DYS has proffered numerous legitimate, non-retaliatory reasons for Carr's termination, all of which were fully vetted through the May 16, 2006 Fact-Finding Hearing, the September 19, 2006 Administrative Law Hearing before Julia Weller, and the subsequent review by the State Personnel Board.  These  included general failures to properly perform her job, disruptive conduct, insubordination and her refusal to perform her job based on the following:

    (1) January 23, 2006:  Carr provides a memo to her supervisor, Tracy Smitherman, stating that she no longer will undertake the responsibility of handling Property Inventory.

    (2) March 23, 2006:  Carr is given a memo (sticky note) by Smitherman to shred documents.  Instead, Carr returns the documents, stating that she wants Smitherman to shred them.  Also, on this date, Carr gives Smitherman a memo in which she states that she believed it was unfair for the DYS to give a new laptop computer to one secretary in the system, but not to all other secretaries in the system.

    (3) March 30, 2006:  Despite the fact that she had two months earlier relinquished all responsibility for property inventory, Carr, after reading a property inventory report, contacts other DYS employees about property they received and issues a Memorandum to Smitherman in which Carr complains about unfairness and unprofessionalism because a secretary in another school district was issued a laptop computer when Carr and other staff in her district had not received laptop computers.

    (4) April 13, 2006:  After receiving a Letter of Grievance from Carr about the property issue, Carr meets with Smitherman to discuss Carr's Letter of Grievance.  During the meeting, Carr begins yelling, becomes argumentative and aggressive, points her finger at Smitherman, and tells Smitherman that she will not follow any of Smitherman's directives.

(5) April 2006:  Carr is given a directive by Smitherman to put binders in two policy manuals.  Carr becomes argumentative and questions Smitherman as to why it had to be done that day.

(6) April 17, 2006:  Smitherman gives Carr a directive to go through a box of documents and purge old information and put in new face sheets.  Carr does not perform this task.  On April 26, 2006, Carr sends email back to Smitherman in which she refuses to perform the task of purging the boxes.

(7) April 27, 2006:  Smitherman gives Carr directive to type up, using a form memo, a memo to third parties about awards.  This process had never been a problem before.  Instead, Carr brings the memo back and tells Smitherman that Smitherman should write the memo.

(8) April 27, 2006:  Carr refuses to meet with Smitherman about a written Warning concerning her conduct on 4/13/06.  In addition, Carr states that "she has not got time for this" and "put it in my mailbox."

(9) May 1, 2006:  Carr is instructed to meet with Smitherman to discuss a written Reprimand due to Carr's refusal to meet with Smitherman on April 27, 2006.  Carr refuses to participate in the meeting and refuses to sign the Reprimand.  Instead, Carr leaves a voicemail message for Smitherman, telling her to put it in her mailbox.

(10)    May 10, 2006:  Carr is once again directed to purge the boxes.  Carr does not perform this task.

All of these constitute legitimate, non-discriminatory reasons for an adverse employment decision.  See, e.g., Ashe v. Aronov Homes, Inc., 354 F.Supp. 2d 1251, 1259 (M.D. Ala. 2004)(finding that failure to follow instructions and insubordination are legitimate, nondiscriminatory considerations); Garcia-Cabrera v. Cohen, 81 F.Supp.2d 1272, 1281 (M.D. Ala. 2000)(finding that it is beyond question that an inability to get along with co-workers and demonstrated caustic or rude behavior is a legitimate, non-discriminatory reason for an employment decision).

Faced with these legitimate, non-discriminatory and non-retaliatory reasons for her termination, under the McDonnell-Douglas framework, Carr must "meet [the proffered reasons] head on and rebut [them]." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000).. See

also Tolbert v. Briggs & Stratton Corp., 510 F. Supp. 549, 555 (M.D. Ala. 2007)(Thompson); Smith v. Euro-Operating LLC, 2007 U.S. Dist. LEXIS 16286, at *19-*24 (M.D. Ala. 2007)(dismissing Title VII discrimination and retaliation claim for failure to rebut the employer's legitimate reasons for termination). Because Carr cannot rebut each of the DYS's legitimate, non-discriminatory reasons for her termination, Carr's Title VII claim cannot survive summary judgment.

## II.    The Defendants Are Entitled to Summary Judgment On the Section 1981 Claim (Count II).

In Count II of her Complaint, Carr advances against DYS and its Executive Director, J. Walter Wood, a race discrimination and retaliation claim under Section 1981.  This count is due to be dismissed because it fails to state a claim upon which relief can be granted.  In the Eleventh Circuit, it has been repeatedly held that Section 1981 cannot serve as the source of liability for damages.[3]   See Butts v. County of Volusia, 222 F.3d 891 (11th Cir. 2000)(concluding that Section 1981 cannot be the basis for a cause of action). Instead, a violation of Section 1981 can only be advanced through a Section 1983 claim.  Here, since Count II is premised solely upon Section 1981, and not Section 1983 (which is the basis of Count III), Count II is due to be dismissed for failure to state a claim upon which relief can be granted.  See, e.g., Jones v. Flathmann, 2008 U.S. Dist. LEXIS 26840, at*13 n. 4 (M.D. Ala. 2008)(dismissing Section 1981 count for failure to state a claim).

## III.    The Defendants Are Entitled to Summary Judgment On the Section 1983 Claim.

In Count III of her Amended Complaint, Carr brings a Section 1983 claim against the DYS, J. Walter Wood (individually and officially), Dudley Perry (individually) and Tracy

---

[3] To the extent it can stand as an independent cause of action, the Section 1981 claim is due to be dismissed for the same reasons as the Section 1983 claim.

14

Smitherman for race discrimination, retaliation and a violation of Carr's 14th Amendment Equal Protection rights. In particular, Carr contends that the Defendants violated Section 1983 because Carr was not afforded the same treatment as her white counterparts, because her complaints of race discrimination went unaddressed, because she was given only one day's notice before the May 16, 2006 Fact Finding hearing, because she was subjected to retaliatory statements and comments, and because she was wrongfully suspended and terminated. The Defendants are entitled to summary judgment in their favor on this count.

### 1. Eleventh Amendment Immunity

First, Carr's Section 1983 claim is barred by the Defendants' entitlement to Eleventh Amendment immunity. The Eleventh Amendment bars suits directly against the State and its agencies, regardless of the relief sought. See Papasan v. Allain, 478 U.S. 265, 276 (1986); Smith v. State of Ala., 996 F.Supp. 1203, 1210 (M.D. Ala. 1998). Accordingly, the Section 1983 claim as it concerns the DYS (a state agency), is due to be dismissed in its entirety. See Thaggard v. Ala. Dept. Youth Services, 2004 U.S. Dist. LEXIS 29037, at *21 (M.D. Ala. 2004)(dismissing Section 1983 claim against the DYS due to Eleventh Amendment immunity).

Eleventh Amendment immunity also bars claims against state employees who are sued for monetary damages in their official capacities. See Will v. Michigan Dept. of State Policy, 491 U.S. 58, 71 (1989). Accordingly, to the extent Wood, Perry and Smitherman are being sued in their official capacity for monetary damages, summary judgment is due to be granted in their favor due to Eleventh Amendment immunity. See Thaggard v. Ala. Dept. Youth Services, 2004 U.S. Dist. LEXIS 29037, at *21 (M.D. Ala. 2004)(dismissing Section 1983 claims against the DYS Executive Director due to Eleventh Amendment immunity).

Further, as it concerns claims for equitable relief against Wood, Perry and/or Smitherman, the only conceivable claim that could survive summary judgment, is an equitable claim for reinstatement against Wood, who, as the Executive Director, is the sole individual at the DYS with the power and authority to hire and terminate an employee.  See Ala. Code § 44-1-21 (1975).  Because only Wood can reinstate Carr, any claims for equitable relief against Perry and Smitherman are due to be dismissed.

### 2.  The Preclusive Effect of The State Personnel Board's Findings

Carr's Section 1983 claim also is due to be dismissed because of the preclusive effect of the state grievance process and, in particular, the Administrative Law Judge's and State Personnel Board's conclusion that Carr should, in fact, be terminated for her failure to follow her job requirements, her disruptive conduct, and her insubordination.

Concerning Section 1983 claims, the United States Supreme Court has held that the *reviewed* findings of a state administrative agency "should be given preclusive effect."  University of Tennessee v. Elliot, 478 U.S. 788 (1986).  See also Crapp v. City of Miami Beach Police Dept., 242 F.3d 1017, 1022 (11th Cir. 2001)(discussing Elliot).  The Court went on to hold that the *unreviewed* findings of a state administrative agency must also be given preclusive effect in Section 1983 proceedings.  See Crapp, 242 F.3d at 1022 (discussing Elliot).

Here, Carr appealed her termination to the State Personnel Department.  This appeal culminated in a *de novo* administrative hearing before an Administrative Law Judge (Julia Weller), during which Carr was represented by counsel, presented witnesses, and advanced arguments on her behalf as to why she should not be terminated.  Upon hearing the evidence, the Administrative Law Judge issued a lengthy opinion in which she recommended to the State Personnel Board that Carr be terminated.  Upon its review of the record, the State Personnel

Board upheld the ALJ's recommendation. Carr appealed this decision to the Circuit Court of Montgomery County, but the appeal was dismissed due to Carr's failure to timely file the appeal. Although the State Personnel Board's findings went unreviewed by the Circuit Court due to Carr's failure to file a timely appeal, under the U.S. Supreme Court's decision in Elliot, the State Personnel Board's findings are preclusive, which therefore requires dismissal of the Section 1983 claim as it concerns Carr's termination.

### 3. Qualified Immunity For the Individual Defendants in Their Individual Capacity.

As set forth in the Defendants' Motion to Dismiss (Doc. 24), Carr's Section 1983 claim against the individual Defendants in their individual capacity is subject to and barred by their entitlement to qualified immunity. Indeed, not only is the individual Defendants' entitlement to qualified immunity a question of law for the Court, but it also is a threshold question that should preclude discovery and any further court proceedings until it has been resolved. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).

In its simplest, the defense of qualified immunity entitles public officials to immunity in the execution of the performance of their duties as long as their conduct does not violate any clearly established statutory or constitutional rights. See Harlow, 457 U.S. at 818. Once the official establishes that he was engaged in a discretionary job-related function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. See Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

Here, Wood, Perry and Smitherman are entitled to summary judgment because Carr cannot meet her burden of showing that Wood, Perry and/or Smitherman violated any of Carr's constitutional or statutory rights. First and foremost, it certainly was not a violation of Carr's

constitutional rights to be terminated for, among others, failure to perform her job, disruptive conduct and insubordination, especially when she refused job assignments, yelled at a supervisor, sent baseless and critical memorandums to unrelated third parties, discussed the DYS's property allocations with outside employees, refused to meet with her supervisor, and was disruptive, insubordinate, hostile, aggressive and harassing with a supervisor. Therefore, her termination, in light of these events, cannot give rise to a Section 1983 claim against any of the individual Defendants.

However, even if it could, such a claim could only be advanced against J. Walter Wood, who had the sole authority to suspend or terminate Carr. Neither Dudley Perry nor Tracy Smitherman had such authority, and Carr certainly cannot advance any affirmative evidence showing that they did. In any event, even as to Wood, qualified immunity for Carr's termination nevertheless applies because, not only was Carr's termination justified and proper under State Personnel Rules, but Wood's decision to terminate was superseded and reaffirmed by the Administrative Law Judge and the State Personnel Board after a *de novo* hearing. See, e.g., Cooper v. Smith, 89 F.3d 761, 763-64 (11th Cir. 1996)(terminating employee is a discretionary function).

As for Carr's other vague and conclusory allegations under Section 1983, these claims, too, are due to be dismissed under qualified immunity. Indeed, Carr can come forward with no evidence against Wood, Perry or Smitherman of any independent acts that constitute violations of federal law for purposes of Section 1983. Even more fundamental, Carr does not allege any constitutional violations with sufficient specificity[4] so as to comply with the "heightened pleading" standard for Section 1983 claims. See GJR Investments, Inc. v. County of Escambia,

---

[4] The Complaint is totally devoid of any specific conduct against Dudley Perry and Troy King, let alone any conduct that supports one or more of the four causes of action in the Complaint. For this reason, Perry and King are due summary judgment in their favor.

132 F.3d 1359, 1367 (11th Cir. 1998)(discussing the "heightened pleading" standard for Section 1983 claims).

Nevertheless, to the extent they are connected to Carr's termination, they certainly are due to be dismissed for the same reasons Carr's retaliatory termination claim is due to be dismissed.  To the extent they are unconnected to the termination, they are due to be dismissed because Carr cannot present evidence of any unlawful or unconstitutional actions performed by Wood, Perry or Smitherman, let alone any similarly situated comparators.  See, e.g., Martin v. City of Dothan, 2008 U.S. Dist. LEXIS 13923, at *25-*45 (M.D. Ala. 2008)(discussing qualified immunity and dismissing Section 1983 claims because the plaintiffs did not allege or prove constitutional violations);  Hayden v. Coppage, 533 F.Supp.2d 1186, 1194-96 (M.D. Ala. 2008)(dismissing Section 1983 claim against individual defendants because the allegations were conclusory and insubstantial);  Cobb v. Hawsey, 2007 U.S. Dist. LEXIS 77949 (S.D. Ala. 2007).

### IV.    The Defendants Are Entitled to Summary Judgment On the Breach of Contract Claim.

Count IV is a claim for Breach of Contract against the DYS, J. Walter Wood and Dudley Perry.  Carr claims that "ADYS entered into a settlement agreement regarding previous claims of race discrimination", that "the defendant breached the provisions of this agreement in that it failed to remove disciplinary records from her file", that the "defendant . . . failed to permanently reassign her to a position in the Department of Youth Services District 210 as agreed in the settlement agreement", and that the DYS did not give her a permanent position with DYS as evidenced by the fact that she was later terminated.  [Amended Complaint, ¶¶ 50-54].  The Defendants are entitled to summary judgment in their favor for a variety of reasons.

First, the settlement agreement was between Carr and her employer, DYS.  J. Walter Wood and Dudley Perry were not parties to this agreement.  Although Perry signed this

agreement, he signed it as counsel for the DYS and, in doing so, did not bind himself to any specific obligations.  In short, the breach of contract claim can proceed, if at all, only between the contemplated parties to that agreement – Carr and DYS.  For this reason, the Breach of Contract claim against J. Walter Wood and Dudley Perry should be dismissed.  See Carter v. Board of Trustees, 431 So. 2d 529, 531 (Ala. 1983)(dismissing breach of employment contract claims against the Board of Trustees because the Board of Trustees was not the entity with whom the plaintiff contracted for employment).

Second, as to any claim whatsoever against the DYS (whether for monetary damages or equitable relief) and the individuals Defendants in their official capacities, the DYS and the individual Defendants are entitled to sovereign immunity. Sovereign immunity stands as a complete bar to the Breach of Contract claim because the DYS is an agency of the State.  See Art. 1, § 14, Alabama Constitution; Shoals Community College v. Colagross, 674 So. 2d 1311, 1314 (Ala. 1996)(dismissing breach of employment contract claims against state agency and its director);   Williams v. John C. Calhoun Community College, 646 So. 2d 1 (Ala. 1994)(dismissing contract claim against state agency);   Ex parte Ala. Dept. of Transportation, 978 So. 2d 17 (Ala. 2008);   Ala. Agric. & Mech. Univ. v. Jones, 895 So. 2d 867 (Ala. 2004). Further, sovereign immunity bars claims against state employees who are sued in their individual and official capacities.  See Shoals Community College, 674 So. 2d at 1314 ("Employees in state agencies, in their official capacities and individually, are also entitled to absolute immunity from suit when the action is, in effect, one against the state."); Phillips v. Thomas, 555 So. 2d 81, 83 (Ala. 1989).

Third, to the extent Carr advances claims against Perry, Perry's involvement with the contract made the basis of this Count was strictly as an attorney for the DYS.  Since Perry was,

and is, an Assistant Attorney General and General Counsel for the DYS, he is entitled to State-agent immunity unless Carr can show that his conduct in negotiating the settlement agreement took him outside the blanket protection afforded him by the doctrine of State-agent immunity. See Johnson v. Sorenson, 914 So. 2d 830, 836-837 (Ala. 2005); Carter v. Board of Trustees, 431 So. 2d 529, 531 (Ala. 1983). Carr, however, cannot make this showing because Perry's activities in negotiating the settlement agreement and entering into it on behalf of the DYS were discretionary functions that afforded him state-agent immunity. Further, there is absolutely no evidence that Perry had any contractual responsibility or obligations for enforcing the terms of the settlement agreement, or in performing any affirmative duties under the settlement agreement. Accordingly, Perry is entitled to State-agent immunity as a matter of law.

Finally, Carr can present no affirmative evidence that anyone, let alone the DYS, breached the terms of the settlement agreement. Apparently, Carr contends that the DYS failed to remove certain reprimands from personnel file. There is absolutely no such evidence. Moreover, Carr argues that the settlement agreement guaranteed her "permanent" employment with the DYS, such that she could never be terminated. That assertion, however, totally misconstrues the settlement agreement, which provided that Carr was to be permanently re-assigned to a new position at DYS District 210 (from which she was terminated), compared to serving in the new position as a "probationary" employee. In short, because DYS is not in breach of any contract with Carr, the DYS is entitled to summary judgment in its favor.

## **CONCLUSION**

For the reasons set out herein, as well as those set forth in the Defendants' Motion to Dismiss, the Defendants are entitled to summary judgment in their favor on all claims in the Complaint, as amended.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
ASB-3422-F55R
Attorney for Defendants
Dept. of Youth Services, J. Walter Wood,
Troy King, T. Dudley Perry, Tracy
Smitherman

**OF COUNSEL:**

**RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.**
Post Office Box 270
Montgomery, AL 36101-0270
334/206-3126 (telephone)
334/481-0815 (facsimile)

## CERTIFICATE OF FILING

I hereby certify that on July 18th, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Guy D. Chappell, III, Esq.
Frederic A. Bolling, Esq.
H. Lewis Gillis, Esq.
Roslyn Crews, Esq.
T. Dudley Perry, Jr., Esq.
E. Diane Gamble, Esq.
Mark S. Boardman, Esq.

/s/ R. Austin Huffaker, Jr.
OF COUNSEL