IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RUBY CARR, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 2:07cv532-MHT |
| | ) |
| STATE OF ALABAMA DEPARTMENT | ) |
| OF YOUTH SERVICES, et al., | ) |
| | ) |
|        Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Ruby Carr, now proceeding *pro se*, brings this action against the State of

Alabama Department of Youth Services ("DYS"), J. Walter Wood, Jr. (individually and in

his official capacity as Director of DYS), Troy King (in his official capacity as Attorney

General), T. Dudley Perry (individually and in his official capacity as deputy attorney

general) and Tracy Smitherman (individually).  (Doc. # 18, Amended Complaint).  In Count

I, plaintiff asserts a Title VII claim, alleging that DYS and Wood (in his individual capacity)

terminated her employment "in retaliation for complaining of race discrimination on her job

and for having filed an EEOC charge in March 2005[.]"[1]  Count II is a claim pursuant to

---

[1]  Count I is styled "Race Discrimination and Retaliation."  However, plaintiff alleges only
that her termination was retaliatory, not that it was discriminatory.  (Amended Complaint, p. 6).
Plaintiff's amended complaint was filed by her attorney, who has since been permitted to withdraw.
Accordingly, although plaintiff now appears *pro se*, the court has no obligation to construe the
pleading liberally.  Additionally, even if the court were to construe the claim as including an
allegation that plaintiff was terminated because of her race, defendants would be entitled to summary
judgment because of plaintiff's failure to exhaust administrative remedies.  See EEOC Charge,
Defendants' Exhibit 22 (checking only the block for "retaliation," and stating "I believe Respondent
has retaliated and discriminated against me in the terms and conditions of my employment *solely
because of my previous charge of discrimination.*")(emphasis added).  An investigation into a charge

42 U.S.C. § 1981, in which plaintiff again alleges that DYS and Wood terminated her employment "in retaliation for complaining of race discrimination on her job and for having filed an EEOC charge[.]" (Amended complaint, p. 7).[2]  Count III is an equal protection claim pursuant to 42 U.S.C. § 1983 against DYS, Wood, Perry and Smitherman.  Plaintiff alleges that defendants discriminated against her on the basis of her race and that they retaliated against her by treating her unfairly on the job and giving her insufficient time to prepare for a hearing.  Count IV is a breach of contract claim, in which plaintiff alleges that DYS failed to comply with a settlement agreement that it entered into with the plaintiff to resolve her previous EEOC charge.

This action is presently before the court on the motion for summary judgment filed by the defendants.  Upon consideration of the motion, the court concludes that the motion is due to be granted in part and denied in part.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

For summary judgment purposes, an issue of fact is "material" if it is a legal element

---

that plaintiff suffered adverse action "solely because of [a] previous charge of discrimination" is not likely to encompass claims of discrimination on the basis of race.

[2]  Again, this Count is styled "Race Discrimination and Retaliation."  However, plaintiff includes no allegation that she was discharged because of her race.

of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## MOTION TO STRIKE

Defendants move to strike plaintiff's surreply (Doc. # 76) filed on December 16, 2008. Defendants contend that the surreply was filed: (1) beyond the time allowed in the court's briefing schedule for responding to the motion for summary judgment; (2) without leave of court; and (3) without any showing of exceptional circumstances. However, defendants filed additional evidence with their reply brief (see Exhibits 1 and 3 to Doc. # 75) which had not previously been filed or referenced, in whole or in part, in support of the

3

motion for summary judgment.  Plaintiff was entitled to respond to this new evidence.

Defendants also argue that "the Plaintiff's filing contains rank hearsay, irrelevant and inadmissible documents and exhibits, and does not comport with the filing requirements under Rule 56(e), Fed. R. Civ. P." (Doc. # 77, ¶ 6).  Defendants do not identify the specific documents to which they object, and they do not indicate which of their objections pertain to which of plaintiff's exhibits.  The court declines to strike plaintiff's exhibits on the basis of the general objections lodged by the defendants. Additionally, to the extent that defendants find plaintiff's exhibits objectionable because they are not authenticated properly,[3] the court notes that many of the exhibits filed with defendants' motion for summary judgment are not filed with any supporting affidavit and that defendant has not identified any deposition or other sworn testimony authenticating the exhibits.  The court declines to exclude the *pro se* plaintiff's exhibits on this basis – particularly since defendants have made no specific argument in this regard –  when evidence offered by defendants in support of their motion for summary judgment suffers from the same defect.   Accordingly, the defendants' motion to strike (Doc. # 77) is due to be denied.

### BACKGROUND[4]

_____

[3]  Defendants have not specifically argued that plaintiff failed to authenticate her exhibits properly; instead, they argue "as additional grounds" for striking plaintiff's surreply and exhibits only that the filing "contains rank hearsay, irrelevant and inadmissible documents and exhibits, and does not comport with the filing requirements under Rule 56(e), Fed. R. Civ. P."  (Doc. # 77, ¶ 6).

[4]  As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the defendant.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  The court considers any objections not *specifically* made to the use or admissibility of particular evidence to be waived for purposes of this motion.  See Davis v.

Plaintiff began her employment with DYS in 1999.  In September 2004, she began working in the offices of the DYS School District.  In March 2005, plaintiff filed an EEOC charge of race and gender discrimination and retaliation against the defendant.  (Carr aff., ¶¶ 3-4; Defendants' Exhibit 2). In October 2005, plaintiff and DYS resolved the charge through a negotiated settlement agreement.  (Defendants' Exhibit 3).  Plaintiff was thereafter reassigned from her previous position in DYS to the position of administrative assistant for defendant Tracy Smitherman, the Curriculum and Federal Programs Coordinator for DYS School District District 210.[5]  Smitherman was plaintiff's supervisor for the final year of plaintiff's employment and had no problems with plaintiff before January 2006.  (Defendants' Exhibit 4, pp. 19-26).  Plaintiff's job responsibilities included maintaining the district's property inventory.  (Id., pp. 23-25).  On January 23, 2006, plaintiff sent a memo to Smitherman regarding the property inventory.  Plaintiff wrote:

> Ms. Smitherman,
>
> Several months ago you informed me that I could transfer School District Property Inventory Register to Yolanda Kelley, Technology Coordinator. Then and now, I do not feel that I am in a position to transfer the Property Inventory to Mrs. Kelley.
>
> Due to circumstances that are beyond my individual control I feel that it is necessary as of this day January 23, 2006 that I relinquish any and all responsibility of maintaining the Property Inventory Register for DYS School District 210.
>
> I am submitting to you copies of the Property Inventory Register & documentation for (Central Office, Autauga, Chalkville-Sequoyah, Thomasville,

---

Howard, 561 F.2d 565, 570 (5th Cir. 1977).

[5]  Plaintiff testified in her deposition that the acts of race and sex discrimination and retaliation of which plaintiff complained in the EEOC charge filed on March 25, 2005 were "not related to Ms. Smitherman" and did not have anything to do with School District 210 but, instead, pertained to acts taken when plaintiff was "working behind the gate as a youth service aide." (Carr depo., pp. 166-67).

Vacca-McNeel, & L.B. Wallace) to date.  Also, I am removing the (2) Gateway Laptop Computers from my office.

I do not feel that it is necessary that we meet to discuss anything concerning DYS School District 210 Property Inventory since everything is self explanatory.

As always, I will continue to work and give this organization and School District a 110%.

(Defendants' Exhibit 5).  Smitherman permitted plaintiff to withdraw from this job responsibility and did not take any action against the plaintiff.  (Defendants' Exhibit 4, pp. 33-34).  On March 23, 2006, Smitherman left plaintiff a stack of documents with a sticky note affixed telling plaintiff to shred the documents.  Plaintiff returned the documents to Smitherman, responding on the sticky note, "Tracy, I need you to shread [sic] since this is teachers['] info."  According to Smitherman, the fact that the documents included teachers' information should not have kept plaintiff from shredding the documents, and the reason Smitherman wanted the documents shredded was that they included personal information. (Id. at pp. 27-31; Defendants' Exhibit 6).

On March 30, 2006, plaintiff sent another memorandum to Smitherman.  Plaintiff complained that she had not been issued a laptop computer and questioned why Smitherman had issued a laptop to Joniece Hamilton-Wood on February 2, 2006.  Plaintiff wrote, "Please help me to understand why Mrs. Wood was issued a Gateway Laptop Computer and no other individual serving as a Secretary for School District 210 was offered or received one."  Plaintiff further stated, "I feel that all individuals that are serving as a Secretary for School District 210 should have been offered or received a new Gateway Laptop Computer on 2/2/2006.  As I informed you I would prefer a Dell Laptop over Gateway. . . . Please do what is right to correct this problem and if I can be of any assistance please do not hesitate to ask me.  As always, I will continue to give 110% to School District 210 and the Department of Youth Services."  Smitherman testified that plaintiff had a new

6

"full-standing" computer in her office and did not need a laptop for her job responsibilities. Smitherman indicated that by discussing the laptop issue outside of the office, plaintiff was "instigating issues and animosity between the other staff" and that, as a supervisor, Smitherman did not expect this behavior to be coming from someone who worked for her. Smitherman testified that plaintiff had learned of the issuance of the laptop by reading a state property receipt while she was filing. Smitherman issued a memorandum to the plaintiff advising plaintiff that plaintiff had previously relinquished responsibility over equipment, that she had violated confidence by discussing the matter with others outside of the office, that she expected plaintiff to stay within the chain of command and to stay within the responsibilities of her position, and that by reading documents, plaintiff had committed a violation of ethics. (Defendants' Exhibit 7; Defendants' Exhibit 4, pp.34, 36-37, 39-40).

On April 7, 2006, Plaintiff responded to Smitherman's memorandum by issuing a Letter of Grievance, detailing plaintiff's allegations of mistreatment "since September 2004." (Defendants' Exhibit 8). Smitherman met with the plaintiff on April 13, 2006 to discuss plaintiff's grievance. Smitherman responded to the grievance, in writing, on April 19, 2006. (Defendants' Exhibit 11). Smitherman testified as follows regarding the meeting:

Q.  . . . Did anything unusual happen during the course of that discussion with her?

A.  Absolutely.

Q.  What?

A.  Ms. Carr became aggressive. She screamed. She hollered. She told me she wasn't going to do anything that I told her to do. She became belligerent in it. I mean, and she was just yelling. And as I questioned her about these items that's on the grievance, as it – as the meeting progressed, she got louder and louder, and at one point, she's pointing at me. And I told her, you know, don't do that. And she became hostile in that arena.

7

(Defendant's Exhibit 4, pp. 45-46).[6]

Four days later, on April 17, 2006, Smitherman sent plaintiff an e-mail which read:

Good Morning Ruby,
Just a reminder I will be in Birmingham this morning. You can reach me on my cell, if there is an emergency[.] Today, I need for you to start going though the SACS boxes and taking out the old information. Please put new face sheets in them and throw away any information that doesn't have personal staff or student information on it. I will go through the sheets with personal information to ensure that they can be shredded[.] I will be in the office tomorrow, see you then.
Have a good day,
Tracy

(Defendants' Exhibit 12; Defendants' Exhibit 4, pp. 58-62). On April 26, 2006, plaintiff responded

as follows:

Good Afternoon Tracy,

I do not recall you informing me that you would be in Birmingham on Monday, April 17, 2006. I was out of the office the week of April 17-21, 2006 due to death in my family[.] As of this date April 26, 2006 I have not received a monthly calendar from you since July, 2005 in reference to your out-of the office meetings/training, etc.

April 12, 2006 approximately 8:45 a.m[.] you enter[ed] my office telling me you want me to start taken [sic] out the documentation in the SACS folders, shred information with Social Security #'s for teachers/students, file documentation for teachers in their Professional Development folder and throw everything else away.

I informed you that due to your response that I received from you on April 6, 2006 alleging violation of ethics and confidentiality that I did not feel comfortable with removing, shredding, and filing documentation pertaining to teachers and students.

Due to this letter of grievance I submitted to you on April 7, 2006 and until this grievance is resolved I still do not feel comfortable with performing the tasks you have assigned me to do concerning the SACS documentation.

---

[6] Defendant has filed a cassette tape of the meeting. (Defendant's Exhibit 10). Much of plaintiff's surreply is directed to demonstrating that the cassette tape should be excluded from evidence. The court has not listened to or relied upon the cassette tape but has instead relied on Smitherman's testimony regarding plaintiff's actions during the meeting. Accordingly, the court need not decide whether the tape is admissible on the present motion.

Ruby

(Defendants' Exhibit 12).  Smitherman testified that her e-mail direction to plaintiff to sort out the

SACS documents with personal information for Smitherman's review was in response to the concern

that plaintiff had voiced.  (Defendants' Exhibit 4, pp. 58-59).  Smitherman testified that "[j]ust

because she filed a grievance didn't mean I didn't need her to do her work.  I mean, I still had

responsibilities.  We had responsibilities.  We had things that needed to be done in the office."  (Id.,

p. 61).

Also on April 26, 2006, plaintiff received Smitherman's written response to plaintiff's

grievance letter.  (Defendants' Exhibit 11).  The following day, Smitherman gave plaintiff a note

which read:

Ruby,

I need award memos for $2000.00 addressed to the following persons

[list omitted] . . . .

The funds are Career Technical-BASC[.]  Please let them know if they want to
purchase computers they have to be bought off of the AL Joint Purchasing
Agreement.  And remind them that if there is a state contract for what they order then
they have to purchase off the contract.  They must bring in 3 quotes for what ever
they want to order or a sole source letter.

CC to the person's principal
memos are from myself + Dr. [illegible]

(Defendants' Exhibit 15).  Plaintiff returned the note to Smitherman with a written note; according

to Smitherman, "Basically she told me You have to write it yourself.  Give me the words you want

it written on or how you want it written and then I'll do it."  The letters Smitherman had requested

were routine letters, and plaintiff had done these letters previously.  Plaintiff did not prepare the

award memos.  (Defendants' Exhibit 4, pp. 66-68).

9

That same day, Smitherman tried to meet with the plaintiff to give plaintiff a written warning for insubordination during the April 13th meeting, and for failing to complete directives on March 23rd, April 10th and April 26th.  Plaintiff refused to meet with Smitherman and told her "you can put it in my mailbox."  (Defendants' Exhibit 4, p. 70; Defendants' Exhibit 13).  On May 1, 2006, Smitherman issued plaintiff a written reprimand for plaintiff's refusal to complete the directive on April 27th and for plaintiff's refusal to meet with Smitherman for a formal session regarding the written warning.  Plaintiff again refused to meet with Smitherman.  Instead, she left Smitherman a voicemail message stating that "anything [Smitherman] had for her, to just put it in her mailbox." (Defendants' Exhibit 14; Defendants' Exhibit 4, pp. 70-72).

On May 10, 2006, Smitherman gave plaintiff another memorandum directing her to purge the SACS files.  The memorandum stated:

> I have directed you on two different occasions to begin going through the SACS boxes and taking out the old information.  I am aware that you have filed a grievance but you can not use the grievance process to pick or choose what job responsibilities you will do.  Today, I will be in my office so you will have access to the files or you can put them in your office.  Therefore, please go through the SACS files and put new face sheets in them and throw away any information that doesn't have personal staff or student information on it.  Any sheet with personal information should be given to me.

(Defendants' Exhibit 16).  Plaintiff did not purge the files.  (Defendants' Exhibit 4, pp. 61-62). Instead, she responded with another memorandum explaining why she did not "feel comfortable" working on files pertaining to SACS or "anything else within [Smitherman's] office."  She questioned why Smitherman did not assign the task to another employee, Shelia Turner. (Defendants' Exhibit 24).

According to Smitherman, plaintiff was willing to fax documents for Smitherman, but would not do much more, and their relationship had deteriorated to the point that plaintiff would not

communicate with Smitherman except through the mailbox.  On May 12, 2006, Smitherman wrote

a letter to Dr. Stewart requesting that plaintiff be terminated.  (Defendants' Exhibit 4, pp. 75-77).

On May 15, 2006, defendant Perry gave plaintiff a letter from DYS Executive Director

Walter Wood, notifying her of a fact-finding hearing to be held the following day.  Tim Davis,

Deputy Director of DYS, conducted the hearing.  (Defendants' Exhibit 4, pp. 78-79; Carr aff., ¶ 24).

On June 23, 2006, Wood terminated plaintiff's employment.  In the termination letter, Wood stated:

> Based on the testimony and documents presented during the [fact-finding] hearing,
> there was evidence to support that there was a violation of the . . . Rules of the State
> Personnel Board (670-X-19-01 (1e) - Failure to perform job properly) and/or
> violation of the Rules of the State Personnel Board (670-X-19-01 (1g) - Disruptive
> conduct of any sort) and/or violation of the Rules of the State Personnel Board (670-
> X-19-01 (2b) - Insubordination).
>
> Based on the evidence and a review of your personnel file, I hereby order your
> dismissal from the Department of Youth Services effective at the close of business
> June 23, 2006.

(Defendants' Exhibit 19).  Plaintiff appealed Wood's decision to the State Personnel Board and, on

September 19, 2006, an Administrative Law Judge conducted a hearing. On December 27, 2006, the

Administrative Law Judge, finding that a totality of the evidence supported termination, issued a

recommendation to the State Personnel Board that plaintiff's dismissal be upheld.  (Atch 1 to Doc.

# 24).  The Personnel Board upheld the termination and, on April 12, 2007, plaintiff filed a notice

of appeal in the Circuit Court of Montgomery County.  The appeal was dismissed without prejudice.

(Defendants' Exhibit 21).  On December 8, 2007, plaintiff filed a charge of discrimination with the

Equal Employment Opportunity Commission, alleging that she was terminated in retaliation for

filing a previous EEOC charge in March 2005.  (Defendants' Exhibit 22).  Plaintiff filed the present

action on June 15, 2007.

## DISCUSSION[7]

### Analytical Framework for Disparate Treatment Claims

Plaintiff has not argued that her claims of retaliation and race discrimination are supported by direct evidence of discriminatory intent, nor has she filed any such direct evidence.  The <u>McDonnell Douglas</u>/<u>Burdine</u>[8] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination.  See  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997).[9]  The plaintiff must first make out a *prima facie* case of discrimination.  <u>Burdine</u>, 450 U.S. at 252-53; <u>Walker v. Mortham</u>, 158 F.3d 1177, 1183 (11th Cir.1998); <u>Combs</u>, 106 F.3d at 1527-28.  "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because

---

[7]  In the style of the amended complaint, plaintiff lists "Troy King as Attorney General of the State of Alabama" as a defendant.  However, plaintiff makes no allegations pertaining to King and seeks no relief from him.  Additionally, while plaintiff lists "T. Dudley Perry Jr., individually and in his official capacity as[] Deputy Attorney General" as a defendant, she seeks no relief from Perry in his official capacity.  Accordingly, King and Perry (in his official capacity) are due to be dismissed as defendants.

[8]  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

[9] This analysis also applies to plaintiff's § 1981 and § 1983 claims.  <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008)(§ 1983 claim); <u>Stallworth v. Shuler</u>, 777 F.2d 1431, 1433 (11th Cir. 1985)("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical . . . Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims").

no issue of fact remains in the case." Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184. The plaintiff must then "come forward with evidence that would be sufficient to convince a reasonable fact finder that the defendant's articulated non-discriminatory reason is pretextual to the extent that [the protected characteristic] was *a* motivating factor in the defendant's decision." Rawlinson v. Whitney National Bank, 416 F. Supp. 2d 1263, 1268 (M.D. Ala. 2005)(emphasis in original).

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that: "'(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.'" Birdyshaw v. Dillard's, Inc., 2009 WL 190060 (11th Cir. Jan. 28, 2009)(quoting Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008)). If the plaintiff establishes a *prima facie* case of retaliation, analysis of the claim proceeds in the same manner as for a discrimination claim – defendant has the burden of articulating a

13

legitimate, non-retaliatory reason for the adverse employment action and, if the defendant meets its burden, plaintiff may prevail only if she is able to present evidence of pretext as to each of the reasons proffered by her employer.  See Birdyshaw, 2009 WL 190060 at 7-9.[10]

### Title VII Retaliation Claim (Count I)

<u>Defendant Wood</u>

In Count  I, plaintiff alleges that DYS and Wood (in his individual capacity) terminated her employment "in retaliation for complaining of race discrimination on her job and for having filed an EEOC charge in March 2005[.]" Plaintiff seeks judgment on this claim against "ADYS and J. Walter Wood, Jr. as Executive Director of ADYS[.]" (Amended Complaint, p. 6).  Title VII creates a right of action against an employer.  Wood, in his individual capacity, is not plaintiff's employer.  To the extent that plaintiff brings Count I against Wood in his individual capacity, the claim is due to be dismissed.  See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).

To the extent that plaintiff brings Count I against Wood in his official capacity, the claim is likewise due to be dismissed because it is redundant, given plaintiff's claim against

---

[10] Plaintiff's argument regarding the effect of the Supreme Court's opinion in <u>Desert Palace v. Costa</u>, 538 U.S. 959 (2003) on the present case is difficult to follow.  To the extent that plaintiff argues that the <u>McDonnell-Douglas</u> burden shifting framework no longer applies or that she is not required to establish pretext (either by relying on evidence which established the *prima facie* case or by additional evidence), the court must reject plaintiff's argument.  See Rawlinson, *supra*; Herawi v. Alabama Dept. of Forensic Sciences, 311 F.Supp.2d 1335, 1338 (M.D. Ala. 2004); Thomas v. Bed, Bath & Beyond, Inc., 508 F. Supp.2d 1264, 1274 n. 10 (N.D. Ga. 2007)("[W]hen a plaintiff has made a *prima facie* showing of discrimination but does not survive summary judgment, the Court has necessarily found that the plaintiff has failed to present sufficient evidence of pretext to support a jury verdict that discrimination was either *the* factor or *a* factor in an adverse employment action.")(emphasis in original).

DYS.  See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.")(citations omitted)(§ 1983 claim);  Busby, supra, 931 F.2d at 776 (affirming district court's dismissal of § 1983 claims against official capacity defendants, stating, "To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.");  Id., at 772 ("We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.")(emphasis added);  Moss v. W & A Cleaners, 111 F. Supp.2d 1181 (M.D. Ala. 2000)("[W]hile official-capacity suits against an employer's agents are proper, such suits are unnecessary where a plaintiff has also sued the employer.  In other words, if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action.").  Because plaintiff has sued her employer directly, her official capacity claim against Wood is redundant and is due to be dismissed.

## Department of Youth Services

DYS argues that plaintiff cannot establish a prima facie case of retaliation and, further, that she cannot rebut the legitimate reasons it has articulated for her termination. The court does not address defendant's arguments regarding the prima facie case, as it concludes that plaintiff has not met her burden of establishing pretext.

Wood, the DYS decision-maker, indicated his reasons for plaintiff's termination in the termination letter he addressed to her on June 23, 2006. Wood stated his conclusion that the evidence presented during the May 16, 2006, fact-finding hearing established plaintiff's: (1) failure to perform her job properly; (2) disruptive conduct; and (3) insubordination. (Defendants' Exhibit 19). As noted above, Smitherman testified at the fact-finding hearing about – among other things – plaintiff's refusal to purge the SACS files (as she was directed to do on more than one occasion); plaintiff's discussion of the laptop assignment with people outside of the office; plaintiff's belligerent and disrespectful conduct toward Smitherman during the April 13, 2006, meeting (including plaintiff's yelling, finger-pointing, and telling Smitherman that she was not going to do anything Smitherman told her to do); plaintiff's refusal to shred documents as directed by Smitherman; plaintiff's refusal to prepare routine award memos; and plaintiff's refusal to meet with Smitherman for the imposition of disciplinary measures.

Provided that a reason proffered by the employer for a challenged action is one that "might motivate a reasonable employer," an employee "cannot succeed [in meeting her burden of establishing pretext] by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Rather, the employee must "meet that reason head on and rebut it." Id. As noted previously, plaintiff may prevail only if she is able to present evidence of pretext as to each of the reasons proffered by her employer. See Birdyshaw, 2009 WL 190060 at 7-9.

In response to the motion for summary judgment, plaintiff has filed her own affidavit,

16

her December 7, 2006 EEOC charge, and photographs of boxes stacked in her work area. (Doc. #73). Plaintiff has also filed a number of exhibits with her surreply.[11] Plaintiff's responsive affidavit is rife with conclusory statements ("I was subjected to race discrimination daily, which was visible"; "From October 2004 until August 2005 (11 months) I was isolated, humiliated, and discriminated against by the Defendants"; "Defendants Smitherman and Perry in my opinion took advantage of every opportunity to make my work environment hostile and to deprive me of my liberty"). The Eleventh Circuit has "'consistently held that conclusory allegations without specific supporting facts have no probative value.'" Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)(quoting Evers v. General Motors Corp., 770 F.2d 984, 985 (11th Cir. 1985)); see also Miller v. Citizens Security Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997)("A conclusory statement in an affidavit, however, cannot create a genuine issue of material fact which precludes summary judgment."). The court has considered the specific facts to which plaintiff attests, but has not considered plaintiff's conclusory statements.

The facts set forth in plaintiff's affidavit reveal that plaintiff strongly disagrees with

---

[11] The exhibits filed with the surreply include excerpts of the transcripts of the administrative fact-finding hearing (Plaintiff's Exhibit 4), what appears to be plaintiff's deposition testimony (Plaintiff's Exhibit 33), and the termination appeal hearing (Plaintiff's Exhibit 21). Many of plaintiff's surreply exhibits are copies of documents already in the record (see Exhibits 1, 2, 10, 11, 13, 14, 15, 22, 23, 25, 28, 29, 31, 35, 38). She has also filed copies of pleadings filed in the termination appeal process (Exhibits 7, 8, 9, 36-39) and copies of memoranda to or from plaintiff and DYS employees (Exhibits 3, 19, 20, 26, 27, 30). Exhibits 12, 17 and 18 are documents apparently offered to demonstrate that plaintiff has performed some of the tasks required of her by Smitherman, and Exhibit 32 includes a staffing document dated January 10, 2006. The court has referenced these documents where relevant.

Smitherman's assignment of work tasks and defendant's assignment of plaintiff's work space, and that plaintiff contends that DYS failed to comply in certain respects with the terms of the settlement agreement. Notably, however, plaintiff does not assert that she purged the SACS files when directed to do so by Smitherman, that she prepared the award memos as requested by Smitherman,[12] or that she shredded the stack of documents Smitherman left for plaintiff to shred. Plaintiff does not deny that she yelled and pointed her finger at Smitherman during the April 13 meeting[13] and admits that she refused to meet with Smitherman regarding her warning or her reprimand.[14,15] Plaintiff points to her March 20,

---

[12]  Plaintiff testified that she did not "refuse" to type the memos; she testified that she told Smitherman that she would be "more than glad to type it for her" if Smitherman would "word this exactly the way you want me to type it" or "just tell plaintiff what she wanted [plaintiff] to type in [Smitherman's] own words." (Defendants' Exhibit 23, termination appeal testimony, pp. 141, 146). Smitherman's complaint, however, is that plaintiff failed to prepare the memos as directed (see Defendants' Exhibit 16; Exhibit 4, pp. 64, 66-68). Plaintiff's offer to perform the task under conditions which she herself had set – i.e., that her supervisor would write the memos herself and that plaintiff would then type them – does not demonstrate that plaintiff complied with Smitherman's directive.

[13]  Plaintiff correctly argues in her surreply that "April 13, 2006 was not a charge date" for her termination. (Doc. # 76, p. 5; see Plaintiff's Exhibit 7). However, the written warning that plaintiff received for her conduct on this date was a part of plaintiff's disciplinary record.

[14]  Plaintiff testified that she refused to meet with Smitherman "because of the unsafe . . . and illegalness of it." (Defendants' Exhibit 23, pp. 141, 173).

[15]  In her brief, Plaintiff "denies" some of these charges. However, she does not do so in her affidavit or with any other evidence admissible on the present motion. See Plaintiff's brief, pp. 4-6; Plaintiff's evidence filed in opposition to motion for summary judgment (Exhibits to Doc. # 73; Exhibits to Doc. # 76). By order entered on November 12, 2008, the court advised plaintiff of the requirements for responding to a motion for summary judgment (Doc. # 69). Plaintiff was advised specifically that she may not rely on her unsworn pleadings "but must oppose the motion by filing sworn affidavits, depositions, or answers to interrogatories that set forth specific facts which demonstrate that there is a genuine issue of material fact[.]" Id. (footnote omitted). While the court has considered unauthenticated documents filed by both parties, it declines to consider plaintiff's

2006 mid-appraisal which indicated that she was performing competently; however, all of these events occurred after the date of the mid-appraisal.

Plaintiff's apparent contention is that the events which followed her internal grievance and her EEOC charge of discrimination are sufficient to demonstrate that retaliation was a motivating factor for her termination.  (See Plaintiff's brief, Doc. # 73, pp. 6-7, 12-16). Plaintiff points to the following sequence of events:

• September 30, 2004: plaintiff files "continuance grievance" to G. Wayne Booker, Institutional Services Director.[16]  (Plaintiff's aff.,¶ 8).

• October 18, 2004: Smitherman assigns the "storage room" as plaintiff's office and tells plaintiff to "clean it up, box down . . . the files, find a place for all these[] supplies, and do not throw anything away."  The storage room had no walking space, no window, and no working telephone, and had an odor.  "Defendants" knew plaintiff had been diagnosed with fibromyalgia but did not offer to help her clean out her office.  During the Christmas holidays, plaintiff worked to get the storage room sufficiently organized so that she could use a table as a desk.  Smitherman and Stewart stopped by plaintiff's door weekly and said – "with a sly grin on their face" – "We have got to remove these boxes."  (Plaintiff's aff.,¶¶ 8,

---

unsworn assertions in her brief as evidence on the present motion.

[16]  Plaintiff does not provide evidence of the substance of this "continuance grievance," nor does she provide evidence that Smitherman or Smitherman's supervisor, Dr. Stewart, was aware of the grievance or its contents.

10; photographs attached to plaintiff's response).[17]

_____

[17] Although plaintiff's affidavit is unclear, it appears that this situation was entirely resolved by August 2005.  See Plaintiff's affidavit, ¶ 10 (Smitherman "from October 2004 - August 2005 saw this as an opportunity to isolate, humiliate . . ."); ¶ 7 ("From October 2004 until August 2005 (11 months) I was isolated, humiliated, and discriminated against by the Defendants").  In her deposition, plaintiff testified as follows:

> A. . . . Mr. Wood was aware that I worked in the storage room from October to 2005, just like Attorney Dudley Perry.  Mr. Wood visited the storage room on January the 27th after – of 2005 after I met with him and we had our discussion concerning a grievance that was filed September of 2004.  He came over that day and instructed them to give me keys to the building and to connect that telephone that you see here on the boxes in the storage room because I had been without a telephone or a key to the building from the time I entered the building up until Mr. Wood came and visited January the 27th, that afternoon.  That's when I received the first key to the building.  And the very next day, on the 28th, Mr. Bates connected the phone, and they gave me a key to the storage room.
>
> Q. Where do you believe you should have been stationed as an employee at DYS School District 210?  If not in the storage room, where?
>
> A. Well, actually there was no other office in the building that I was aware of that I could have been stationed, but I do not feel that I should have been obligated to work in these conditions as an employee of the Department of Youth Services.  I would have been better off just sitting in the receptionist's area on a day-to-day basis, at least having a window view, or being able to not have to breathe the stink of the boxes and whatever it was that was dead in the office.  I don't think I should have been obligated to that as an employee.  No other employee, to my knowledge, at Mt. Meigs Youth Facility has been subjected to that type of work environment.
>
> Q. So there was no other place to put you in that area, is that correct?
>
> A. Well, in the School District, in the School District area.  I worked in the – when I first came, I worked in the copier/break/file room on a small table, and this was where people were coming in and out and getting their coffee or doing their filing or what have you.  And it was October when Ms. Smitherman told me that I would be, if I remained in School District, this would be my office and I needed to clean it up.

(Carr depo., pp. 62-63).  Plaintiff testified that "[a]s an employee, [she] didn't feel that it was [her] responsibility" to find a location for the boxes and supplies that were in the storage room  (id., p. 63), and that the boxes were not removed until August 2005 (id., p. 128).  She further testified that the office assigned to her was "less than ten feet" from Smitherman's office. (Id., pp. 70-71).

• January 27, 2005: Plaintiff met with Wood to discuss the "continuance grievance." She complained – among other things – about her office and the fact that she did not have keys to the room or the building. Wood visited plaintiff at the School District and told her that she would be receiving keys and that the telephone would be connected. (Plaintiff's aff. ¶ 12). The telephone was connected and plaintiff had keys by the following day, January 28, 2005. (Carr depo., p. 61).

• February 18, 2005: Perry visited plaintiff "in the storage room" and plaintiff complained to defendant Perry about her work space. (Plaintiff's aff., ¶ 13).

• March 25, 2005: Plaintiff filed an EEOC charge alleging race and gender discrimination and retaliation. (Plaintiff's aff., ¶ 4; Defendants' Exhibit 2).[18]

• August 23, 2005: Smitherman denied plaintiff the opportunity to attend STI training and tells her that she may not help Queen Barker with STI under any circumstances. (Plaintiff's aff., ¶ 15).[19]

• August 24, 2005: Smitherman conducted plaintiff's performance appraisal, giving

---

[18] This charge had to do with plaintiff's pay and disciplinary actions while she was working as a Youth Services Aide. (Defendants' Exhibit 2). Plaintiff testified that the charge did not have anything to do with the School District or Smitherman. (Plaintiff's depo., pp. 166-67).

[19] Plaintiff asserts that Smitherman did so "Blatantly and Racially." Other than the races of the parties (Smitherman is white; Barker is black), plaintiff's only evidence in support of this conclusion is her testimony that Smitherman was "upset," "walking back and forth" and "pointing her finger at [plaintiff]" (Carr depo., p. 148). Plaintiff provides no evidence that "STI training" was necessary for her particular job, nor does she provide evidence that assisting Barker was part of her job. Smitherman testified that STI did not have anything to do with plaintiff's job and that she did not want plaintiff "involved with STI distracting her from her other job responsibilities." (Doc. # 75, Exhibit 2, p. 89).

her a 38.3.  "Defendants" did not submit the justification with the appraisal to State Personnel. Plaintiff did not receive a step increase for the rating period from September 1, 2004 to September 1, 2005.  (Plaintiff's aff., ¶¶ 16 - 17).[20]

• September 2, 2005: Ms. Lewis[21] advised security "that Ms. Ruby Carr is not authorized to enter the fenced area.  She is still an employee at ADYS in Support Operations but has no ADYS Business inside the fence."  Plaintiff learned of this directive on September 15, 2005 when a guard refused to allow plaintiff to enter the gate to pick up a co-worker. (Plaintiff's aff., ¶ 18).

• September 28, 2005: Plaintiff met with Smitherman to complain that she did not receive a pay increase for working in the school district.  Smitherman told plaintiff she "could relinquish any of her duties and [Smitherman] would work with [plaintiff]." (Plaintiff's aff., ¶ 19).

• October 11, 2005: Smitherman met with plaintiff and told her "We are not on the same page" regarding Queen Barker.  Smitherman told plaintiff if they did not "get on the same page," she would "send [plaintiff] back to those dogs, Mr. Black and Mr. Grant behind the gate."  Plaintiff told Smitherman she was not afraid of Black or Grant and left Smitherman's office.  (Plaintiff's aff., ¶ 20). That same day, plaintiff and Perry signed an

---

[20]  Plaintiff has not filed any evidence that she was entitled to a step increase by virtue of the performance appraisal or that the defendants' failure to submit the justification to State Personnel affected plaintiff's entitlement.

[21]  There is no indication in the affidavit regarding Lewis' position at DYS, and the court has found no other reference to Lewis in the record.

agreement resolving plaintiff's EEOC charge against DYS.  (Id., ¶ 6; Defendants' Exhibit 3).

 • October 12, 2005: Smitherman and Dr. Stewart increased plaintiff's duties by instructing her to set up SACS folders and CEA folders "while Shelia Turner; Steno Clerk (white female) talked on the telephone and crocheted daily."  (Plaintiff's aff., ¶ 21).[22]

 • February 16, 2006: Smitherman assigned plaintiff tasks "that normally would have been performed by [Turner] who would be watching a movie on her DVD at her desk while [plaintiff] was working"; (Id., ¶ 22).[23]

 • March 23, 2006: Smitherman issued a memorandum to plaintiff, counseling her regarding a violation of ethics for reading a property inventory memo and discussing it outside of the office.  (Defendants' Exhibit 4, pp. 32-40).

 • April 13, April 27 and May 1, 2006:  Smitherman recorded conversations with plaintiff without plaintiff's knowledge or permission.  (Defendants' Exhibit 7).

 • May 1, 2006: Plaintiff received the April 27, 2006, warning memorandum for her actions during the April 13th meeting with Smitherman and the May 1, 2006, reprimand for her refusal to meet with Smitherman on April 27th regarding the warning.  (Defendants' Exhibits 13, 14; Defendants' Exhibit 23, pp. 171-72).

 • May 15, 2006: Perry handed plaintiff a letter giving her only one day to report to the

---

[22]  Plaintiff provides no evidence that Smitherman was Turner's supervisor.

[23]  Plaintiff testified that she does not "really know" whether Smitherman was aware that Turner was watching a DVD.  (Plaintiff's depo., pp. 265-66).

fact-finding hearing.  (Plaintiff's aff., ¶ 24).

• Between October 2005 and June 2006: Defendants Wood and Perry allegedly breached the negotiated settlement agreement on plaintiff's previous EEOC charge by failing to remove certain disciplinary actions from her record and failing to restore plaintiff's complete appraisal for September 1, 2003, September 1, 2004 and August 11, 2004.  (Id., ¶ 22).

Additionally, plaintiff states that she "did not experience the adverse job action before [she] filed the Charge of Discrimination with the EEOC."  Id.  In her EEOC charge, plaintiff provides further detail regarding the negative information which was not removed from her personnel file, states that the grievances she listed in her letter to Smitherman were never addressed, and notes that her mid-appraisal on March 20, 2006, indicated that she was performing competently in all six areas of responsibility.

The evidence of record is insufficient to establish the existence of a genuine issue of fact as to whether plaintiff's complaints of discrimination were a factor which prompted Smitherman's recommendation for dismissal or Wood's action in terminating plaintiff's employment.  Plaintiff must show that the reason advanced by her employer is unworthy of credence or that a discriminatory/ retaliatory reason likely motivated the employer.  DeLong v. Best Buy Co., Inc., 211 Fed. Appx. 856, 3 (11th Cir. 2006); see also Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 559 (7th Cir. 1987)("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination[.]")(quoted with approval in DeLong, supra); see also Bennett v. Chatham County Sheriff Department, 2008

24

WL 4787139, 7 (11th Cir. Nov. 4, 2008)(unpublished opinion)("[I]n investigating misconduct and reaching an employment decision, an employer is entitled to weigh the witnesses's credibility, and we will not 'second-guess as a kind of super-personnel department' the employer's decisions made as part of an internal investigation.  In such circumstances, our inquiry is limited to whether the employer's 'choice is an honest choice,' that is, whether the employer acted in good faith and had reasonable grounds to believe that the disciplined employee engaged in the misconduct.")(citation omitted).  While plaintiff complains of a number of events and circumstances, the timing of events is not suggestive of retaliatory motive, nor is there any other evidence permitting a reasonable inference of retaliatory motive.  Plaintiff's belief that she should have had a step increase, a better office or better office equipment, or that she should not have had to perform the tasks required of her by Smitherman does not establish pretext.  Plaintiff has not provided evidence permitting an inference that the actions taken by defendants with regard to the conditions of plaintiff's employment or plaintiff's termination were motivated by plaintiff's complaints of discrimination.

Because plaintiff has failed to point to evidence sufficient to establish that the reasons articulated by defendant for plaintiff's termination are pretextual, defendant DYS is entitled to summary judgment on Count I, plaintiff's Title VII retaliation claim.

### 42 U.S.C. § 1981 Claim (Count II)

In Count II of her amended complaint, plaintiff brings retaliation claims pursuant to

42 U.S.C. § 1981 against DYS and Wood in his individual capacity.[24]  These defendants are state actors.  Accordingly, as defendants argue, plaintiff may not assert her claims against them under § 1981 directly, but must proceed under 42 U.S.C. § 1983.[25]  See Butts v. County of Volusia, 222 F.3d 891 (11th Cir. 2000); Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991)("[T]he Supreme Court [has] held that § 1983 'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.' . . . To the extent that injunctive relief remains available to [plaintiff] under § 1981, it would simply duplicate the equitable relief he could receive under § 1983.")(quoting Jett v. Dallas Indep. School Dist., 491 U.S. 701 (1989)); Bailey v. Town of Lady Lake, Fla., 2006 WL 2048250, 3 (M.D. Fla. Jul 20, 2006)("Because § 1981 provides no different remedies against a state actor than § 1983, and since they merge into one another, [plaintiff's] claims against the individual Defendants – in both their individual and official capacities – under § 1981 no longer exist and are due to be dismissed with prejudice.").

Because Count II is premised solely on 42 U.S.C. § 1981 and is asserted against state actors, the court treats the claim as merged into plaintiff's § 1983 claim.  Accordingly, Count II – as a stand-alone claim separate from plaintiff's § 1983 claim – is due to be dismissed.

---

[24]  Plaintiff styles this Count "Race Discrimination and Retaliation."  However, she alleges only that she was terminated "in retaliation for complaining of race discrimination."  (See Amended Complaint, ¶ 38).

[25]  Plaintiff asserts a claim pursuant to § 1983 and the equal protection clause of the Fourteenth Amendment in Count III.

### § 1983 Claims (Count III)[26]

In Count III of her amended complaint, plaintiff asserts race discrimination and retaliation claims pursuant to 42 U.S.C. § 1983 against DYS, Wood (in his official and individual capacities), Smitherman (in her individual capacity), and Perry (in his individual capacity).

### DYS and Wood in his Official Capacity

Defendant argues, correctly, that plaintiff's § 1983 claim against DYS – regardless of the nature of the relief sought – is barred by the Eleventh Amendment. Defendant DYS is entitled to dismissal of plaintiff's § 1983 claim. See Papasan v. Allain, 478 U.S. 265, 276 (1986)(citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). As defendant argues, the Eleventh Amendment also bars plaintiff's § 1983 claim for damages against Wood in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)(official-capacity defendant is not a "person"

---

[26] Defendants argue that plaintiff's § 1983 termination claim is "due to be dismissed because of the preclusive effect of the state grievance process and, in particular, the Administrative Law Judge's and State Personnel Board's conclusion that Carr should, in fact, be terminated for her failure to follow her job requirements, her disruptive conduct, and her insubordination." (Doc. # 41, p. 16). "When a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)(citation omitted). Defendants have not briefed the issue of whether Alabama courts would find plaintiff's equal protection claims to be precluded – in their entirety – by the administrative findings. Neither have they cited any statutory or case law suggesting that plaintiff had an opportunity to fully litigate her equal protection claims before the agency or the State Personnel Board. The ALJ's opinion does not discuss or reject plaintiff's claims of a denial of equal protection due to her race. Because defendants have failed to brief their preclusion argument adequately, the court declines to reach it. See Carlisle v. Phenix City Board of Education, 849 F.2d 1376 (11th Cir. 1988).

for purposes of § 1983 damages liability).[27]

### § 1983 Individual Capacity Claims against Wood, Smitherman, and Perry

Plaintiff alleges, under § 1981 and the 14th amendment's equal protection clause, that she was terminated in retaliation for complaining of race discrimination on the job and for filing an EEOC charge. She further alleges – under the equal protection clause only – that the defendants denied her rights by terminating her employment, by giving her only one day to prepare for the agency's fact-finding hearing, by failing to alleviate racially discriminatory treatment, and by not affording her the same treatment as white employees "with respect to the way her supervisor treated her on her job."

*Termination*

In addition to several other arguments, defendants contend that plaintiff's § 1983 claims are due to be dismissed for the same reasons as her retaliatory termination claim. When § 1981 and equal protection claims are asserted under § 1983 as a parallel remedy for employment rights protected by Title VII, the elements of the causes of action are the same. See Whiting v. Jackson State University, 616 F.2d 116, 120-21 (5th Cir. 1980); Shuford v. Alabama State Board of Education, 968 F. Supp. 1486, 1504 (M.D. Ala. 1997). As discussed above, defendants have articulated legitimate nondiscriminatory and non-retaliatory reasons for plaintiff's termination, and plaintiff has failed to establish pretext. Accordingly,

---

[27] Additionally, because plaintiff's § 1983 claims fail on the merits (see discussion of claims, *infra*), she has not demonstrated an entitlement to injunctive relief under 42 U.S.C. § 1983 against Wood in his official capacity.

28

defendants are entitled to summary judgment on plaintiff's § 1983 termination claim.[28]

*One Day Notice for Fact-Finding Hearing*

Plaintiff asserts that her equal protection rights were violated when defendants gave her only one day to prepare for her fact-finding hearing.[29]  She alleges that "Caucasian employees and employees that have not made racial discrimination complaints against the defendant have been given more time to address complaints made against them." (Amended Complaint, ¶ 44).  Defendants contend, *inter alia*, that plaintiff's claim fails on the merits because plaintiff "cannot present evidence of any unlawful or unconstitutional actions performed by Wood, Perry or Smitherman, let alone any similarly situated comparators." (Defendants' brief, p. 19).  "A plaintiff establishes a *prima facie* case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.  The methods of presenting a *prima facie* case are not fixed; they are flexible and depend to a large degree upon the employment situation."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  Although plaintiff alleges that similarly situated

---

[28]  To the extent that plaintiff asserts her retaliation claim under the equal protection clause of the Fourteenth Amendment, the claim is due to be dismissed because "[a] pure or generic retaliation claim . . . does not implicate the Equal Protection Clause."  Watkins v. Bowden, 105 F.3d 1344, 1354-55 (11th Cir. 1997).

[29]  It is not clear from the amended complaint which of the defendants plaintiff claims is responsible for the one-day notice.  Wood signed the notice of the hearing, and Perry delivered it. There is no allegation or evidence that Smitherman was involved in setting the hearing date or providing notice to the plaintiff. (See Plaintiff's affidavit, ¶ 24; Defendants' Exhibit 17).  Plaintiff does not assert this claim under § 1981, but only under the equal protection clause.  In her § 1981 claim, plaintiff asserted only that her termination was retaliatory.   (See Count II (¶ 38) and Count III, Amended Complaint).

comparators exist, she has not identified or produced evidence concerning any similarly situated comparator.[30]   Accordingly, plaintiff has not established a *prima facie* case of discrimination on her one-day-notice claim, and the defendants are entitled to summary judgment on this claim.

*Smitherman's Treatment of Plaintiff On-the-Job; Woods' Failure to Alleviate It*

Plaintiff alleges that defendants violated her equal protection rights because she "was not afforded the same treatment that white employees were afforded with respect to the way her supervisor treated her on her job." (Amended Complaint, Count III, ¶ 42). Plaintiff further alleges that she "complained to the Defendant's Director, J. Walter Wood, Jr., and nothing was done to alleviate the racially discriminatory treatment against her. (Id., ¶ 43). Smitherman was plaintiff's supervisor. (Defendants' Exhibit 4, p. 20; Carr depo., p. 140). Plaintiff does not allege and there is no evidence that Perry was either plaintiff's supervisor or in a supervisory position over Smitherman. Accordingly, Perry, in his individual capacity, is entitled to summary judgment on this claim.

As noted above, the defendants argue that plaintiff has failed to present evidence of a similarly situated comparator. (Defendants' brief, p. 19; Smitherman brief, pp. 5-6). The only comparator identified by the plaintiff is Shelia Turner. (See plaintiff's aff., p. 2).

---

[30] Additionally, plaintiff does not point to evidence of particular adverse consequences she suffered as a result of the short notice. She does not identify any witnesses or evidence she was unable to present at the fact-finding hearing because of the short notice. Accordingly, the court concludes that the one day notice does not constitute an adverse employment action. See Butler v. Alabama Department of Transportation, 536 F.3d 1209, 1215 (11th Cir. 2008)(to prove adverse employment action, plaintiff must show a "serious and material change in the terms, conditions, or privileges of employment")(citation omitted).

However, plaintiff has not introduced any evidence to show that Turner has engaged in any conduct similar to plaintiff's, nor has she shown that Smitherman had the authority or ability to take any action against Turner or to otherwise establish the terms and conditions of Turner's employment.  See Greer v. Birmingham Beverage Co., Inc., 291 Fed. Appx. 943 (11th Cir. Sep. 3, 2008)(unpublished opinion)("The plaintiff and the comparators must be 'similarly situated in all relevant respects . . . . [and] it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'")(quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).  Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989)("[T]he burden is on [plaintiff] to show a similarity between [her] conduct and that of white employees who were treated differently[.]").  The evidence of record does not demonstrate that Turner is similarly situated to plaintiff.[31]   Accordingly, plaintiff has failed to establish a *prima facie* case of discriminatory treatment by her supervisor, and Smitherman is entitled to summary judgment on plaintiff's claim.

Plaintiff's claim against Wood is that, after she complained to him of her supervisor's racially discriminatory treatment, he failed to take action "to alleviate the racially discriminatory treatment."  (Amended Complaint, ¶¶ 42-43).  However, as noted above, plaintiff has not produced evidence sufficient to permit a reasonable inference that plaintiff was subjected to racially discriminatory treatment.  Accordingly, she has not demonstrated

---

[31]  To the extent that plaintiff's claim is that the assignment of office space or office equipment was discriminatory, plaintiff has likewise failed to demonstrate that she is similarly situated to any employee who was treated differently.

the existence of an issue of fact regarding whether she suffered any legally cognizable injury due to Woods' alleged failure to address plaintiff's claims of discrimination.  See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)("In the absence of any evidence of injury to Ms. Hartley after Parnell [the defendant supervisor] learned of her allegations, we hold that Parnell did not deprive Ms. Hartley of her Fourteenth Amendment right to equal protection.")(footnote omitted).  Defendant Wood, in his individual capacity, is entitled to summary judgment on the merits of plaintiff's equal protection claim.

### Breach of Contract Claim (Count IV)

In Count IV, plaintiff alleges that she and "defendant ADYS entered into a settlement agreement regarding previous claims of race discrimination by the Defendant ADYS against the Plaintiff." (Amended Complaint, ¶ 50). She asserts that defendant breached the agreement by failing to remove disciplinary records from her file, by failing to permanently reassign her to a position in the school district, and by failing to "give her a permanent position."  (Id., ¶¶ 51-54).  She seeks judgment against DYS, Wood (in his official and individual capacities) and Perry (in his individual capacity).

Defendants Wood and Perry argue that they are entitled to summary judgment because they were not parties to the agreement.  The court agrees.  Perry signed the agreement as counsel for DYS.  However, as noted previously, a plaintiff's right of action under Title VII lies against her employer, not against individuals.  See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).  The contract allegedly breached is a settlement of plaintiff's Title VII charge of discrimination against her employer, and the agreement contains obligations

on the part of DYS and the plaintiff only.  (See Defendants' Exhibit 3).  Accordingly, Perry and Wood (in his individual capacity) are entitled to summary judgment on Count IV.

DYS and Wood in his official capacity argue that plaintiff's breach of contract claim against them is barred by the Eleventh Amendment.  However, a claim asserting breach of a predetermination agreement settling claims asserted in a charge of discrimination before the EEOC arises under Title VII, and the contract is interpreted in accordance with federal common law.[32] Brewer v. Muscle Shoals Board of Education, 790 F.2d 1515 (11th Cir. 1986); Eatmon v. Bristol Steel & Ironworks, Inc., 769 F.2d 1503(11th Cir. 1985); E.E.O.C. v. Henry Beck Co., 729 F.2d 301 (4th Cir. 1984).  Defendants' Eleventh Amendment argument is without merit.  See In re Employment Discrimination Litigation Against State of Alabama, 198 F.3d 1305 (11th Cir. 1999)("[W]e have no hesitation in concluding that Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments."); Leverette v. Alabama Revenue Department, 453 F. Supp.2d 1340, 1345 (M.D. Ala. 2006)("It is well settled that there is no sovereign immunity for Title VII claims[.]").  However, "because plaintiff may obtain full Title VII relief from DYS, Wood's presence as a defendant in this claim (even in his official capacity) is unneccessary.  Therefore, Count IV is due to be dismissed as to defendant Wood.  See id.

_____

[32] The court acknowledges that plaintiff did not reference Title VII in Count IV and refers, in the introductory paragraph to the amended complaint, to "state violations of breach of contract." (Amended Complaint, ¶ 1).  However, plaintiff's failure to allege that Count IV arises under Title VII does not change the law governing federal jurisdiction over a claim alleging breach of an EEOC predetermination settlement agreement or the law requiring construction of such agreements under principles of federal common law.

Among other things, the settlement agreement at issue required that DYS: remove disciplinary actions from plaintiff's record regarding her failure to report to work on June 30 and July 1, 2004; re-evaluate and restore plaintiff's "complete appraisal" for September 1, 2003, September 1, 2004, and August 11, 2004; remove "all three subsequent reprimands for acts of insubordination (Failure to Meet with Ms. Rankins) from Ruby H. Carr's personnel file"; and "permanently" reassign plaintiff full time to her position in District 210. (Defendants' Exhibit 3). Defendant DYS argues that it is entitled to summary judgment because there is no evidence that it has breached the agreement.

Plaintiff testified that in June, 2006, after she received the termination letter from Wood, she went to the State Personnel Department and obtained a complete copy of her file. She further testified that the file included a July 13, 2004 reprimand from Phyllis Rankin for plaintiff's failure to report to work. (Plaintiff's deposition, pp. 131-32).

Defendants argue that Rankin's July 13, 2004 letter "is <u>not</u> a reprimand as that term is defined by the Progressive Discipline Guidelines." (Doc. # 75)(emphasis in original). Defendants cite Exhibit 3 to their reply brief, which is a copy of the first page of Rankin's letter. (<u>See</u> Doc. # 75, Exhibit 3). On that first page, Rankin discusses plaintiff's failure to report to work on June 28-30 and July 1, 2004. On the second page of the letter – which defendants did *not* file, but which was filed by plaintiff with her surreply – Rankin wrote:

> Please be informed that this letter should serve as a formal written <u>reprimand</u> for your failure to adhere to the Department's policy when requesting leave. Stronger disciplinary measures will be taken should there be a reoccurrence of such actions, on your part, in the future.

(Plaintiff's Exhibit 30 to Doc. # 76, p. 2)(emphasis in original).

Additionally, in her decision on plaintiff's termination appeal, the State Personnel ALJ specifically referenced this document.  The ALJ wrote that plaintiff's appraisal for the period ending in September 2004 "documents a reprimand for failing to obtain approval for two days in which she failed to report for work, even though her supervisor verbally told her that he could not approve the time off."  (ALJ opinion, attachment to Doc. # 24, p. 19 n. 24).  She further notes, "In a written memorandum dated July 13, 2004, Phyllis L. Rankins, Carr's supervisor wrote that Carr expressed 'her displeasure' about her new work schedule to another supervisor, Mr. Smith.  When Smith informed Carr that he could not approve leave requested by Carr, she 'became irate' stating that she was not prepared to work and would be returning home.  *Rankins reprimanded Carr for failure to follow DYS policy.*"  Id. (emphasis added).  Additionally, the ALJ specifically noted in her written recommendation to the Personnel Board that plaintiff received a seven point deduction on her September 2004 appraisal score by reason of Rankin's reprimand.  The lowered evaluation score and the reprimand were clearly considered in plaintiff's termination appeal.  Id.

Despite defendants' counsel's characterization of the memorandum as "not a reprimand" – and his omission of the portion of the memorandum which states that it *is* a "formal written reprimand" – the court concludes that the evidence of record demonstrates the existence of a genuine issue of fact regarding whether DYS breached the predetermination settlement agreement.  Accordingly, DYS is not entitled to summary judgment on Count IV.

**CONCLUSION**

35

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that:

(1) defendants' motion to strike (Doc. # 77) be DENIED; and

(2) defendants' motion for summary judgment be DENIED as to plaintiff's breach of contract claim against defendant Alabama Department of Youth Services and GRANTED in all other respects.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before March 4, 2009.   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 23rd day of February, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE